USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-11-16

SERCARZ & RIOPELLE, LLP
810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019

1-212-586-4900
FACSIMILE 1-212-586-1234
www.sercarzandriopelle.com

ROLAND G. RIOPELLE
MAURICE H. SERCARZ
ROBERT CALIENDO
GIULIANA E. GRAHAM

*ADMITTED IN NY & NJ

**MEMO ENDORSED**

February 11, 2016

BY ECF

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: <u>SEC v. Wey, et al.</u>,
15 CV 7116 (PKC)
Pre-Motion Letter

Dear Judge Castel:

[Handwritten note: Motion due 21 days after lifting of stay, response due 14 days thereafter and reply 7 days after response. If the Court believes oral argument will be helpful, it will advise the parties. SO ORDERED [signature] USDJ 2-11-16]

    We represent Defendant Robert Newman ("Newman") in the above-referenced action. In accordance with Your Honor's Individual Rules of Practice Section 4(A)(1), I write to set forth the legal and factual basis for Mr. Newman's motions to dismiss the Amended Complaint in this action. Mr. Newman will also join in any motions made by his co-defendants, to the extent those motions may be applicable to him.

    Given the nature of the motions and the complexity of the issues addressed, I respectfully request that the Court set the following schedule: 1) motion papers due one month from the date the Court authorizes the filing of the motion by Mr. Newman; 2) the Plaintiff's responsive papers due one month from the date set for the filing of the motion papers; and 3) reply papers due two weeks thereafter. If the Court wishes, it can set a date for oral argument of the motions at some point after the reply memorandum is filed, at a time that is convenient for the Court. Assuming the Court acts with its typical alacrity to set a briefing schedule, it could probably adjourn the date of the presently set preliminary conference (April 29) a few weeks, and hear any oral argument at a conference in May if it grants Mr. Newman's application and permits him to file his motions to dismiss.

### A. The Motion To Dismiss The SEC's Claims For Penalties

    It is well established that the SEC cannot recover civil penalties (including fines) for fraud more than five years from the time the alleged fraud occurred. 28 U.S.C. § 2462; <u>Gabelli v. Securities and Exchange Commission</u>, 133 S.Ct. 1216 (2013); <u>Johnson v. SEC</u>, 87 F.3d 484 (D.C. Cir. 1996).

1

SERCARZ & RIOPELLE, LLP

In the present case, the great majority of the violations of law pleaded by the SEC against Mr. Newman occurred more than five years before the SEC commenced this action. For example, paragraph 65 of the Amended Complaint alleges that "In or about April 2009, Newman completed the purchase of Everton by transferring funds from his trust accounts for the benefit of Everton's shareholders," and paragraph 66 of the Amended Complaint describes a purportedly false SEC "Form 8-K Everton filed with the Commission in July 2010." Both these allegations describe activities that occurred more than five years before the SEC commenced this action in September 2015, and therefore, any claim for penalties associated with these activities must be dismissed.

Similarly, paragraph 77 of the Amended Complaint alleges that defendants Benjamin Wey and Newman made misrepresentations concerning Wey's "affiliation" with a company known as ACL in November and December 2009, and paragraph 92 of the Amended Complaint alleges that "in the summer of 2010" Mr. Newman assisted Wey to "manipulate[] the price of Deer stock in connection with a stock repurchase program." All of these allegations also describe activities and purported wrongdoing that was more than 5 years old when the SEC commenced this action.

There are numerous other allegations in the Amended Complaint that relate to purported fraudulent activities that occurred more than five years prior to the commencement of this action. Any civil penalties which the SEC purports to sue for in connection with those allegations should also be dismissed, and Newman's motion to dismiss will detail all of them and ask the Court to dismiss any claims for civil penalties associated with them. I'm sure the Court understands the gist of Newman's motion however, so I will not further describe it here.

