

RICHARDS KIBBE & ORBE LLP

February 11, 2016

Daniel C. Zinman
D 212.530.1859
F 917.344.8859
dzinman@rkollp.com

<u>VIA ECF</u>

The Honorable P. Kevin Castel
United States District Judge for the
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *Securities and Exchange Commission v. Wey, et al.*,
      Case No. 1:15-cv-07116 (PKC)

Dear Judge Castel:

      We represent defendant William Uchimoto in the above-referenced case. The Initial Pretrial Conference is scheduled for April 29, 2016 at 12:30 PM. Pursuant to Your Honor's Individual Practice No. 4.A.1, we write to respectfully request a pre-motion conference in connection with Mr. Uchimoto's anticipated motion to dismiss the claims asserted against him in the Amended Complaint ("AC" or "Complaint") filed by the Securities and Exchange Commission ("SEC") on November 9, 2015.[1]

      The gravamen of the SEC's Complaint concerns the purported orchestration by other defendants Benjamin Wey, his sister Tianyi Wei, and Mr. Wey's New York Global Group ("NYGG"), of a secret, cross-border scheme to take control of and manipulate the securities of Chinese companies using a network of foreign nominee entities and Swiss accounts. But there are no specific allegations in the Complaint suggesting that Mr. Uchimoto knew about, intentionally participated in, or substantially assisted the international stock manipulation scheme sketched out by the SEC.

---

[1] The Complaint alleges that Mr. Uchimoto (i) violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) ("Section 10(b)"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5") (First Claim) (AC ¶¶ 115-18); (ii) violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a) ("Section 17(a)") (Fifth Claim) (AC ¶¶ 131-33); (iii) aided and abetted violations of Section 10(b) and Rule 10b-5, in violation of Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e) ("Section 20(e)") (Third Claim) (AC ¶¶ 122-25); and (iv) aided and abetted violations of Section 17(a), in violation of Section 15(b) of the Securities Act, 15 U.S.C. § 77o(b) ("Section 15(b)") (Seventh Claim) (AC ¶¶ 138-41).

The Honorable P. Kevin Castel								Page 2
February 11, 2016

Instead, the SEC's claims against Mr. Uchimoto arise solely out of two discrete legal assignments he undertook in 2008 and 2009 on behalf of client entities that are not even parties to this action. Mr. Uchimoto is a former law partner at Buchanan Ingersoll & Rooney, PC, which was retained by U.S. public companies SmartHeat, Inc. ("SmartHeat") and Deer Consumer Products, Inc. ("Deer") to represent them with their listing applications before NASDAQ. In the course of *one* of those representations—the SEC fails to identify which one—Mr. Uchimoto allegedly made *two* purportedly misleading statements to NASDAQ during the listing process: First, he allegedly misrepresented *which* Wey family member gave him and his wife a nominal number of shares—even though the SEC's Complaint makes clear that he disclosed that the shares were gifted to him by the Weys. (AC ¶ 88.) Second, in the face of the NASDAQ staff's decision to "generally" refuse to count gifted shares toward NASDAQ Rule 4310(c)(6)'s 300 round-lot shareholder requirement because of non-rule-based concerns over investors' "trading interest" (AC ¶ 87), Mr. Uchimoto allegedly misinformed NASDAQ that gifted shares were not included in meeting the round-lot shareholder requirement when in fact they were (AC ¶ 90)—an irrelevant matter under the clear language of the Rule.[2]

The SEC's baseless, stale claims against Mr. Uchimoto, which include a demand for civil penalties that are time-barred under 28 U.S.C. § 2462 and *Gabelli v. SEC*, 133 S. Ct. 1216 (2013), have done incalculable harm to his heretofore unblemished reputation, leaving him stained with the taint of an alleged fraud that a close reading of the Complaint makes clear he was not aware of, much less a part of. Mr. Uchimoto now seeks to move this Court for an order dismissing the SEC's Complaint against him with prejudice for the following reasons, among others.

