# EXHIBIT C

ARTICLES OF ASSOCIATION OF THE ASSOCIATION ROMANDE DES INTERMÉDIAIRES FINANCIERS (ARIF)



# ARTICLES OF ASSOCIATION OF THE ASSOCIATION ROMANDE DES INTERMÉDIAIRES FINANCIERS (ARIF)

| I. | CONSTITUTION, NAME AND REGISTERED OFFICE |
|---|---|
| 1 | Under the name of ASSOCIATION ROMANDE DES INTERMÉDIAIRES FINANCIERS (ARIF), an association is constituted for an indefinite duration and with legal personality within the meaning of Art. 60 et seq. of the Swiss Civil Code. |
| 2 | ARIF's registered office is in Geneva, at its Secretariat's address. |
| 3 | ARIF is entered in the Commercial Register. |
| II. | PURPOSES |
| 4 | ARIF's purpose is to be a regulatory and supervisory body in the financial sector in Switzerland. For this purpose, it obtains from the Swiss Financial Market Supervisory Authority (FINMA) and the other competent authorities the authorizations required to achieve its purpose and applies for them continuously.[4] |
| 5 | ARIF takes part in the supervision of the financial markets and promotes the deontology of financial intermediaries and their training in this area; it draws up and proposes solutions to disputes in the financial sector; it helps to maintain and improve the reputation and competitiveness of the Swiss financial centre.[4] |
| 6 | ARIF does not pursue any lucrative purpose. Any remuneration resulting from its activity is exclusively intended for the purposes which it contemplates to achieve and to cover the costs of the services which it provides. |
| III. | ACTIVITIES |
| 7 | In order to achieve its purpose of being a regulatory and supervisory body in the financial sector in Switzerland, ARIF applies to be approved as such in all the areas in which it is allowed to operate by the legislation, in particular for purposes of registering, training and authorizing financial intermediaries to conduct their activity, as well as their supervision.[4] |

In particular:

In order to implement the Federal Act of October 10th, 1997, on the Prevention of Money Laundering and Terrorism Financing in the Financial Sector (MLA), ARIF offers its members the following services:

  a) the affiliation to a self-regulating body recognized within the meaning of Art. 14 and 24 MLA;
  b) the setting up of Self-Regulation Rules in conformity with Art. 25 MLA;
  c) the organisation of periodical audits, carried out by Auditors accredited by ARIF, and the subjection to punctual audits, carried out by Special Investigators designated by ARIF, the subject-matter thereof being to verify the compliance with the MLA and ARIF's Self-Regulation Rules by its members and to ensure that the violation thereof is sanctioned;

    d)    the keeping of a list of affiliated, rejected, excluded, struck off and resigning financial intermediaries and its regular notification to the FINMA;
    e)    an information on the MLA and on the rules enacted by the FINMA in this field;
    f)    a training on the organization to be set up and on the detection techniques in order to identify money laundering cases;
    g)    recommendations on actual cases;
    h)    the promotion of prevention and fighting against the money laundering of assets of a criminal origin.

7 bis    In order to implement the Federal Act of June 23rd, 2006, on Collective Capital Investments, ARIF furthermore offers its members exercising the profession of independent asset managers the following services:

    a)    the setting up, within the scope of the Self-Regulation Rules and its directives, of a Code of Deontology setting forth rules of conduct in the field of asset management;
    b)    the organisation of periodical audits, carried out by Auditors accredited by ARIF, and the subjection to punctual audits, carried out by Special Investigators designated by ARIF, the subject-matter thereof being to verify the compliance with ARIF's Code of Deontology by the members governed by it and to ensure that the violation thereof is sanctioned;
    c)    an information on the rules enacted by the FINMA in this field;
    d)    a basic presentation of the Code of Deontology;
    e)    recommendations on actual cases;
    f)    the promotion of rules of deontology in the field of asset management.

