UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Plaintiff,

      v.

BENJAMIN WEY,
NEW YORK GLOBAL GROUP,
TIANYI WEI,
MICHAELA WEY,
ROBERT NEWMAN,
WILLIAM UCHIMOTO, and
SEREF DOGAN ERBEK,

        Defendants,

     and

ADVANTAGE CONSULTANTS, LTD.,
YORK CAPITAL MANAGEMENT, LTD.,
FOUR TONG INVESTMENTS, LTD.,
STRONG GROWTH CAPITAL, LTD.,
MEDIAN ASSETS INVESTMENTS,  LTD., and
HAN HUA, LTD.,

        Relief Defendants.

Civil Action No. 15-7116 (PKC)

---

## DEFENDANT WILLIAM W. UCHIMOTO'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

RICHARDS KIBBE & ORBE LLP
200 Liberty Street
New York, NY  10281-1003

*Attorneys for Defendant William W. Uchimoto*

August 26, 2016

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................ 1

II.   STATEMENT OF FACTS ................................................ 2

    A.    Mr. Uchimoto's Representation of SmartHeat and Deer ........................... 2

    B.    Alleged Misstatements By Mr. Uchimoto ................................ 3

    C.    The Alleged Secret Stock Manipulation Scheme ....................... 5

III.  ARGUMENT ................................................ 6

    A.    The SEC's Claims Are Barred By The Five-Year Statute Of Limitations Applicable To Civil Enforcement Actions (All Claims). ....................... 6

        1.    The SEC's Claim For Civil Monetary Penalties Is Time-Barred. .............. 7

        2.    The SEC's Claims For An Injunction And Disgorgement Are Time-Barred And Unfounded. ........................................ 7

    B.    The Complaint Must Be Dismissed For Failure To Plead Fraud With Particularity As Required Under Rule 9(b) (All Claims). ....................... 9

        1.    The SEC Fails To Allege With Particularity That Mr. Uchimoto Participated In A Stock Manipulation Scheme. ........................... 9

        2.    The SEC Fails To Allege With Particularity Which Company The Alleged Misrepresentations Referred To, Where And When The Alleged Statements Were Made, And Why They Were False. ................. 10

    C.    The SEC's Claims Under Section 10(b), Rule 10b-5(b), And Section 17(a)(1) Must Be Dismissed For Failure To Plead Scienter (First And Fifth Claims). ....... 12

        1.    The Complaint Fails To Allege That Mr. Uchimoto Had A Motive To Commit Fraud. ........................................ 13

        2.    The Circumstances Alleged In The Complaint Do Not Give Rise To A Strong Inference Of Conscious Misbehavior Or Recklessness. ........... 15

    D.    The SEC Has Failed To Allege Sufficiently That Mr. Uchimoto Made A Materially Misleading Statement As To The Source Of His Shares (First And Fifth Claims). ................................................ 15

E.      The SEC Has Failed To Allege That Mr. Uchimoto Made A Misleading Statement In Connection With The Purchase Or Sale Of Securities (First And Fifth Claims). ...................................................................17

F.      The SEC's Claims Under Rule 10b-5(a) And (c) And Section 17(a)(1) And (3) Must Be Dismissed For Failure To Allege Scheme Liability (First And Fifth Claims). ...................................................................18

G.      The SEC's Claim Under Section 17(a)(2) Must Be Dismissed For Failure To Allege That Mr. Uchimoto Obtained Money Or Property In Connection With The Offer Or Sale Of Securities (Fifth Claim). ....................................19

H.      The SEC's Claims Under Section 17(a)(2) And (3) Must Be Dismissed For Failure To Establish That Mr. Uchimoto Did Not Comply With An Applicable Standard Of Care (Fifth Claim)....................................20

I.      The SEC Has Failed To Allege Sufficiently That Mr. Uchimoto Aided And Abetted Violations Of The Exchange Act By His Co-Defendants (Third Claim). ...................................................................21

        1.      The SEC Has Not Pleaded Facts Showing That Mr. Uchimoto Had Actual Knowledge Of The Purported Scheme To Secretly Manipulate The Securities Of Chinese Companies. ....................................22

        2.      The SEC Has Failed To Allege That Mr. Uchimoto Gave Substantial Assistance To The Purported Scheme. ....................................23

J.      The SEC Cannot Bring A Claim For Aiding And Abetting Violations Of The Securities Act Because Mr. Uchimoto's Conduct Occurred Before Congress Created That Right Of Action (Seventh Claim). ....................................24

K.      The Complaint Should Be Dismissed With Prejudice. ...........................................24

IV.     CONCLUSION................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995)................................................................................12

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
    254 F. Supp. 2d 373 (S.D.N.Y. 2003)..........................................................11

*Alnwick v. European Micro Holdings, Inc.*,
    281 F. Supp. 2d 629 (S.D.N.Y. 2003)..........................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................2, 6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................6

*Burch v. Pioneer Credit Recovery, Inc.*,
    551 F.3d 122 (2d Cir. 2008)........................................................................24

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..........................................................................3

*Duncan v. Pencer*,
    No. 94 Civ. 0321 (LAP), 1996 WL 19043 (S.D.N.Y. Jan. 18, 1996)....................14

*Gabelli v. SEC*,
    133 S. Ct. 1216 (2013).............................................................................2, 6, 7

*Geiger v. Solomon-Page Grp., Ltd.*,
    933 F. Supp. 1180 (S.D.N.Y. 1996)..............................................................16

*Giardina v. Healthnow New York, Inc.*,
    229 F.3d 1135 (2d Cir. 2000).........................................................................7

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of
    Scotland Grp., PLC*,
    783 F.3d 383 (2d Cir. 2015)........................................................................16

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)......................................................13, 18

*In re Carter-Wallace, Inc. Sec. Litig.*,
    150 F.3d 153 (2d Cir. 1998)................................................................17

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)................................................16

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007)..................................................3

*Johnson v. SEC*,
    87 F.3d 484 (D.C. Cir. 1996)..............................................................8

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)........................................................13, 15

*Koch v. SEC*,
    793 F.3d 147 (D.C. Cir. 2015)...........................................................24

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994)..........................................................................24

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)............................................................................17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .................................10

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013)................................................................6

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013)..............................................................11

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...............................................9, 12, 13, 15

*Proffitt v. FDIC*,
    200 F.3d 855 (D.C. Cir. 2000).............................................................8

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................9

*SEC v. Adoni*,
    60 F. Supp. 2d 401 (D.N.J. 1999)......................................................18

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012).................................................21, 22, 23

*SEC v. China Northeast Petroleum Holdings Ltd.*,
    27 F. Supp. 3d 379 (S.D.N.Y. 2014)..........................................................................19, 22

*SEC v. Commonwealth Chem. Sec., Inc.*,
    574 F.2d 90 (2d Cir. 1978).............................................................................................7

*SEC v. Culpepper*,
    270 F.2d 241 (2d Cir. 1959)...........................................................................................7

*SEC v. DiBella*,
    587 F.3d 553 (2d Cir. 2009)....................................................................................21, 23

*SEC v. Egan*,
    994 F. Supp. 2d 558 (S.D.N.Y. 2014)..........................................................................15

*SEC v. Espuelas*,
    905 F. Supp. 2d 507 (S.D.N.Y. 2012)..........................................................................22

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996).........................................................................................8

*SEC v. Ginder*,
    752 F.3d 569 (2d Cir. 2014).........................................................................................20

*SEC v. Glantz*,
    No. 94 Civ. 5737 (CSH), 1995 WL 562180 (S.D.N.Y. Sept. 20, 1995) ..........................12, 19

*SEC v. Graham*,
    823 F.3d 1357 (11th Cir. 2016) .....................................................................................8