### B. Newman's Motion To Dismiss The SEC's Claims for Equitable Relief

The SEC's equitable claims for injunctive relief and disgorgement must also be dismissed, to the extent they are associated with actions that occurred more than five years before this action was commenced. Such claims are punitive in nature, and therefore, the five year statute of limitations contained in 28 U.S.C. § 2462 bars the SEC's actions for equitable relief. See, e.g., Johnson v. SEC, supra, 87 F.3d at 488-90 (where equitable sanctions imposed for past derelictions, they were punitive in nature); SEC v. Jones, 476 F.Supp.2d 374, 380-81 (S.D.N.Y. 2007) (the "limitations period in 2462 applies to ... equitable relief that seeks to punish"); SEC v. DiBella, 409 F. Supp.2d 122, 127-28, n. 3 (D. Conn. 2006) (because injunctive relief sought to punish defendant for past behavior, it was punitive); SEC v. Microtune, Inc., 783 F. Supp. 2d 867, 883-88 (N.D. Texas 2011) (dismissing claims for injunctive relief and disgorgement as punitive).

Examples of the types of time-barred allegations we will catalogue for the Court in our moving papers are set forth in Section A above. In our moving papers, we will provide the Court with full details of the allegations and potential equitable claims that Newman will be moving to dismiss, based on the applicable statute of limitations.

2

SERCARZ & RIOPELLE, LLP

### C. Newman's Motion to Dismiss The Complaint For Its Failure To Plead Fraud Adequately

Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud must be stated with particularity. While it is true that "intent" and "knowledge" may be alleged generally, the Courts require plaintiffs to plead a factual basis which gives rise to a "strong inference" of fraudulent intent. Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000); O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991), quoting Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). In other words, even though "Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" Id.

This heightened pleading requirement is particularly applicable in this case, because Mr. Newman is charged primarily as an aider and abettor of Benjamin Wey's alleged frauds. To plead aiding and abetting liability as to Mr. Newman, the SEC must allege with particularity facts that give rise to a strong inference that Mr. Newman knew of Mr. Wey's violations; and that he substantially assisted Mr. Wein in the achievement of his primary violations of the securities laws. Securities and Exchange Commission v. Apuzzo, 689 F.3d 204, 211-12 (2d Cir. 2012); Securities and Exchange Commission v. DiBella, 587 F.3d 533, 536 (2d Cir. 2009).

The Amended Complaint pleads very little factual material to support a "strong inference" of fraudulent intent. And it pleads almost no factual material to support an inference that Mr. Newman knew of the violations of securities law alleged against Mr. Wey. Instead, the Amended Complaint describes Mr. Newman's actions as the attorney for various companies allegedly involved in schemes carried out by Mr. Wey, but nothing in the description of Mr. Newman's actions amounts to a factual basis for a "strong inference" that Mr. Newman was a knowing fraudster or a knowing aider and abettor of Mr. Wey's alleged wrongdoing.

For example, in connection with the reverse merger transaction that formed CleanTech, the Complaint alleges that Mr. Newman represented the Chinese operating company, and located Everton Capital Corporation, the shell company into which the Chinese operating company was later merged. Complaint, ¶ 65. The Complaint also alleges that Newman did a series of things to assist the reverse merger transaction, including directing the transfer agent to transfer shares of Everton to the president of the newly merged company; filing an 8K report describing the reverse merger of Everton and the Chinese operating company; and communicating with the Chinese-speaking president of the newly formed merged company through Benjamin Wey, who was acting as a consultant to the company at the time. Complaint, ¶ 66-67. The Complaint also alleges that Mr. Newman provided legal representation to both Everton and the Chinese operating company that became CleanTech without receiving a waiver of conflicts from either Everton or the Chinese operating company, and without disclosing the dual representation in the 8K disclosure that he drafted and filed. Complaint, ¶ 68.

Thus, Mr. Newman's actions as alleged in the Complaint are entirely consistent with those of an attorney assisting his client to close a reverse merger transaction with an inactive company. Without further factual detail, there is no basis to draw a "strong inference" of Mr.

3

SERCARZ & RIOPELLE, LLP

Newman's fraudulent intent, and the Complaint as to CleanTech should be dismissed because it does not plead claims for fraud against Mr. Newman with sufficient particularity.

Other, similar infirmities appear in the Complaint's allegations as to other transactions in which Mr. Newman acted as an attorney. We will detail those failings in our moving papers. But, for now, the description of the Complaint's allegations concerning CleanTech is sufficient to give the Court a sense of Mr. Newman's motion to dismiss the Complaint for failure to adequately plead facts that support a "strong inference" of Mr. Newman's scienter.

For all the foregoing reasons, we respectfully submit that Mr. Newman should be permitted to make the foregoing motions to dismiss the Complaint in this action.

Very truly yours,

Roland G. Riopelle

Cc: All counsel (By ECF)