I.	**The SEC's Demand For Civil Penalties Is Barred By The Five-Year Statute Of Limitations Applicable To Civil Enforcement Actions (All Claims).**

Under the Supreme Court's holding in *Gabelli*, the SEC's demand for an award of civil penalties against Mr. Uchimoto is barred by the five-year statute of limitations. Any SEC action "for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise" must be commenced within five years from the date the claim first accrued. 28 U.S.C. § 2462. This five-year statute of limitations "begins to tick" when the fraud occurs. *Gabelli*, 133 S. Ct. at 1220. The SEC's causes of action against Mr. Uchimoto arose at the latest by July 16, 2009, when Deer was listed on NASDAQ, more than six years before this action was filed on September 10, 2015. (*See* AC ¶ 90.) The Complaint contains no allegations that Mr. Uchimoto engaged in any unlawful conduct after that date or committed any unlawful acts that continued after that date.

---

[2] At the time Mr. Uchimoto performed the listing work for SmartHeat and Deer, NASDAQ Rule 4310(c)(6) required a company seeking to become listed on NASDAQ to have a minimum of 300 so-called "round-lot shareholders" each owning at least 100 shares. (AC ¶¶ 6, 83.) The plain language of Rule 4310(c)(6), however, did not address how holders came to possess their shares (*e.g.*, through trades, gifts, or inheritance). Nor did the Rule distinguish between shares held in registered form (*i.e.*, certificated shares held in the name of a beneficial shareholder) and shares held in "street name" (*i.e.*, shares held in brokerage accounts).

Indeed, given the passage of time and the lack of any ongoing or future harm, *all* of the SEC's petitioned relief against Mr. Uchimoto is punitive in nature and therefore is time-barred. *See SEC v. Jones*, 476 F. Supp. 2d 374, 380-81 (S.D.N.Y. 2007) ("[T]he limitations period in § 2462 applies to civil penalties and equitable relief that seeks to punish," exempting only "equitable relief which seeks to remedy a past wrong or protect the public from future harm"); *SEC v. Graham*, 21 F. Supp. 3d 1300, 1310-11 (S.D. Fla. 2014) (concluding that, in light of the "principles underlying the Supreme Court's decision in *Gabelli*," the declaratory relief, injunctive relief, and disgorgement sought by the SEC were penalties and therefore time-barred under 28 U.S.C. § 2462).

## II.     The Complaint Must Be Dismissed For Failure To Plead Fraud With Particularity As Required Under Rule 9(b) (All Claims).

The Complaint contains generalized allegations that Mr. Uchimoto "and others" "assist[ed]" or were "involv[ed]" in the alleged scheme to manipulate securities. (AC ¶¶ 5, 6, 19.) None of these allegations satisfies the heightened pleading requirements for fraud under Rule 9(b).[3] *First*, the Complaint fails to plead sufficiently that Mr. Uchimoto was involved in a stock manipulation scheme because it contains no specific allegations that he participated in, or even was aware of, the alleged scheme.[4] *See T.H.C., Inc. v. Fortune Petroleum Corp.*, No. 96 Civ. 2690 (DAB), 1999 WL 182593, at *3 (S.D.N.Y. Mar. 31, 1999) ("Courts are especially vigilant in applying Rule 9(b)" where complaint asserts claims against more than one defendant); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants" do not satisfy Rule 9(b)). *Second*, the Complaint fails to plead sufficiently that Mr. Uchimoto made fraudulent statements because it does not identify with particularity which purportedly misleading statements were made in connection with which listing application, and where and when those statements were made.[5] The Complaint lumps together

---

[3] Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Rule 9(b) applies to each of the SEC's claims against Mr. Uchimoto because all of the claims sound in fraud. *See Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (Section 10(b) and Rule 10b-5); *SEC v. Lee*, 720 F. Supp. 2d 305, 325 (S.D.N.Y. 2010) (Section 17(a) and aiding and abetting fraud).

[4] To satisfy Rule 9(b), a fraud claim based on alleged market manipulation must set forth "to the extent possible: [1] 'what manipulative acts were performed, [2] which defendants performed them, [3] when the manipulative acts were performed, and [4] what effect the scheme had on the market for the securities at issue.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007) (citation omitted).