8    In order to achieve its purposes of maintaining and improving the reputation and competitiveness of the Swiss financial centre, of promoting the deontology of financial intermediaries and their training in this area, ARIF: [4]

    a)    takes part in the work of preparing the international treaties and laws closely related to the area of financial intermediation and makes proposals intended for the legislative bodies and the federal and cantonal authorities;
    b)    informs the authorities and the public in Switzerland and abroad about the position and function of the financial services providers having their domicile or registered office in Switzerland;
    c)    lodges the appeals that it deems expedient for the defence of the objectives it pursues;
    d)    implements compliance with the rules of professional ethics and good practice in financial services through self-regulation in the form of regulations, directives and recommendations and by encouraging the implementation of application procedures that are adapted to practical requirements;
    e)    encourages research and teaching in the area of financial services and its members' efforts to provide vocational training and further training by means of appropriate measures and an adequate offering.
    f)    enacts, promotes, obtains recognition for and implements Codes of Deontology in the areas of financial intermediation;

8 bis    In order to achieve its purpose of facilitating the settlement of disputes in the financial sector, ARIF may: [4]

    a)    establish a Board of Mediation and an Arbitration Tribunal whose function is to allow the amicable resolution of, or arbitration to be conducted in, disputes between financial intermediaries and their clients, business partners and third parties having claims against them;
    b)    enact, promote and enforce Regulations governing expert opinions, mediation and arbitration of disputes in the financial sector;

ARTICLES OF ASSOCIATION OF THE ASSOCIATION ROMANDE DES INTERMÉDIAIRES FINANCIERS (ARIF)

    c)     recruit, choose and propose a body of experts, mediators and arbitrators for the resolution of disputes in the financial sector;

and have them recognized by the Authorities in order to function as such when the legislation so provides.

IV.     MEMBERS, CONDITIONS AND ADMISSION PROCEDURE

9     Any natural person or legal entity exercising or susceptible to exercise an activity as a financial intermediary within the meaning of Art. 2 subs. 3 MLA may apply for ARIF membership.

10     Natural persons elected to the Committee of ARIF are, as of right, members of the Association, independently from possibly being financial intermediaries.

11     A candidate for membership must apply to the Committee in writing and provide all information and documents requested from him/her by the Committee.

12     The candidate must undertake in writing to adopt in its activity as a financial intermediary an internal organisation which will comply with the MLA, the Articles of Association and the Self-Regulation Rules and to implement the obligations defined therein.

13     In order to be admitted as a member, the candidate must furthermore have paid the joining fee and the first annual subscription fee.

14     The Committee gives its verdict on the admission application, which it may refuse without specifying any reason and without any remedy.

V.     RIGHTS AND OBLIGATIONS

15     Members are entitled to benefit from the services proposed by ARIF that are applicable to them.    ARIF also has the option of offering its services to non-member third parties and allowing them to benefit from those services when this is expedient for the achievement of its goals [4.]

16     Members undertake to comply with the obligations stipulated in the MLA, the Articles of Association, the Self-Regulation Rules and the Codes of Deontology applicable to them or to which they have adhered. [4]

17     Members being financial intermediaries accept that the audits ordered by ARIF are carried out in their firms and submit to the measures and sanctions provided for in the Articles of Association and the Self-Regulation Rules.

18     Members endeavour to pass on their knowledge and experience to ARIF and promote its objectives' implementation.

19     They recognize that they must pay the registration fee, the annual subscription fee and the fees for ARIF's services, fixed by the Committee as well as any contractual penalties possibly imposed on them by it.

VI.     RESIGNATION, STRIKING OFF

20     Any member may resign from ARIF for the end of a financial year, by registered letter addressed to the Committee at least three months before this end. Exceptions to this time-limit and reductions of this notice period may be decided by the Committee, at its discretion. [4]

21     The Committee may carry out *ex officio* and without any remedy the striking off of deceased or bankrupt members, or of those who appear durably unable to assume their statutory obligations.

VII.     SANCTIONS AND EXCLUSION

22     The Committee may pronounce the following disciplinary sanctions, which may be cumulated:
- a warning
- a reprimand;

3

- a fine of up to CHF 500,000.-- as a contractual penalty;
- the exclusion from ARIF;

against any member who violates the Articles of Association or the Self-Regulation Rules, or who prejudices the interests of ARIF or third parties.

In its decision, the Committee will consider the severity of the offence, the guilt of the offender, the financial situation of the member concerned and the damage caused to ARIF.

23  The Self-Regulation Rules determine the procedure in the event of a sanction. [2]

24  The resignation, striking off or exclusion of a member does not prevent from conducting any disciplinary proceedings instituted against him/her for events which took place prior to his/her resignation, striking off or exclusion until their conclusion, and does not affect the enforceable character of the possible contractual penalty pronounced against him/her.

25  An exclusion or striking off that has taken effect will be published on the ARIF web site. [4]

26  [ABROGATED] [2]

VIII.  FINANCIAL RESOURCES

27  ARIF has in particular the following financial resources:
   a)  registration fees;
   b)  members' subscription fees;
   c)  fees for services provided;
   d)  contractual penalties;
   e)  Government grants.