*SEC v. Jones*,
    No. 05 Civ. 7044 (RCC), 2006 WL 1084276 (S.D.N.Y. Apr. 25, 2006) ................................7

*SEC v. Jones*,
    476 F. Supp. 2d 374 (S.D.N.Y. 2007)........................................................................7, 8

*SEC v. Kelly*,
    663 F. Supp. 2d 276 (S.D.N.Y. 2009)............................................................................7

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011)..........................................................................18

*SEC v. Landberg*,
    836 F. Supp. 2d 148 (S.D.N.Y. 2011) (Castel, J.) ....................................................12, 13

*SEC v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010)......................................................................14, 18

*SEC v. Monarch Funding Corp.*,
  192 F.3d 295 (2d Cir. 1999)................................................................12,18, 20

*SEC v. Mudd*,
  885 F. Supp. 2d 654 (S.D.N.Y. 2012)..........................................................15, 17

*SEC v. Patel*,
  61 F.3d 137 (2d Cir. 1995)........................................................................9

*SEC v. Pentagon Capital Mgmt. PLC*,
  725 F.3d 279 (2d Cir. 2013)................................................................12, 16, 17

*SEC v. Rana Research, Inc.*,
  8 F.3d 1358 (9th Cir. 1993) ......................................................................18

*SEC v. Shanahan*,
  646 F.3d 536 (8th Cir. 2011) ....................................................................20

*SEC v. Stoker*,
  865 F. Supp. 2d 457 (S.D.N.Y. 2012)..........................................................19, 20

*SEC v. Syron*,
  934 F. Supp. 2d 609 (S.D.N.Y. 2013)..........................................................13, 15, 19

*SEC v. Texas Gulf Sulphur Co.*,
  401 F.2d 833 (2d Cir. 1968) (en banc)..........................................................17

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)........................................................................14

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008)........................................................................6

*T.H.C., Inc. v. Fortune Petroleum Corp.*,
  No. 96 Civ. 2690, 1999 WL 182593 (S.D.N.Y. Mar. 31, 1999) ................................9

*United States v. Peoni*,
  100 F.2d 401 (2d Cir. 1938)........................................................................23

*United States ex rel. Ladas v. Exelis, Inc.*,
  824 F.3d 16 (2d Cir. 2016)........................................................................25

*Whalen v. Hibernia Foods PLC*,
  No. 04 Civ. 3182, 2005 WL 1799370 (S.D.N.Y. Aug. 1, 2005) ..............................14

**FEDERAL RULES, REGULATIONS, AND STATUTES**

28 U.S.C. § 2462........................................................................................2, 6, 7, 8

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124
     Stat. 1376 § 929M(a) (July 21, 2010) ...................................................................2, 24

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124
     Stat. 1376 § 929O (July 21, 2010) ..................................................................2, 21, 22

Fed. R. Civ. P. 9(b) ..............................................................................2, 9, 10, 11, 12, 13

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 6

Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a)........................................1, 12, 17, 18, 19, 21

Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b)........................................1, 12, 15, 17, 18, 21

Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c)........................................1, 12, 17, 18, 19, 21

Securities Act of 1933

        Section 15(b), 15 U.S.C. § 77o(b) ...............................................................1, 24

        Section 17(a)(1), 15 U.S.C. § 77q(a)(1)......................................1, 12, 15, 18, 19

        Section 17(a)(2), 15 U.S.C. § 77q(a)(2)......................................1, 12, 18, 19, 20

        Section 17(a)(3), 15 U.S.C. § 77q(a)(3)......................................1, 12, 18, 19, 20

Securities Exchange Act of 1934

        Section 10(b), 15 U.S.C. § 78j(b) .................................................1, 12, 15, 21

        Section 20(e), 15 U.S.C. § 78t(e).................................................1, 21, 23

OTHER RULES

NASDAQ Rule 4310(c)(6) ......................................................3, 4, 14, 15, 20, 23

NASDAQ Rule 5505(a)(3) ..........................................................................................3

Defendant William W. Uchimoto respectfully submits this memorandum of law in support of his motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice the claims asserted against him in the Second Amended Complaint ("Complaint" or "SAC") filed by the United States Securities and Exchange Commission ("SEC").[1]

## I.    PRELIMINARY STATEMENT

The Second Amended Complaint is the SEC's *third* unsuccessful attempt to formulate viable claims against Mr. Uchimoto.  It was filed on August 5, 2016, almost six months after Mr. Uchimoto filed his pre-motion letter on February 11, 2016 (ECF No. 81) and more than five weeks after Mr. Uchimoto moved to dismiss the Amended Complaint on June 29, 2016 (ECF No. 108).  Despite having twice had the benefit of Mr. Uchimoto's arguments in favor of dismissal, the SEC's Complaint fails to address any of the fatal deficiencies Mr. Uchimoto previously identified and which he presses again in support of this motion.

The gravamen of the SEC's Complaint remains a secret, complex, transnational stock-manipulation scheme allegedly orchestrated by Benjamin Wey, his sister Tianyi Wei, his wife Michaela Wey, and Mr. Wey's New York Global Group ("NYGG").[2]  But the SEC is not able to allege specifically what role, if any, Mr. Uchimoto played in the Weys' purported scheme—or even that he was aware of any such scheme.  Nor does the SEC allege that Mr. Uchimoto's statements were made in connection with the purchase or sale of securities or that he spoke to

---

[1]  The Complaint alleges that Mr. Uchimoto (i) violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) ("Section 10(b)"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5") (First Claim) (SAC ¶¶ 116-19); (ii) violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a) ("Section 17(a)") (Fifth Claim) (SAC ¶¶ 132-34); (iii) aided and abetted violations of Section 10(b) and Rule 10b-5, in violation of Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e) ("Section 20(e)") (Third Claim) (SAC ¶¶ 123-26); and (iv) aided and abetted violations of Section 17(a), in violation of Section 15(b) of the Securities Act, 15 U.S.C. § 77o(b) ("Section 15(b)") (Seventh Claim) (SAC ¶¶ 139-42).  Mr. Uchimoto joins and adopts to the extent applicable to the claims against him the arguments made by Messrs. Robert Newman and Seref Doğan Erbek in their respective motions to dismiss the SAC.

[2]  As to Mr. Uchimoto, the Second Amended Complaint added only *one* allegation, specifically that Mr. Uchimoto's legal practice was dominated by his representation of Mr. Wey's NYGG clients.  (SAC ¶ 27.)  If this case proceeds to discovery, Mr. Uchimoto anticipates the record will show that this allegation is inaccurate.

investors.  Instead, the SEC rests its stale securities fraud claims on two purportedly misleading

statements made to NASDAQ during *one* of two discrete legal assignments his former law firm

undertook in 2008 and 2009—more than seven years ago—on behalf of two public company

clients, SmartHeat, Inc. ("SmartHeat") and Deer Consumer Products, Inc. ("Deer").

The SEC's Complaint should be dismissed with prejudice for the following reasons,

among others:

> • Under 28 U.S.C. § 2462 and *Gabelli v. SEC*, 133 S. Ct. 1216 (2013), the SEC's claim for civil penalties against Mr. Uchimoto for statements and actions that occurred prior to September 2010 is barred by the five-year statute of limitations.  Furthermore, the SEC's claims for injunctive relief are punitive in nature and time-barred.

> • The SEC fails to allege with the specificity required by Fed. R. Civ. P. 9(b) the role Mr. Uchimoto supposedly played in the Weys' scheme.  The Complaint contains *no* specific allegations permitting any inference that Mr. Uchimoto was involved in or knew of that alleged fraud.  The Complaint also fails under Rule 9(b) because it does not identify the specific listing application during which the two purported misstatements were made or why the purported statements were false.