[5] A fraud claim based on an alleged misrepresentation must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (citation omitted). Rule 9(b) requires a court to "individually analyze[]" each of the specific statements to determine if the plaintiff has pleaded fraud with particularity. *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 382 n.2 (S.D.N.Y. 2003).

The Honorable P. Kevin Castel                                                                                              Page 4
February 11, 2016

Mr. Uchimoto's representations of SmartHeat and Deer, two separate companies that went through the NASDAQ listing process at different times. (*See* AC ¶¶ 82-90.) To the extent Mr. Uchimoto made any statements to NASDAQ during the listing process for SmartHeat, those statements must have pre-dated NASDAQ's approval of SmartHeat's listing on January 29, 2009—approximately six months *before* the approval of Deer's listing in July 2009, around which time any representations were made to NASDAQ about Deer's round-lot shareholders. (AC ¶¶ 87, 90.) The SEC's failure to identify specifically which statements correspond to which company's listing process, and where and when those statements were made, violates Rule 9(b).

### III.   The SEC's Claims Under Section 10(b), Rule 10b-5(b), And Section 17(a)(1) Must Be Dismissed For Failure To Plead Scienter (First and Fifth Claims).

What facts the SEC does allege against Mr. Uchimoto fail to show that he acted with scienter, or even that he acted with any motive beyond zealous advocacy on behalf of two clients that retained his law firm to represent them during their NASDAQ listing applications.[6] To plead scienter under Rule 9(b), the SEC must "'allege facts that give rise to a strong inference of fraudulent intent.'" *SEC v. Landberg*, 836 F. Supp. 2d 148, 154 (S.D.N.Y. 2011) (Castel, J.) (quoting *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)). The SEC may do so "'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* (quoting *Novak*, 216 F.3d at 307). The SEC has failed to establish a strong inference of fraudulent intent through either method.

The SEC has failed to plead any facts showing that Mr. Uchimoto had a motive to commit fraud. To do so, the SEC must allege that the defendant "benefitted in some concrete and personal way from the purported fraud." *Novak*, 216 F.3d at 307-08. The SEC's generalized allegation that Mr. Uchimoto "received fees as a result of Benjamin Wey directing the NYGG Clients to retain [him] to provide legal services" (AC ¶ 11) is insufficient as a matter of law to establish motive because the desire to earn fees "can be ascribed to 'virtually all corporate insiders,' or 'any publicly owned, for profit endeavor.'" *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 446 (S.D.N.Y. 2005) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001)). Moreover, the SEC's allegation that Mr. Uchimoto and his wife each received 100 shares (AC ¶¶ 86, 88) is insufficient to establish motive because it would be unreasonable to conclude that Mr. Uchimoto, a respected securities lawyer with a long, successful career, would "risk ruination of [his] reputation" for the nominal value of those shares. *See Whalen v. Hibernia*

---

[6] To state a claim under Section 10(b) and Rule 10b-5 promulgated thereunder, the SEC must allege that the defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013) (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)). The elements of a claim under Section 17(a)(1), (2), and (3) are "essentially the same" as under Section 10(b), except that no showing of scienter is required under subsections 17(a)(2) and (3). *Monarch Funding Corp.*, 192 F.3d at 308.

*Foods PLC,* No. 04 Civ. 3182, 2005 WL 1799370, at *2 (S.D.N.Y. Aug. 1, 2005) ("[T]he current state of the case law. . . concludes that no independent auditor would risk ruination of its reputation for the fees it would collect in order to suppress fraud."); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ("In looking for a sufficient allegation of motive, we assume that the defendant is acting in his or her informed economic self-interest."); *Duncan v. Pencer,* No. 94 Civ. 321 (LAP), 1996 WL 19043, at *10 (S.D.N.Y. Jan. 18, 1996) (finding it "economically irrational" that a large accounting firm would "condone a client's fraud in order to preserve a fee that, at best, is an infinitesimal percentage of its annual revenues and, by doing so, jeopardize its reputation and license, as well as subject itself to potential damages literally tens of thousands of times as large as its fee and subject the partner involved to potential professional and financial extinction").