IX.  BODIES

A.  THE GENERAL MEETING

28  The General Meeting is ARIF's supreme body. It has the following attributions:
   a)  to approve the Committee's accounts and report;
   b)  to elect the Committee's members;
   c)  to elect the Statutory Auditors;
   d)  [ABROGATED][1]
   e)  to adopt and amend the Articles of Association;
   f)  to dissolve ARIF.

29  An Ordinary General Meeting is held every year during the semester following the end of the financial year. Extraordinary General Meetings are called as often as necessary.

30  The General Meeting is called by the Committee, which defines its agenda. The Statutory Auditors or one fifth of the members may also request the calling of the General Meeting and the placing of items on the agenda.

31  The General Meeting is called by letter addressed to each member and by public notice in the Swiss Official Gazette of Commerce, at least 10 days prior to the date of its meeting. The items included on the agenda are mentioned in the notice calling the meeting. The wording of any proposal to amend the Articles of Association must be enclosed to the letter addressed to each member.

32  Each member is entitled to one vote in the General Meeting. Members may be represented only by other members, to the exclusion of third parties. Each member present at the General Meeting may not represent more than five other members.

ARTICLES OF ASSOCIATION OF THE ASSOCIATION ROMANDE DES INTERMÉDIAIRES FINANCIERS (ARIF)

33  No resolution may be passed if it is not included on the agenda, with the exception of a proposal to call an Extraordinary General Meeting.

34  The General Meeting passes its ordinary resolutions and carries out its elections by the absolute majority of the members present. Resolutions to amend the Articles of Association and to carry out the dissolution may be passed only by a majority of two thirds of the members present.

35  For the elections to the Committee, its members are elected in the first round by the absolute majority of the members present, and in the second round by the relative majority of the members present. If the number of candidates is equal to the number of offices to be filled, their election is tacit.

36  A resolution for dissolution may be passed only at a General Meeting at which at least half of all members are present; in the absence of this quorum, a second General Meeting will have to be called, which may pass a resolution for dissolution regardless of the number of members present.

37  If the votes are divided equally, ARIF's Chairman, or in his/her absence, the oldest member of the Committee present, will have the casting vote.

38  Minutes will be kept recording the General Meeting's resolutions and elections; they will be drawn up within the ten days following its meeting and signed by their author and the Chairman.

B.  THE COMMITTEE

39  The Committee comprises at least 15 members, individually elected for a period of three years and re-eligible. In case of vacancy in the Committee, the position will be filled during the next Ordinary General Meeting. If the number of Committee members is inferior to ten, an Extraordinary General Meeting will be called within a short term in order to carry out elections.

40  The Committee has all the powers vested in it by the Articles of Association, and in general all powers which are not explicitly vested in any other body of ARIF by the Articles of Association.

41  It has in particular the following tasks:
   a)  to take all steps and decisions to achieve ARIF's purpose;
   b)  to establish the rules for signature of its acts and decisions;
   c)  to represent and bind ARIF with respect to third parties and take legal action on behalf of ARIF;
   d)  to decide the number of Committee members within the limits mentioned by the Articles of Association and designate ARIF's Chairman among its members;
   e)  to set up and organize ARIF's Secretariat;
   f)  to adopt and amend the Self-Regulation Rules, including the Code of Deontology, and all other regulations and directives which it considers necessary for ARIF's operation;
   g)  to issue decisions on admission applications and pronounce sanctions and striking offs against members;
   h)  to fix the amount of the joining fees, periodical subscription fees and fees invoiced by ARIF, and the amount of the remunerations paid to its bodies;
   i)  to designate from among its members the commissions necessary to perform its tasks, by principle an Executive Board, a Management Commission, an Admissions Commission, a Training and Information Commission and a Supervisory Commission, establish rules for their operation, distribute among them the Committee's tasks and delegate to them the power to perform them; [4]
   j)  to appoint the Special Investigators and accredit the Auditors empowered by ARIF to verify the members' compliance with the Self-Regulation Rules;
   k)  to rule on any question submitted to it by a Committee member;
   l)  to report to the General Meeting on ARIF's activity and accounts, and propose to it the candidatures for the Committee and for the function of Statutory Auditors as well as the amendments to the Articles of Association.