> • The SEC fails to plead that Mr. Uchimoto acted with scienter, or that he acted with any motive beyond zealous advocacy on behalf of two of his law firm's clients.  Moreover, Mr. Uchimoto's statements to the NASDAQ were immaterial when made.

> • The SEC impermissibly seeks to retroactively apply post-Dodd-Frank law and standards, passed in July 2010, to actions from 2008 and 2009.  The SEC did not have a cause of action for aiding and abetting violations of the Securities Act prior to July 2010.

## II.    STATEMENT OF FACTS[3]

### A.    Mr. Uchimoto's Representation of SmartHeat and Deer

In 2008 and 2009, Mr. Uchimoto, then a law partner at Buchanan Ingersoll & Rooney

PC, was retained by two public companies, SmartHeat and Deer, "to assist them in obtaining

listings on the NASDAQ."  (SAC ¶ 27.)  The SEC's claims against Mr. Uchimoto are limited to

---

[3]  Mr. Uchimoto vehemently disputes the SEC's allegations against him, which nevertheless are assumed to be true for the sole purpose of this motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

two purportedly misleading statements made in connection with the listing work performed on behalf of either SmartHeat *or* Deer—the SEC does not identify which one.

In 2008-2009, NASDAQ Rule 4310(c)(6) required a company seeking to become listed on NASDAQ to have a minimum of 300 "round-lot shareholders," which are shareholders owning at least 100 shares. (*See* SAC ¶¶ 6, 83.) But the plain language of Rule 4310(c)(6) did not distinguish for purposes of qualifying as a round-lot shareholder among shareholders who came to possess their shares through trades, gifts, inheritance, or otherwise, or even between shares held in registered form (*i.e.*, certificated shares held in the name of a beneficial shareholder) and shares held in "street name" (*i.e.*, shares held in brokerage accounts).[4]

In September 2008, SmartHeat reported to NASDAQ that it had more than 300 round-lot shareholders; SmartHeat was listed on January 29, 2009. (SAC ¶¶ 87, 90.) In June 2009—five months after SmartHeat's listing application was approved—Deer reported to NASDAQ that it had 300 round-lot shareholders. (*Id.* ¶¶ 87, 90.) Deer was listed on NASDAQ on July 16, 2009. (*See id.* ¶ 90.)

### B. Alleged Misstatements By Mr. Uchimoto

The Complaint's fraud allegations against Mr. Uchimoto concern satisfaction of NASDAQ's 300 round-lot shareholder rule. The Complaint alleges that after evaluating the listing applications for SmartHeat and Deer, NASDAQ asked Mr. Uchimoto how certain

---

[4] When the SmartHeat listing application was submitted in late 2008, NASDAQ Rule 4310(c)(6) was in effect. *See* NASDAQ Rule 4310(c)(6), *amended by* SR-NASDAQ-2008-037 (effective June 17, 2008) ("In the case of common stock, for initial listing there shall be at least 300 round lot holders of the security and for continued listing there shall be at least 300 public holders of the security.") (Declaration of H. Rowan Gaither IV in Support of Defendant William W. Uchimoto's Motion to Dismiss the Second Amended Complaint, dated August 26, 2016 ("Gaither Decl.") Ex. A). In April 2009, Rule 4310(c)(6) was renumbered without substantive change as NASDAQ Rule 5505(a)(3), which was effective at the time the Deer listing application was submitted. *See* NASDAQ Rule 5505(a)(3), *adopted by* SR-NASDAQ-2009-018 (effective Apr. 13, 2009) ("Initial Listing Requirements for Primary Equity Securities: . . . (3) At least 300 Round Lot Holders") (Gaither Decl. Ex. B). In deciding a motion to dismiss, "the Court may consider documents that are referenced in the Complaint[.]" *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 623 (S.D.N.Y. 2007) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

shareholders who owned exactly 100 shares, including himself, had received those shares.  (*See* SAC ¶ 87.)  First, Mr. Uchimoto allegedly misrepresented which Wey family member gave him and his wife a nominal number of shares—even though the Complaint makes clear that he disclosed that the shares were gifted to him by the Weys.  (*Id.* ¶ 88.)  Mr. Uchimoto allegedly volunteered that he, his spouse, and others had received 100 shares as gifts from Tianyi Wei, "a social friend in China who is a shareholder and is not an affiliate of the Company."  (*Id.*)  According to the Complaint, Mr. Uchimoto said at a later, unspecified date that he had received the shares from Benjamin Wey, described by the SEC as "an affiliate of the Company," though the SEC does not specify whether the "Company" was SmartHeat or Deer, provide factual or legal support for the contention that Mr. Wey was affiliated with it, or demonstrate how Mr. Uchimoto would have known about the affiliation—and thus why his statement to NASDAQ would have been false when made.  (*Id.*)

Second, the Complaint alleges that "NASDAQ informed Uchimoto that it did not count gifted shares toward [Rule 4310(c)(6)'s 300 round-lot] minimum shareholder requirement."  (SAC ¶ 89.)  The Complaint fails to identify a single published NASDAQ rule or interpretation prohibiting counting gifted shares toward the shareholder requirement; nonetheless, the SEC claims that NASDAQ's arbitrary decision not to count such shares was due to non-statutory concerns over "trading interest."  (*See id.* ¶ 87.)  Allegedly, Mr. Uchimoto "then proposed to Benjamin Wey a plan to have the previously gifted shares deposited into brokerage accounts" purportedly to "disguis[e] the holdings of individual Gifted Shareholders."  (*Id.* ¶ 89.)  Here, the SEC ignores the logic of its own allegations:  Transfer of registered shares to brokerage accounts would make those shares readily available "to provide the liquidity necessary to promote fair and orderly markets," which the SEC alleges was NASDAQ's concern.  (*Id.* ¶ 87.)  Instead, the

Complaint alleges that Mr. Uchimoto fraudulently "informed NASDAQ that his clients had satisfied the round-lot shareholder requirement without counting the Gifted Shareholders," when those shareholders were still included in the shareholder count.  (*Id.* ¶ 90.)

The Complaint does not provide any notice as to the form these communications took, the identity of the NASDAQ participants, the context and when NASDAQ's questions were posed and when Mr. Uchimoto responded, or even whether Mr. Uchimoto's alleged statements related to SmartHeat's listing application or Deer's.  The Complaint also alleges that Mr. Uchimoto "received fees as a result of Benjamin Wey directing the NYGG Clients to retain [him] to provide legal services" (SAC ¶ 11) and that his "legal practice was dominated by his representation of Wey's NYGG clients, which accounted for three of his top five clients, and the majority of his billings for a significant portion of the Relevant Period" (*id.* ¶ 27).  There are no allegations that Mr. Uchimoto did any other work for SmartHeat or Deer after the companies became listed on NASDAQ.

### C.    The Alleged Secret Stock Manipulation Scheme

The Complaint also contains a series of broad allegations regarding an elaborate, concealed stock manipulation scheme on the part of, in particular, co-defendants Mr. Wey, Ms. Wei, and Ms. Wey.  According to the Complaint, Mr. Wey and his company, defendant NYGG, were retained by Chinese operating companies to assist them in becoming publicly traded U.S. companies.  (SAC ¶¶ 16, 18.)  The SEC alleges that Mr. Wey, Ms. Wei, and Ms. Wey engaged in a scheme "to *secretly* take and profit from control of the NYGG Clients using a network of foreign nominees."  (*Id.* ¶ 2 (emphasis added).)  The Weys allegedly used foreign nominee companies and reverse mergers between Chinese operating companies and U.S. shell companies to obtain controlling interests in SmartHeat, Deer, and CleanTech Innovations, Inc. ("CleanTech") (*id.* ¶¶ 47-68), inflated the number of SmartHeat and Deer shareholders by gifting

shares (*id.* ¶¶ 58, 83), manipulated the markets for Deer and CleanTech securities (*id.* ¶¶ 91-102), and failed to make required public disclosures (*id.* ¶¶ 103-11).