Because the SEC has failed to establish that Mr. Uchimoto had a motive to commit fraud, it must allege facts giving rise to a strong inference of conscious misbehavior or recklessness. Where the SEC has failed to demonstrate a motive for fraud, it "'must produce a *stronger* inference of recklessness.'" *SEC v. Syron*, 934 F. Supp. 2d 609, 631 (S.D.N.Y. 2013) (quoting *Kalnit,* 264 F.3d at 143) (emphasis added). The SEC also has failed to meet its burden here. Recklessness may be shown by "deliberate illegal behavior" or conduct that is an "extreme departure from the standards of ordinary care.'" *Novak*, 216 F.3d at 308. Mr. Uchimoto's responses to NASDAQ's questions about the source of the nominal shares he received do not reflect "deliberate illegal behavior." In fact, the SEC's allegations even concede that Mr. Uchimoto correctly informed NASDAQ that he had received those shares as a gift from the Wey family. Further, Mr. Uchimoto's statement to NASDAQ that his clients met the black-letter requirement of NASDAQ Rule 4310(c)(6)—which does not distinguish between gifted and purchased shares, or between shares held in registered form and shares held in street name—cannot give rise to an inference of "deliberate illegal behavior." (AC ¶¶ 83, 87, 90.)

### IV.     The SEC's Claims Under Rule 10b-5(a)&(c) And Sections 17(a)(1)&(3) Must Be Dismissed For Failure To Allege Scheme Liability (First And Fifth Claims).

The SEC seeks to bring claims against Mr. Uchimoto for scheme liability under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) based on the same purported misstatements to NASDAQ on which it bases its claims under Rule 10b-5(b) and Section 17(a)(2). To state a claim that a defendant has engaged in a deceptive or fraudulent scheme in violation of Rule 10b-5(a) and (c) and Section 17(a)(1) and (3), the SEC must allege that the defendant "(1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud, (3) scienter,[7] and (4) reliance." *SEC v. Lee*, 720 F. Supp. 2d 305, 325 (S.D.N.Y. 2010) (citation omitted). However, where the SEC alleges that a defendant has engaged in a deceptive scheme *and* made misstatements, the scheme-liability claims must be dismissed unless the SEC can show that the defendant "undertook a deceptive scheme or course of conduct *that went beyond the*

---

[7] Scienter is not required for a Section 17(a)(3) claim. *See Monarch Funding Corp.*, 192 F.3d at 308.

*misrepresentations.*" *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 475 (emphasis added); *see also SEC v. Kelly,* 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) ("Scheme liability under subsections (a) and (c) of Rule 10b-5 hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement."). Here, the SEC has not alleged any basis for its claims against Mr. Uchimoto other than the alleged misstatements. The scheme-liability claims therefore must be dismissed.

V.  **The SEC Has Failed To Allege Sufficiently That Mr. Uchimoto Aided And Abetted Violations Of The Exchange Act By The Other Defendants, And At The Time Of His Alleged Conduct, Congress Had Not Created A Cause of Action For Aiding And Abetting Violations Of The Securities Act (Third And Seventh Claims).**

The SEC alleges that Mr. Uchimoto violated Exchange Act Section 20(e) by aiding and abetting violations of Exchange Act Section 10(b) and Rule 10b-5 by Benjamin Wey, Tianyi Wei, and NYGG. (AC ¶¶ 124-25.) The SEC's aiding and abetting claim against Mr. Uchimoto must be dismissed because the SEC has failed to plead (i) that Mr. Uchimoto had actual knowledge of Mr. Wey, Ms. Wei, and NYGG's alleged violations of the Exchange Act or (ii) that Mr. Uchimoto rendered substantial assistance to their alleged fraud.[8]

*First*, there are no facts in the Complaint raising an inference that Mr. Uchimoto had *any* awareness of Mr. Wey, Ms. Wei, and NYGG's purported scheme "to *secretly* take and profit from control of the NYGG Clients using a network of foreign nominees" (AC ¶ 2 (emphasis added)) or that he had any actual knowledge of his own "overall role" in the alleged secret, cross-border fraud involving shell companies in China and brokerage accounts in Switzerland. *See SEC v. Espuelas*, 905 F. Supp. 2d 507, 518 (S.D.N.Y. 2012) (citation omitted) (to plead actual knowledge, the SEC must plead facts showing the "defendant's general awareness of its overall role in the primary violator's illegal scheme").