5

ARTICLES OF ASSOCIATION OF THE ASSOCIATION ROMANDE DES INTERMÉDIAIRES FINANCIERS (ARIF)

42    The Committee meets as often as necessary, when convened by the Chairman, but at least twice a year and before each General Meeting. Each Committee member may require the Chairman, in writing, to call a Committee meeting. [4]

43    Committee meetings are valid if at least half of all its members are present. Resolutions may also be passed by including them in a circular letter addressed to all its members if none of them objects thereto.

44    Unless otherwise provided in the Articles of Association, Committee resolutions are passed by the absolute majority of its members present in the case of meetings, or by the majority of all its members in the case of resolutions to be put to the vote in circulars. It adopts and amends the Self-Regulation Rules by a majority of two thirds majority of all its members.

45    If the votes are divided equally, ARIF's Chairman, or in his/her absence, the oldest member of the Committee present, will have the casting vote.

46    Minutes will be kept recording the Committee's resolutions; they will be drawn up within the ten days following its meeting or the circular letter exchanged among its members, and signed by their author and the Chairman.

C.    THE STATUTORY AUDITORS

47    ARIF's operating account and balance sheet are verified once a year by Statutory Auditors designated for an indefinite duration by the General Meeting on the Committee's proposal.

48    The Statutory Auditors verify whether the operating account and balance sheet conform to the books and whether they are kept accurately. The Committee will provide them with the books and all supporting documents in order to perform this task.

49    The Statutory Auditors also verify periodically, by principle every two years, and anytime they consider it as necessary, that ARIF always satisfies the conditions for authorization as a Self-Regulating Body.

50    They submit a written report to the Ordinary General Meeting on their findings. If necessary, they have the power to call the General Meeting.

D.    JURISDICTION

51    All legal relationships between ARIF and its members are governed by Swiss law and the jurisdiction for any respective litigation is exclusively with the Courts of the Canton of Geneva, subject to a remedy to the Swiss Federal Court.[1]

52 to 58 [ABROGATED] [1]

X.    LIQUIDATION

59    In the case of ARIF's dissolution by a resolution of the General Meeting, the members of the last Committee in office perform the duties of liquidators, according to a mode of operation identical to the Committee's mode of operation. The FINMA must be notified immediately of the dissolution by the liquidators.

60    In the event that the association is dissolved, the available assets will be allocated in full to an institution pursuing a public-interest purpose analogous to that of the association and benefitting from tax exemption. Under no circumstances shall the assets be able to be returned to the physical founders or to the members, or be used in whole or in part for their benefit in any manner whatsoever. [5]

XI.    CONFIDENTIALITY, COMPETENCES AND WITHDRAWAL

61    The members of the Committee and the Statutory Auditors of ARIF, its liquidators in the case of dissolution, as well as the Special Investigators designated by ARIF and the Auditors accredited by it, are bound by secrecy on the facts which they were aware of in the exercise of their functions, under the reservation of the communications and reports resulting from the execution of their tasks and legal duties. They must es-

ARTICLES OF ASSOCIATION OF THE ASSOCIATION ROMANDE DES INTERMÉDIAIRES FINANCIERS (ARIF)

tablish that they have specialised knowledge which is necessary for the Self-Regulation Rules' implementation and show any guarantee for an impeccable activity.

62   Any member of an ARIF body or any person commissioned by it and having a personal interest or being in a conflict of interests in connection with a member of ARIF must withdraw when any decision is taken in relation to this member. In particular, reciprocal audits among ARIF members are prohibited.

XII.   FINANCIAL YEAR

63   ARIF's financial year begins on July 1st and ends on June 30th.

XIII.   ENTRY INTO FORCE AND TRANSITIONAL PROVISIONS

64   The Articles of Association of ARIF and their subsequent modifications enter into force as from their adoption by the General Meeting and – if applicable – subject to the approval by the FINMA.[1]

65   [ABROGATED] [4]

---

[1] According to a Decision of the General Meeting of November 4th, 2010, and approval by the FINMA of November 4th, 2010
[2] According to a Decision of the General Meeting of November 3rd, 2011, and approval by the FINMA of May 10th, 2012
[3] According to a Decision of the General Meeting of November 8th, 2012, and approval by the FINMA of November 26th, 2012
[4] According to a Decision of the General Meeting of November 6th, 2014, and approval by the FINMA of October 3rd, 2014
[5] According to a Decision of the General Meeting of November 5th, 2015, and approval by the FINMA of December 10th, 2015.