The Complaint contains no specific allegations showing that Mr. Uchimoto knew about or was involved in any of these activities.  Rather, the Complaint offers only impermissibly vague and general statements that he "assist[ed]" Mr. Wey or was "involv[ed]" in carrying out certain aspects of it.  For example, the Complaint alleges that "Benjamin Wey and others working with him, including Newman and . . . Uchimoto, misled underwriters, NASDAQ, and others[.]"  (SAC ¶ 5.)  But the Complaint does not identify what, if anything, Mr. Uchimoto said or did to mislead underwriters or "others," apart from the two purported misrepresentations to NASDAQ that concerned a discrete aspect of one company's listing application.

## III.   ARGUMENT[5]

### A.   The SEC's Claims Are Barred By The Five-Year Statute Of Limitations Applicable To Civil Enforcement Actions (All Claims).

Under 28 U.S.C. § 2462, any action "for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise" must be commenced "within five years from the date when the claim first accrued."  28 U.S.C. § 2462.  This five-year statute of limitations "begins to tick" when the fraud occurs.  *Gabelli v. SEC*, 133 S. Ct. 1216, 1219-20 (2013).  "[T]he limitations period in § 2462 applies to civil penalties and equitable relief that seeks to punish, but does not

---

[5]  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Although pleadings are to be liberally construed, "bald assertions and conclusions of law will not suffice."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).  Allegations that are "'merely consistent with,' rather than suggestive of, a finding of liability will not support a reasonable inference."  *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013) (citation omitted).

apply to equitable relief which seeks to remedy a past wrong or protect the public from future harm." *SEC v. Jones*, 476 F. Supp. 2d 374, 381 (S.D.N.Y. 2007).

### 1.    The SEC's Claim For Civil Monetary Penalties Is Time-Barred.

The SEC's claim for civil monetary penalties against Mr. Uchimoto is time-barred because any cause of action arose at the latest in July 2009, more than six years before this action was filed on September 10, 2015.  The SEC's allegations against Mr. Uchimoto relate to alleged misrepresentations made *prior* to July 16, 2009, the date Deer became listed on NASDAQ. (SAC ¶ 90.)  The Complaint contains no allegations that Mr. Uchimoto engaged in any unlawful conduct that occurred or continued after that date.[6]  Because civil monetary penalties are subject to the five-year statute of limitations in 28 U.S.C. § 2462, *see Gabelli*, 133 S. Ct. at 1223-24, the SEC's claim for civil monetary penalties must be dismissed.

### 2.    The SEC's Claims For An Injunction And Disgorgement Are Time-Barred And Unfounded.

The injunction sought by the SEC would serve only to penalize Mr. Uchimoto, and therefore is subject to the five-year statute of limitations under 28 U.S.C. § 2462 and should be dismissed as time-barred.  To determine if an injunction is remedial or punitive, courts look to "the likelihood of recurrence of violations and the possible collateral consequences of issuing an injunction." *Jones*, 476 F. Supp. 2d at 383.[7]  Where the request for an injunction is based "solely

---

[6]  The Court should reject any attempt by the SEC to argue that the continuing violation doctrine applies.  First, several courts have questioned whether the continuing violation doctrine is applicable at all in securities fraud cases. *See SEC v. Jones*, No. 05 Civ. 7044 (RCC), 2006 WL 1084276, at *4-5 (S.D.N.Y. Apr. 25, 2006) (citing cases). Second, that doctrine applies only to "continual unlawful acts, not continual ill effects from a single violation." *SEC v. Kelly*, 663 F. Supp. 2d 276, 288 (S.D.N.Y. 2009) (citation omitted); *see Giardina v. Healthnow New York, Inc.*, 229 F.3d 1135 (2d Cir. 2000) ("To invoke the continuing-violation doctrine, at least some of the conduct alleged to be unlawful . . . must have occurred during the limitations period.").  Here, Mr. Uchimoto is not alleged to have undertaken any unlawful act within the five years preceding the filing of the Complaint.  His alleged misconduct occurred (and was over) by July 2009 at the latest.

[7]  To demonstrate a likelihood of recurrence, the Complaint must "go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence." *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978); *see also SEC v. Culpepper*, 270 F.2d 241, 250 (2d Cir. 1959) ("[T]he moving party must satisfy the court that

*(continued)*

on [defendant's] long past conduct and [the plaintiff] made no attempt to evaluate his present fitness or competence," the requested relief will be deemed a punishment.  *See Proffitt v. FDIC*, 200 F.3d 855, 862 (D.C. Cir. 2000) (discussing *Johnson v. SEC*, 87 F.3d 484, 488-89 (D.C. Cir. 1996) (five-year limitations period applied where SEC's requested injunction acted as a penalty)).

The SEC has not alleged that Mr. Uchimoto is likely to commit additional unlawful acts or poses any future threat to the public.  The SEC has not identified *any* unlawful acts by Mr. Uchimoto that post-date the purported misrepresentations made more than six-and-a-half years ago.  *See Jones*, 476 F. Supp. 2d at 384 (noting that "several years have passed since Defendants' alleged misconduct apparently without incident[,] . . . further undercut[ting] the Commission's assertion that Defendants pose a continuing risk to the public").  Further, the practical effect of a public injunction would be an unwarranted and damning blemish on his more than thirty-year career as a securities lawyer.  The severity of such consequences makes clear that an injunction would carry with it the "sting of punishment."  *See id.* at 385.  Accordingly, the SEC's claim for an injunction is punitive and should be dismissed.

The SEC's claim for disgorgement is also time-barred.  *See SEC v. Graham*, 823 F.3d 1357, 1364 (11th Cir. 2016) (concluding that where "disgorgement is imposed as redress for wrongdoing and can be considered a subset of forfeiture," the five-year statute of limitations in § 2462 applies).  In addition, the SEC's claim is baseless.  Disgorgement is a discretionary remedy designed to deprive a securities law violator of ill-gotten gains flowing from violations.  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996).  The amount of disgorgement should be "a reasonable approximation of profits causally connected to the violation."  *Id.*

---

relief is needed [and] that there exists some cognizable danger of recurrent violation . . . .").  The SEC has made no effort to do so in the Complaint.

(quoting *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995)).  But the SEC does not allege that Mr.

Uchimoto realized any ill-gotten profits from the alleged fraud; rather, the only economic benefit

that the SEC alleges was his *law firm's* receipt of legal fees and, perhaps, his receipt of 100

shares as a gift.  (SAC ¶¶ 11, 27, 88.)

### B.     The Complaint Must Be Dismissed For Failure To Plead Fraud With Particularity As Required Under Rule 9(b) (All Claims).

Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff alleging fraud to

"state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b); *see ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *Novak v. Kasaks*, 216 F.3d

300, 306 (2d Cir. 2000).  Rule 9(b) applies to each of the SEC's claims against Mr. Uchimoto

because all of the claims sound in fraud.  *See Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir.

2004) (noting that the Second Circuit applies Rule 9(b)'s heightened standard not only to claims

explicitly alleging fraud, but also where "the wording and imputations of the complaint are

classically associated with fraud").