*Second*, the SEC has failed to allege that Mr. Uchimoto gave substantial assistance to the purported scheme. There are no particularized allegations showing that Mr. Uchimoto associated

---

[8] The elements of an aiding and abetting claim by the SEC are: "(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012) (quoting *SEC v. DiBella*, 587 F.3d 553 (2d Cir. 2009)). Where, as here, the challenged activity occurred prior to July 2010, when the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") became law, the SEC is subject to an actual knowledge standard when pleading aiding and abetting violations of the Exchange Act; recklessness will not suffice. *See Apuzzo*, 689 F.3d at 211 & n.6 (applying actual knowledge standard to conduct that predated passage of Dodd-Frank in 2010); *SEC v. Espuelas*, 905 F. Supp. 2d 507, 517 n.3 (S.D.N.Y. 2012) (applying actual knowledge standard because conduct at issue predated Dodd-Frank). For the SEC to plead successfully that Mr. Uchimoto substantially assisted violations of the Exchange Act by Mr. Wey, Ms. Wei, and NYGG, it must plead that he "in some sort associate[d] himself with the venture, that [he] participate[d] in it as something that he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed." *Apuzzo*, 689 F.3d at 212 (citation omitted) (alterations in original).

The Honorable P. Kevin Castel  Page 7
February 11, 2016

himself with Mr Wey, Ms. Wei, and NYGG's allegedly secret (and complex) scheme. His role was limited to serving as listing counsel on behalf of SmartHeat and Deer during their NASDAQ listing processes. The SEC's allegations suggest only that Mr. Uchimoto's efforts were directed at successfully listing his clients on NASDAQ—not towards the success of any purported cross-border, multi-year fraud orchestrated in secrecy by certain other defendants.

The SEC also alleges that Mr. Uchimoto violated Securities Act Section 15(b) by aiding and abetting violations of the Securities Act by Mr. Wey, Ms. Wei, and NYGG. (AC ¶¶ 140-41.) However, the SEC's only specific allegations against Mr. Uchimoto concern the period prior to July 16, 2009, when Deer was listed by NASDAQ. (*Id.* ¶ 90.) Prior to July 21, 2010, when Congress amended the Securities Act to grant a right of action to the SEC for aiding and abetting violations of the Act,[9] there was no such liability. Thus, the SEC's claim against Mr. Uchimoto for aiding and abetting violations of the Securities Act must be dismissed, since application of Section 15(b) to his conduct would be an impermissibly retroactive application of Dodd-Frank. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994) (Where a statute would "increase a party's liability for past conduct, or impose new duties with respect to transactions already completed . . . our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result"); *Koch v. SEC*, 793 F.3d 147, 158 (D.C. Cir. 2015) (barring retroactive application by SEC of remedies created by Dodd-Frank because statute "does not expressly authorize retroactive application").

## VI.  Mr. Uchimoto Will Present Additional Bases For The Dismissal Of The SEC's Claims Against Him.

Mr. Uchimoto anticipates moving against the SEC's Complaint on the following additional grounds:[10]

First, the SEC's claim under Section 17(a)(2) must be dismissed because the SEC fails to allege that Mr. Uchimoto obtained money or property in connection with the offer or sale of securities.[11] The Complaint does not allege that Mr. Uchimoto's compensation was affected, in any way, by his alleged participation in the purported cross-border fraud. *See, e.g., Syron*, 934 F.