### 1.     The SEC Fails To Allege With Particularity That Mr. Uchimoto Participated In A Stock Manipulation Scheme.

The SEC fails to meet the requirements of Rule 9(b) because it does not allege any facts

showing or even inferring that Mr. Uchimoto participated in the Weys' alleged secret stock

manipulation scheme.  To satisfy Rule 9(b), a fraud claim based on alleged market manipulation

must set forth "to the extent possible, [1] what manipulative acts were performed, [2] which

defendants performed them, [3] when the manipulative acts were performed, and [4] what effect

the scheme had on the market for the securities at issue."  *ATSI Commc'ns, Inc.*, 493 F.3d at 101

(citation omitted).  Where, as here, a complaint asserts claims against more than one defendant,

"[c]ourts are especially vigilant in applying Rule 9(b)."  *T.H.C., Inc. v. Fortune Petroleum Corp.*,

No. 96 Civ. 2690, 1999 WL 182593, at *3 (S.D.N.Y. Mar. 31, 1999).

The Complaint contains no particularized allegations that Mr. Uchimoto performed any manipulative acts in connection with the alleged stock manipulation scheme.  Instead, the Complaint merely contains generalized allegations that (i) "Uchimoto and others" provided "assistance" to Mr. Wey in fraudulently inflating the shareholder base for certain companies (SAC ¶¶ 6, 82); (ii) "Benjamin Wey and others working with him, including Newman and . . . Uchimoto, misled underwriters, NASDAQ, and others" (*id.* ¶ 5); and (iii) "Benjamin Wey and NYGG, with the involvement of Tianyi Wei, Michaela Wey, Newman, and Uchimoto, engaged in deceptive conduct" (*id.* ¶ 19).  But these general, unsupported, and conclusory allegations that Mr. Uchimoto "and others" "assist[ed]" or were "involv[ed]" in Mr. Wey's alleged scheme do not satisfy Rule 9(b)'s particularity requirements.  Such "[s]weeping references to the collective fraudulent actions of multiple defendants" have been found insufficient under Rule 9(b).  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994); *see Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 640 (S.D.N.Y. 2003) (Rule 9(b) standards were not satisfied where complaint lumped several defendants together and "fail[ed] to specify what each defendant said").  The SEC's claims against Mr. Uchimoto based on his purported "assistance" or "involvement" in a broad scheme to manipulate the market in securities must be dismissed.

## 2.    The SEC Fails To Allege With Particularity Which Company The Alleged Misrepresentations Referred To, Where And When The Alleged Statements Were Made, And Why They Were False.

The Complaint alleges that Mr. Uchimoto committed securities fraud by making two purportedly misleading statements in connection with *one* of two different listing applications to NASDAQ.  However, in violation of Rule 9(b), the SEC fails to identify which statements were made in connection with which listing application.  A fraud claim based on an alleged misrepresentation must "(1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (citation omitted). Rule 9(b) requires a court to "individually analyze[]" each of the specific statements to determine if the plaintiff has pleaded fraud with particularity. *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 382 n.2 (S.D.N.Y. 2003).

The Complaint alleges that "NASDAQ asked Uchimoto, as SmartHeat's and Deer's listing counsel, about the circumstances by which [certain] shareholders received shares," and that Mr. Uchimoto's response contained "misleading statements." (SAC ¶¶ 87-88.) The Complaint also alleges that after NASDAQ informed Mr. Uchimoto that it would not count gifted shares toward the round-lot shareholder requirement, Mr. Uchimoto "then informed NASDAQ that his clients had satisfied the round-lot shareholder requirement without counting the Gifted Shareholders." (*Id.* ¶¶ 89-90.)

Both of these allegations fail to satisfy Rule 9(b) because they lump together claims that Mr. Uchimoto misrepresented facts regarding SmartHeat and Deer, two companies that went through separate listing processes at different times. Furthermore, the allegations lack specificity in that they do not identify "where and when" the alleged statements were made. *Nakahata*, 723 F.3d at 197. To the extent Mr. Uchimoto made any statements to NASDAQ during the listing process for SmartHeat, those purported statements must have been made before SmartHeat's listing was approved on January 29, 2009—approximately five months before Deer allegedly began its listing process. (SAC ¶¶ 87, 90.) Moreover, it is unclear how Mr. Uchimoto allegedly made these statements—in writing, in person, or otherwise—or even whether he did so contemporaneously or later.

The SEC additionally alleges that Mr. Uchimoto's statement to NASDAQ that he did not receive the shares from an "affiliate" of the Company is false because "Benjamin Wey was at all relevant times 'an affiliate of the Company.'"  (SAC ¶ 88.)  Affiliate status is a legal matter, and the SEC violates Rule 9(b) by failing to identify (i) the "Company," (ii) the basis for Mr. Wey's purported affiliation with it, and (iii) how Mr. Uchimoto would have known of that affiliation, and thus why the statement would have been false when made.

The SEC's failure to allege with particularity which company Mr. Uchimoto's purported statements referred to, where and when the statements were made, and the basis of their alleged falsity warrants dismissal of the Complaint against Mr. Uchimoto.

### C.    The SEC's Claims Under Section 10(b), Rule 10b-5(b), And Section 17(a)(1) Must Be Dismissed For Failure To Plead Scienter (First And Fifth Claims).

To state a claim under Section 10(b) and Rule 10b-5 promulgated thereunder, the SEC must allege that the defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities."  *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013) (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)). The elements of a claim under Section 17(a)(1), (2), and (3) are "[e]ssentially the same" as under Section 10(b), except that no showing of scienter is required under subsections 17(a)(2) and (3).[8] *Monarch Funding Corp.*, 192 F.3d at 308.

To plead scienter under Rule 9(b), the SEC must "allege facts that give rise to a strong inference of fraudulent intent."  *SEC v. Landberg*, 836 F. Supp. 2d 148, 154 (S.D.N.Y. 2011) (Castel, J.) (quoting *Novak*, 216 F.3d at 306); *see Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52

---

[8]  In addition, a claim under Section 17(a)(2) "must allege that defendant actually obtained money or property by means of the untrue statements."  *SEC v. Glantz*, No. 94 Civ. 5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995).  *See* Section III.G, *infra*.

(2d Cir. 1995) ("[W]e must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations.'" (citation omitted)).  The SEC may do so "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Landberg*, 836 F. Supp. 2d at 154 (quoting *Novak*, 216 F.3d at 307); *accord SEC v. Syron*, 934 F. Supp. 2d 609, 631 (S.D.N.Y. 2013).  The SEC has failed to establish a strong inference of fraudulent intent through either method.

### 1. The Complaint Fails To Allege That Mr. Uchimoto Had A Motive To Commit Fraud.

The SEC has failed to plead any facts showing that Mr. Uchimoto had a motive to commit fraud.  To satisfy its burden, the SEC must allege that the defendant "benefitted in some concrete and personal way from the purported fraud."  *Novak*, 216 F.3d at 307-08.  The SEC fails to allege that Mr. Uchimoto had any motive to participate in the Weys' alleged stock manipulation scheme or that he benefited personally from it—indeed, the SEC fails to allege with particularity that he played any role whatsoever in the Weys' activities.

The SEC fails to allege that Mr. Uchimoto had any improper motive to make misleading statements to NASDAQ in connection with the listing applications.  The SEC's generalized allegation that Mr. Uchimoto's law firm "received fees as a result of Benjamin Wey directing the NYGG Clients to retain [him] to provide legal services" (SAC ¶ 11) is insufficient as a matter of law to establish motive because the desire to earn fees "can be ascribed to 'virtually all corporate insiders,' or 'any publicly owned, for profit endeavor.'"  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 446 (S.D.N.Y. 2005) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001)).  For the same reason, the SEC's allegation that Mr. Uchimoto's "legal practice was

13

dominated by his representation of Wey's NYGG clients, which accounted for three of his top five clients, and the majority of his billings" (SAC ¶ 27) is insufficient to establish a motive to commit fraud.