---

[9] On October 16, 2009, the SEC asked Congress for an expansion of "the SEC's statutory authority to allow the SEC to bring actions for aiding and abetting violations of the Securities Act[.]" *A Joint Report of the SEC and the CFTC on Harmonization of Regulation*, 92-93 (Oct. 16, 2009). Congress amended the Securities Act in response. *See* Dodd-Frank, Pub. L. No. 111-203, 124 Stat. 1376 § 929M(a) (July 21, 2010) (codified at 15 U.S.C. § 77o(b)).

[10] Mr. Uchimoto reserves the right to raise in his anticipated memorandum of law other bases for dismissal not discussed in this letter.

[11] To state a claim under Section 17(a)(2), the SEC must allege that (1) the defendant made a material misrepresentation or omission; (2) in the offer or sale of securities; and (3) the defendant "obtain[ed] money or property by means of the offerings" or sale. *SEC v. Syron*, 934 F. Supp. 2d 609, 637 (S.D.N.Y. 2013); *see also SEC v. Glantz*, No. 94 Civ. 5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995) (claim under Section 17(a)(2) "must allege that defendant actually obtained money or property by means of the untrue statements").

The Honorable P. Kevin Castel  Page 8
February 11, 2016

Supp. 2d at 638-40 (dismissing SEC's 17(a)(2) claim because it failed to allege that defendants personally gained money or property from stock offerings). While the Complaint alleges that Mr. Uchimoto "received fees as a result of Benjamin Wey directing the NYGG Clients to retain [him] to provide legal services" (AC ¶ 11), the SEC does not claim that such referrals were conditioned on any fraudulent behavior. *Cf. SEC v. Stoker*, 865 F. Supp. 2d 457, 462-64 (S.D.N.Y. 2012) (finding that the SEC plausibly alleged that defendant had obtained money or property by means of the fraud where his employer obtained millions of dollars as a result of the defendant's material misstatements and omissions). Without more, the SEC's allegations fail to establish that Mr. Uchimoto obtained any money or property "*by means of* an untrue statement." 15 U.S.C. § 77q(a)(2) (emphasis added).

Second, although scienter is not an element of a claim under Section 17(a)(2) or Section 17(a)(3), *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999), the SEC nevertheless must establish that the defendant failed to comply with some applicable standard of reasonable care, *SEC v. Ginder*, 752 F.3d 569, 576 (2d Cir. 2014). The Complaint alleges no facts that Mr. Uchimoto violated any applicable standard of reasonable care in connection with the listing applications for SmartHeat and Deer, which under Rule 4310(c)(6) only required a showing that they met the black-letter 300 round-lot shareholder requirement without regard to how the shareholders received their shares.

\*   \*   \*

On September 10, 2015, the SEC issued a press release naming Mr. Uchimoto and trumpeting its institution of *Fraud Charges in Cross-Border Scheme to Secretly Control and Manipulate Stock of Chinese Companies After Reverse Mergers*—thus casting Mr. Uchimoto into the middle of a secret, international scheme, to be damned every time the public or a client searched for his name.[12] But the barest scrutiny of the SEC's Complaint reveals that is precisely what the SEC *has failed to plead*. For the foregoing reasons, we respectfully request that the Court schedule a pre-motion conference to address Mr. Uchimoto's motion to dismiss, so that he may begin the long process of restoring his reputation and career.

---

[12] Litigation Release No. 23342, U. S. Securities and Exchange Commission, *SEC Announces Fraud Charges in Cross-Border Scheme to Secretly Control and Manipulate Stock of Chinese Companies After Reverse Mergers* (Sept. 10, 2015), *available at* https://www.sec.gov/litigation/litreleases/2015/lr23342.htm.

We propose the following schedule for the anticipated motion:

| | |
|---|---|
| Opening Brief: | 21 days after the stay on Mr. Uchimoto's time to answer or move is lifted; |
| Opposition Brief: | 14 days after Mr. Uchimoto files his opening brief; |
| Reply Brief: | 7 days after any opposition brief is filed. |

Respectfully,

Daniel C. Zinman

cc: All Counsel of Record (via ECF)