Moreover, the SEC's allegation that Mr. Uchimoto and his wife each received 100 shares (SAC ¶¶ 86, 88) does not give rise to a strong inference of fraudulent intent. Mr. Uchimoto freely admitted to NASDAQ that he received shares as a gift, undermining any suggestion of fraud. (*See id.* ¶ 88.) It is also unreasonable to argue that Mr. Uchimoto, a respected securities lawyer with a long, successful career, would "risk ruination of [his] reputation" for the *de minimis* value of such stock. *See Whalen v. Hibernia Foods PLC*, No. 04 Civ. 3182, 2005 WL 1799370, at \*2 (S.D.N.Y. Aug. 1, 2005) ("no independent auditor would risk ruination of its reputation for the fees it would collect in order to suppress fraud"); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) (court must assume "that the defendant is acting in his or her informed economic self-interest"); *Duncan v. Pencer*, No. 94 Civ. 0321 (LAP), 1996 WL 19043, at \*10 (S.D.N.Y. Jan. 18, 1996) (finding it "economically irrational" that a large accounting firm would "condone a client's fraud in order to preserve a fee [and,] by doing so, jeopardize its reputation and license, as well as subject itself to potential damages literally tens of thousands of times as large as its fee").

The only reasonable inference that can be drawn is that Mr. Uchimoto was motivated to assist his clients SmartHeat and Deer achieve listings in the face of NASDAQ's arbitrary decision not to count gifted shares toward Rule 4310(c)(6)'s 300 round-lot shareholder requirement. The desire to retain and serve a client, like the motive to earn fees, is insufficient to allege scienter. *See SEC v. Lee*, 720 F. Supp. 2d 305, 335 (S.D.N.Y. 2010) ("[T]he motive to retain a business' largest client is a general rather than specific motive.").

2.      **The Circumstances Alleged In The Complaint Do Not Give Rise To A Strong Inference Of Conscious Misbehavior Or Recklessness.**

Because the SEC has failed to demonstrate a motive to commit fraud, it must allege facts giving rise to a strong inference of conscious misbehavior or recklessness.  Where the SEC has failed to demonstrate a motive for fraud, it "must produce a *stronger* inference of recklessness." *Syron*, 934 F. Supp. 2d at 631 (quoting *Kalnit*, 264 F.3d at 143) (emphasis added); *see also SEC v. Egan*, 994 F. Supp. 558, 565 (S.D.N.Y. 2014) ("Absent allegations of improper motive . . . the strength of the circumstantial allegations must be correspondingly greater.") (citation omitted).  The SEC has also failed to meet its burden here.

Recklessness may be shown by "deliberate illegal behavior" or conduct that is an "extreme departure from the standards of ordinary care.'" *Novak*, 216 F.3d at 308; *SEC v. Mudd*, 885 F. Supp. 2d 654, 661 (S.D.N.Y. 2012).  Mr. Uchimoto's responses to NASDAQ's questions about the source of the nominal shares he received do not reflect "deliberate illegal behavior." The SEC concedes that Mr. Uchimoto correctly informed NASDAQ that he had received those shares as a gift from the Wey family.  Further, Mr. Uchimoto's statement to NASDAQ that his clients met the black-letter requirement of NASDAQ Rule 4310(c)(6)—which does not distinguish between gifted and purchased shares, or between shares held in registered form and shares held in street name—cannot give rise to an inference of "deliberate illegal behavior." (SAC ¶¶ 83, 87, 90.)  The SEC's claims against Mr. Uchimoto for violating Section 10(b), Rule 10b-5(b) and Section 17(a)(1) must be dismissed for failure to plead scienter.

D.      **The SEC Has Failed To Allege Sufficiently That Mr. Uchimoto Made A Materially Misleading Statement As To The Source Of His Shares (First And Fifth Claims).**

The SEC alleges that Mr. Uchimoto's response to NASDAQ regarding the source of his shares was misleading because (i) he described Tianyi Wei as a "social friend" when, in fact, he

had met her only once in an airport; and (ii) he later "admitted" that he had received the shares from Mr. Wey, a purported "affiliate of the company," although Mr. Uchimoto allegedly told NASDAQ that he had not received his shares from an affiliated person.  (SAC ¶ 88.)  Again, the SEC has failed to identify whether SmartHeat or Deer was the subject of the alleged exchange— or to offer any other specific allegations that might support an inference that the statement was false when made.

These allegations, moreover, fail to identify a materially misleading statement.  *Pentagon Capital Mgmt. PLC*, 725 F.3d at 285.  "A statement or omission is material if 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act.'"  *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (citation omitted).  On a motion to dismiss, a complaint may be dismissed on the ground that alleged misstatements are not material where they are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *Id.* at 390.

Even if Mr. Uchimoto described Ms. Wei as a "social friend" and Mr. Wey as a non-affiliate of "the Company" (SAC ¶ 88), those characterizations were "so obviously unimportant" in light of the fact that he informed NASDAQ that the Wey family had gifted the shares at issue. *See IBEW Local Union No. 58*, 783 F.3d at 390; *see, e.g.*, *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 631 (S.D.N.Y. 2005) (alleged mischaracterization of certain transactions as trades was "so obviously unimportant" in light of the comparatively small volume of assets that should have been listed as loans rather than trades and the fact that the complaint failed to allege how the alleged mischaracterization was material); *Geiger v. Solomon-Page Grp., Ltd.*, 933 F. Supp. 1180, 1184 (S.D.N.Y. 1996) (statement that certain shareholders employed by company's

16

underwriter were not affiliated with the company was "so obviously unimportant" because it was truthful and did not permit investors to conclude that there was no relationship between those shareholders and any other company).  Mr. Uchimoto's disclosure put NASDAQ on notice that the Weys were gifting shares to individuals—the rest was immaterial.

        **E.**    **The SEC Has Failed To Allege That Mr. Uchimoto Made A Misleading Statement In Connection With The Purchase Or Sale Of Securities (First And Fifth Claims).**

      The SEC's claims also fail because Mr. Uchimoto's statements were not made "in connection with the purchase or sale of any security," as required under Rule 10b-5.  *Pentagon Capital Mgmt. PLC*, 725 F.3d at 285 (citation omitted).  To give rise to a securities law violation, a misstatement or omission must be "of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities."  *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998); *see also SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 861-62 (2d Cir. 1968) (en banc) (misrepresentations are made "in connection with" the purchase of sale of securities when the statements are made "in a manner reasonably calculated to influence the investing public").[9]

      Here, the Complaint alleges that Mr. Uchimoto made misleading statements to *NASDAQ* in connection with a listing application.  Any statements he made were therefore related to his pursuit of a valuable commercial privilege for a client company from NASDAQ, and were not connected to any imminent securities transaction.  There are no allegations that Mr. Uchimoto's statements were ever disseminated to the public or that he made them in an attempt to "influence the investing public."  Thus his statements were not the type on which a reasonable investor

---

[9]  Courts construe the "in connection with" requirement broadly "so as to encompass fraud in any part of the selling process."  *SEC v. Mudd*, 885 F. Supp. 2d 654, 670 (S.D.N.Y. 2012). The Supreme Court has noted that "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006).

would rely in making investment decisions. *Cf. SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993) (noting that the "in connection with" requirement is generally met "[w]here the fraud alleged involves public dissemination in a document such as a press release, annual report, investment prospectus or other such document on which an investor would presumably rely"). Where, as here, the alleged fraud is "attenuated from any possible securities transaction," the SEC's claims must be dismissed. *SEC v. Adoni*, 60 F. Supp. 2d 401, 409 (D.N.J. 1999) (finding the "in connection with" requirement was not satisfied where SEC argued that the fraud "could ultimately have reached financial statements that investors could possibly have relied on").

### F.   The SEC's Claims Under Rule 10b-5(a) And (c) And Section 17(a)(1) And (3) Must Be Dismissed For Failure To Allege Scheme Liability (First And Fifth Claims).

The SEC seeks to bring claims against Mr. Uchimoto for scheme liability under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) based on the same purported misstatements on which it bases its claims under Rule 10b-5(b) and Section 17(a)(2). To state a claim that a defendant has engaged in a deceptive or fraudulent scheme in violation of Rule 10b-5(a) and (c) and Section 17(a)(1) and (3), a plaintiff must allege that the defendant "(1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud, (3) scienter, and (4) reliance." *Lee*, 720 F. Supp. 2d at 325.[10]   However, where the SEC alleges that a defendant has engaged in a deceptive scheme *and* made misstatements, the scheme-liability claims must be dismissed unless the SEC can show that the defendant "undertook a deceptive scheme or course of conduct *that went beyond the misrepresentations*." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 475 (emphasis added); *see also SEC v. Kelly*, 817 F. Supp. 2d 340, 344

---

[10]   Scienter is not required for a Section 17(a)(3) claim. *See SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999).

18

(S.D.N.Y. 2011) ("Scheme liability under subsections (a) and (c) of Rule 10b–5 hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement.").

Here, the SEC has not alleged any specific basis for its claims against Mr. Uchimoto other than his alleged misstatements to NASDAQ.[11]  It follows that the scheme-liability claims under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) must be dismissed.  *See SEC v. China Northeast Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 392 (S.D.N.Y. 2014) (SEC pled defendant's involvement in larger scheme that went beyond mere misrepresentations); *SEC v. Stoker*, 865 F. Supp. 2d 457, 467 (S.D.N.Y. 2012) (pleading a "course of conduct" beyond the alleged misrepresentations).

### G.   The SEC's Claim Under Section 17(a)(2) Must Be Dismissed For Failure To Allege That Mr. Uchimoto Obtained Money Or Property In Connection With The Offer Or Sale Of Securities (Fifth Claim).

To state a claim under Section 17(a)(2), the SEC must allege that (i) the defendant made a material misrepresentation or omission; (ii) in the offer or sale of securities; and (iii) the defendant "obtain[ed] money or property by means of the offerings" or sale.  *Syron*, 934 F. Supp. 2d at 637; *see also SEC v. Glantz*, No. 94 Civ. 5737 (CSH), 1995 WL 562180, at *5 (S.D.N.Y. Sept. 20, 1995) (a claim under Section 17(a)(2) "must allege that defendant actually obtained money or property by means of the untrue statements").

Here, the SEC's claim under Section 17(a)(2) must be dismissed because the SEC fails to allege that Mr. Uchimoto obtained money or property in connection with the offer or sale of securities.  First, the Complaint does not allege that Mr. Uchimoto's compensation was affected by his alleged participation in the fraud.  *See, e.g.*, *Syron*, 934 F. Supp. 2d at 638-40 (dismissing

---

[11]  The Complaint generally alleges that "[d]uring the Relevant Period, among other things, Uchimoto engaged in deceptive conduct to create the appearance that SmartHeat and Deer had met NASDAQ's minimum shareholder requirements for listing."  (SAC ¶ 27.)

SEC's Section 17(a)(2) claim because it failed to allege that defendants personally gained money or property from stock offerings).  While the Complaint alleges that Mr. Uchimoto "received fees as a result of Benjamin Wey directing the NYGG Clients to retain [him] to provide legal services" (SAC ¶ 11) and that "Wey's NYGG Clients accounted for three of his top five clients, and the majority of his billings" (*id.* ¶ 27), the SEC does not claim that such representations or legal fees were conditioned on any fraudulent behavior.  *Cf. Stoker*, 865 F. Supp. 2d at 462-64 (SEC plausibly alleged that defendant had obtained money or property by means of the fraud where his employer benefited as a result of the material misstatements and omissions).  Second, the Complaint does not allege that Mr. Uchimoto and his wife received their shares of stock (SAC ¶ 86) as a result of his purported misconduct.  Without more, the SEC's allegations fail to establish that Mr. Uchimoto obtained any money or property "*by means of* an untrue statement." 15 U.S.C. § 77q(a)(2) (emphasis added).

> **H.    The SEC's Claims Under Section 17(a)(2) And (3) Must Be Dismissed For Failure To Establish That Mr. Uchimoto Did Not Comply With An Applicable Standard Of Care (Fifth Claim).**

Although scienter is not an element of a claim under Section 17(a)(2) or Section 17(a)(3), *Monarch Funding Corp.*, 192 F.3d at 308, the SEC nevertheless must establish that the defendant failed to comply with some applicable standard of care, *SEC v. Ginder*, 752 F.3d 569, 576 (2d Cir. 2014); *SEC v. Shanahan*, 646 F.3d 536, 546 (8th Cir. 2011) ("The SEC's failure to present any evidence at all that [the defendant] . . . violated an applicable standard of reasonable care was fatal to its case.").  The Complaint alleges no facts that Mr. Uchimoto violated any applicable standard of reasonable care in connection with the listing applications for SmartHeat and Deer, which under Rule 4310(c)(6) only required a showing that they met the black-letter 300 round-lot shareholder requirement without regard to how the shareholders received their

shares.  Accordingly, the Complaint fails to allege that Mr. Uchimoto violated any applicable standard of care.

**I.      The SEC Has Failed To Allege Sufficiently That Mr. Uchimoto Aided And Abetted Violations Of The Exchange Act By His Co-Defendants (Third Claim).**

The SEC alleges that Mr. Uchimoto violated Exchange Act § 20(e) by aiding and abetting violations of Exchange Act § 10(b) and Rule 10b-5 by Benjamin Wey, Tianyi Wei, and NYGG.  (SAC ¶¶ 125-26.)  Section 20(e) of the Exchange Act permits the SEC to bring an action against "any person that knowingly or recklessly provides substantial assistance to" a primary violator of the Exchange Act.  15 U.S.C. § 78t(e).[12]  The elements of an aiding and abetting claim by the SEC are: "(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation."  *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012) (quoting *SEC v. DiBella*, 587 F.3d 553, 556 (2d Cir. 2009)).  Even if the Court were to accept, for purposes of this motion, that there was a primary violation of the Exchange Act, the SEC's aiding and abetting claim against Mr. Uchimoto must be dismissed because the SEC has failed to plead (i) that Mr. Uchimoto had actual knowledge of Mr. Wey, Ms. Wei and NYGG's alleged violations of the Exchange Act or (ii) that Mr. Uchimoto rendered substantial assistance to their alleged fraud.

---

[12]  In July 2010, Exchange Act § 20(e) was amended to add the words "or recklessly" after "knowingly."  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 § 929O (July 21, 2010) (codified at 15 U.S.C. § 78t(e)).

     **1.**    **The SEC Has Not Pleaded Facts Showing That Mr. Uchimoto Had Actual Knowledge Of The Purported Scheme To Secretly Manipulate The Securities Of Chinese Companies.**

Mr. Uchimoto's alleged aiding and abetting must have occurred prior to July 19, 2009, when Deer's listing was approved.  (*See* SAC ¶¶ 5-6, 27, 82-90.)  The Second Circuit has held that where the challenged activity occurred prior to July 2010, the SEC is subject to an actual knowledge standard when pleading aiding and abetting violations of the Exchange Act; recklessness will not suffice.  *See Apuzzo*, 689 F.3d at 211 & n.6 (applying actual knowledge standard to conduct that predated passage of Dodd-Frank Act of 2010); *SEC v. Espuelas*, 905 F. Supp. 2d 507, 517 n.3 (S.D.N.Y. 2012) (applying actual knowledge standard because conduct at issue predated Dodd-Frank); *China Northeast Petroleum Holdings Ltd.*, 27 F. Supp. 3d at 394 n.8 (declining to apply recklessness standard to events pre-dating Dodd-Frank).  To plead actual knowledge, the SEC must plead facts showing the "defendant's general awareness of its overall role in the primary violator's illegal scheme[.]"  *Espuelas*, 905 F. Supp. 2d at 518 (quotation omitted).

There are no facts in the Complaint raising an inference that Mr. Uchimoto had any awareness of Mr. Wey, Ms. Wei and NYGG's purported scheme "to *secretly* take and profit from control of the NYGG Clients using a network of foreign nominees."  (SAC ¶ 2 (emphasis added).)  The SEC has failed to allege that Mr. Uchimoto had any actual knowledge of his own "overall role" in the alleged secret, cross-border fraud involving shell companies in China and brokerage accounts in Switzerland.  The Complaint only permits the conclusion that Mr. Uchimoto's awareness was limited to the fact that his law firm had been retained to represent two public companies in their efforts to be listed on the NASDAQ.  The SEC has not met its burden of pleading actual knowledge in regards to its aiding and abetting claim under the Exchange Act.

2.      **The SEC Has Failed To Allege That Mr. Uchimoto Gave Substantial Assistance To The Purported Scheme.**

To impose liability under Exchange Act § 20(e), the SEC must also plead that Mr.

Uchimoto "in some sort associated himself with the [Weys'] venture, that [he] participated in it

as something that he wished to bring about, and that he sought by his action to make it succeed."

*Apuzzo*, 689 F.3d at 212 (quoting *United States v. Peoni*, 100 F.2d 401, 401 (2d Cir. 1938)

(Hand, J.)).  The three components of the test "cannot be considered in isolation from one

another."  *DiBella*, 587 F.3d at 566.  Moreover, where "the SEC plausibly alleges a high degree

of actual knowledge, this lessens the burden it must meet in alleging substantial assistance."

*Apuzzo*, 689 F.3d at 214.  The converse must also be true—the lower the degree of actual

knowledge, the higher the SEC's pleading burden as to substantial assistance.  Even if the Court

were to deem Mr. Uchimoto's limited awareness of his role as a NASDAQ listing lawyer to

satisfy the knowledge element, the sparseness of those allegations raises the SEC's pleading

hurdle.

The SEC fails to meet its burden.  First, there are no specific allegations showing that Mr.

Uchimoto associated himself with Mr. Wey, Ms. Wei and NYGG's allegedly secret (and

complicated) scheme.  His role was limited to being retained by two non-defendants, SmartHeat

and Deer, to represent them during the NASDAQ listing process.  Second, the SEC's allegations

suggest only that Mr. Uchimoto's "wish" was to successfully prosecute his clients' listing

applications in the face of NASDAQ's arbitrary decision to "generally" refuse to count gifted

shares towards Rule 4310(c)(6)'s 300 round-lot shareholder requirement because of non-

statutory concerns over "trading interest."  (*See* SAC ¶¶ 83, 87.)  There are no allegations

suggesting that he participated in or wished to "bring about" anything else.  And third, Mr.

Uchimoto's efforts were directed at successfully listing his clients on the NASDAQ—not

towards the success of any purported cross-border, multi-year fraud.  The SEC's claim against

Mr. Uchimoto for aiding and abetting violations of the Exchange Act must be dismissed.

> **J.**      **The SEC Cannot Bring A Claim For Aiding And Abetting Violations Of The Securities Act Because Mr. Uchimoto's Conduct Occurred Before Congress Created That Right Of Action (Seventh Claim).**

The SEC alleges that Mr. Uchimoto violated Securities Act § 15(b) by aiding and

abetting violations of the Securities Act by Mr. Wey, Ms. Wei, and NYGG.  (SAC ¶¶ 141-42.)

However, as noted above, the SEC's allegations against Mr. Uchimoto concern the period prior

to July 16, 2009, when Deer was listed by NASDAQ.  (*Id.* ¶ 90.)  Prior to July 21, 2010, when

Congress amended the Securities Act to grant a right of action to the SEC for aiding and abetting

violations of the Act,[13] there was no such liability.  Thus, the SEC's claim against Mr. Uchimoto

for aiding and abetting violations of the Securities Act must be dismissed, since application of

Section 15(b) to his conduct would be an impermissibly retroactive application of Dodd-Frank.[14]

> **K.**      **The Complaint Should Be Dismissed With Prejudice.**

The Complaint should be dismissed with prejudice because the SEC has twice amended

its Complaint yet has failed to cure the deficiencies previously identified by Mr. Uchimoto.

Leave to amend "should generally be denied in instances of futility, . . . [or] repeated failure to

cure deficiencies by amendments previously allowed."  *Burch v. Pioneer Credit Recovery, Inc.*,

551 F.3d 122, 126 (2d Cir. 2008).  The SEC had the benefit of knowing Mr. Uchimoto's

arguments in favor of dismissal for more than six months before it filed the Second Amended

Complaint.  On February 11, 2016, Mr. Uchimoto filed a pre-motion letter containing all of the

---

[13]  Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 § 929M(a) (July 21, 2010) (codified at 15 U.S.C. § 78o(b)).

[14]  *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994) (Where a statute would "increase a party's liability for past conduct, or impose new duties with respect to transactions already completed . . . our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result"); *Koch v. SEC*, 793 F.3d 147, 158 (D.C. Cir. 2015) (barring retroactive application by SEC of remedies created by Dodd-Frank because statute "does not expressly authorize retroactive application").

principal arguments set forth herein.  (ECF No. 81.)  On March 21, 2016, the SEC informed Mr.

Uchimoto's counsel that it did not intend to further amend its pleading.  (*See* ECF No. 94.)  On

June 29, 2016, Mr. Uchimoto filed his motion to dismiss the Amended Complaint.  (ECF No.

108.)  On July 20, 2016, the SEC sought the Court's leave to further amend the Amended

Complaint, representing that it did so after "having reviewed the full arguments presented by

defendants Newman, Uchimoto, and Erbek in their motions to dismiss."  (ECF No. 118.)  But the

*only* new allegation regarding Mr. Uchimoto in the Second Amended Complaint is that his legal

practice was dominated by his representation of Mr. Wey's NYGG clients.  (*See* SAC ¶ 27.)

That allegation fails to remedy the infirmities in the SEC's claims.  Where, as here, the plaintiff

was "fully aware of the . . . challenges to [its] pleading[,] . . . asked and received an opportunity

to file a second amended complaint[,] . . . [and that] Second Amended Complaint failed to cure

the . . . deficiencies," dismissal with prejudice is warranted.  *United States ex rel. Ladas v.*

*Exelis, Inc.*, 824 F.3d 16, 28-29 (2d Cir. 2016).

## IV.    CONCLUSION

For the reasons set forth above, the Court should grant Mr. Uchimoto's motion to dismiss

the Second Amended Complaint with prejudice.

Dated: August 26, 2016
       New York, New York

RICHARDS KIBBE & ORBE LLP

By: _____
       Daniel C. Zinman (*dzinman@rkollp.com*)
       H. Rowan Gaither IV (*rgaither@rkollp.com*)
       Margaret Winterkorn Meyers (*mmeyers@rkollp.com*)
       200 Liberty Street
       New York, NY  10281-1003
       Telephone: (212) 530-1800
       Facsimile: (212) 530-1801

       *Attorneys for Defendant William W. Uchimoto*

25