UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                                    Plaintiff,

v.

BENJAMIN WEY, *et al.*

                                    Defendants,

and

ADVANTAGE CONSULTANTS, LTD., *et al.*

                                    Relief Defendants.

Civil Action No. 15-7116-PKC
ECF CASE

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANT WILLIAM UCHIMOTO'S MOTION TO DISMISS

Derek S. Bentsen
Joshua E. Braunstein
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
202.551.6426 (Bentsen)
202.772.9245 (facsimile)
bentsend@sec.gov

*Counsel for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT......................................................................................................1

FACTS............................... ................................................................................................2

ARGUMENT.......................................................................................................................4

   I. The SEC's Enforcement Action Against Uchimoto Is Not Time Barred ..........................................4

  II. The SEC Has Pled Uchimoto's Misrepresentation
     with Particularity...........................................................................................................7

  III. The SEC Has Adequately Pled Scienter .........................................................................9

  IV. The SEC Has Pled a Material Misstatement.....................................................................10

   V. Uchimoto's Misstatements Were in Connection with the Purchase or Sale of Securities ..............11

  VI. The SEC Has Adequately Pled Scheme Liability.............................................................13

  VII. The SEC Has Pled that Uchimoto Obtained Money or Property
      Under Section 17(a)(2)..................................................................................................15

VIII. The SEC Has Adequately Pled Claims Under Section 17(a)(2) and 17(a)(3)................................16

  IX. The SEC Has Adequately Pled that Uchimoto Aided and Abetted a
     Primary Violation........................................................................................................16

      A.  The Commission Has Pled Facts to Establish that Uchimoto
         Knew of the Scheme or Was Reckless in Not Knowing....................................................17

      B.  The Commission Has Pled that Uchimoto Substantially Assisted
         The Scheme by Fraudulently Obtaining NASDAQ Listings...............................................18

   X.  Dismissal with Prejudice is Not Warranted.....................................................................18

  XI.  Conclusion...............................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Affiliated Ute Citizens of Utah v. United States*,
 406 U.S. 128, 151 (1972) ...............................................................................13

*In the Matter of Cady, Roberts & Co*,
 40 S.E.C. 907, 1961 WL 60638 (1961).......................................................13

*Decker v. Northwest Envt'l Def. Ctr.*,
 133 S. Ct. 1326 (2013) ...................................................................................13

*In re Foodservice Inc. Pricing Litig.*,
 Nos. 3:07-MD-1894 (CFD), 3:06-CV-1657 (CFD), 3:08-CV-4 (CFD),
 3:08-CV-5 (CFD), 2009 WL 5064468, (D. Conn. Dec. 15, 2009)................................8

*Gurary v. Winehouse*,
 235 F.3d 792 (2d Cir. 2000).........................................................................18

*Harsco Corp. v. Segui*,
 91 F.3d 337 (2d Cir. 1996) ...............................................  .........................7

*Int'l Motor Sports Group, Inc. v. Gordon*,
 No. 98-CV-5611 (MBM), 1999 WL 619633 (S.D.N.Y. Aug. 16, 1999) .................7, 8

*Kittay v. Kornstein*,
 230 F.3d 531 (2d Cir. 2000) .........................................................................16

*In re Magnum Hunter Resources Corp. Sec. Litig.*,
 26 F. Supp. 3d 278 (S.D.N.Y. 2014) ...........................................................10

*Nakahata v. New York-Presbyterian  Healthcare Sys., Inc.*,
 723 F.3d 192 (2d Cir. 2013) ...................... ................................................7

*Norlin Corp. v. Rooney*,
 744 F.3d 255 (2d Cir. 1984) .......................................................................12

*In re Parmalat Securities Litig.*,
 376 F. Supp. 2d 472 (S.D.N.Y. 2005) ................................. ....................14

*Press v. Chemical Investment Servs. Corp.*,
 166 F.3d 529 (2d Cir. 1999) .......................................................................12

*In re Revlon, Inc. Sec. Litig.*,
 No. 99-CV-10192 (SHS), 2001 WL 293820 (S.D.N.Y. Mar. 27, 2001) ......................9

*Riordan v. SEC*,
    627 F.3d 1230 (D.C. Cir. 2015) .......................... .........................................5

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012) ...................... ....................................6, 17, 18

*SEC v. Cole*,
    No. 12-CV-8167 (RJS), 2015 WL 5737275 (S.D.N.Y. Sept. 19, 2015) .................15, 16

*SEC v. Contorinis*,
    743 F.3d 296 (2d Cir. 2014) ....................................................................6

*SEC v. Czarnik*,
    No. 10 Civ. 745, 2010 WL 4860678 (S.D.N.Y. Nov. 29, 2010) ...................................11

*SEC v. DiBella*,
    587 F.3d 553 (2d Cir. 2009)....................................................................17

*SEC v. Egan*,
    994 F. Supp. 2d 558 (S.D.N.Y. 2014).........................................................17

*SEC v. Espuelas*,
    905 F. Supp. 2d 507 (S.D.N.Y. 2012) .......................................................17

*SEC v. Gabelli*,
    653 F.3d 49 (2d Cir. 2011)
    *rev'd on other grounds*, *Gabelli v. SEC*, 133 S. St. 1216 (2013).............................5, 6

*SEC v. Gabelli*,
    518 F. App'x 32 (2d Cir. 2013)...................................................................5

*SEC v. Ginder*,
    752 F.3d 659 (2d Cir. 2014)....................................................................16

*SEC v. Graham*,
    823 F.3d 1357 (11th Cir. 2016)...................................................................6

*SEC v. Greenstone Holdings, Inc.*,
    No. 10 Civ. 1302, 2012 WL 1038570 (S.D.N.Y. Mar. 28, 2012) ...............................11

*SEC v. Jones*,
    476 F. Supp. 2d 374 (S.D.N.Y. 2007)........................................................7

*SEC v. Kokesh*,
    __ F.3d __, 2016 WL 4437585 (10th Cir. Aug. 23, 2016)..........................................5, 6

*SEC v. Landberg*,
   836 F. Supp. 2d 148 (S.D.N.Y. 2011)....................................................................9, 17

*SEC v. Miami*,
   988 F. Supp. 2d 1343 (S.D. Fla. 2013).......................................................................16

*SEC v. Norstra Energy Inc.*,
   __ F. Supp. 3d __, 2016 WL 4398541 (S.D.N.Y. Aug. 17, 2016)........................12, 13

*SEC v. Power*,
   525 F. Supp. 2d 415, (S.D.N.Y. 2007)..........................................................................6

*SEC v. Saltsman*,
   No. 07-CV-4370 (NGG), 2016 WL 4136829 (E.D.N.Y. Aug 2, 2016)........................6

*SEC v. Straub*,
   No. 11-CV-9645 (RJS), 2013 WL 4399042 (S.D.N.Y. Aug. 5, 2013).........................6

*SEC v. Tourre*,
   No. 10-CV-3229 (KBF), 2014 WL 61864 (S.D.N.Y. Jan 7, 2014).............................15

*SEC v. Wyly*,
   950 F. Supp. 2d 547 (S.D.N.Y. 2013............................................................................5

*SEC v. Zandford*, 535 U.S. 813 (2002) .............................................................................12

*Simpson v. AOL Time Warner*,
   452 F.3d 1040 (9th Cir. 2006)
   *vacated on other grounds, Simpson v. Homestore.com, Inc.*,
   519 F.3d 1041 (9th Cir. 2008)...................................................................................14

*TSC Industies, Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ...................................................................................................10

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015) .......................................................................................10

*United States v. Naftalin*,
   441 U.S. 768 (1979)...............................................................................................11, 12

**Statutes**

15 U.S.C. § 78j(b) .............................................................................................................1

15 U.S.C. § 77(q)(a)(2) ......................................................................................................1

15 U.S.C. § 77(q)(a)(1) ..................................................................................................1

15 U.S.C. § 77(q)(a)(3) ..................................................................................................1

28 U.S.C. § 2462 ...........................................................................................................4

**Other Authority**

17 C.F.R. §§ 240.10b-5(a)......................................................................................1, 13

17 C.F.R. §§ 240.10b-5(b)...........................................................................................1

17 C.F.R. §§ 240.10b-5(c)......................................................................................1, 13

Fed. R. Civ. P. 15(a)(2)............................................................................................. 18

The Securities and Exchange Commission ("SEC" or "Commission") respectfully submits this opposition to Defendant William Uchimoto's Motion to Dismiss.

## PRELIMINARY STATEMENT

The Second Amended Complaint alleges that Uchimoto violated Section 10(b) and Rule 10b-5 of the Exchange Act and Section 17(a) of the Securities Act in two ways.  First, Uchimoto is charged with making a knowing, material misstatement to NASDAQ: that his clients met the required minimum shareholder levels to listed on NASDAQ without counting shareholders who had received shares as gifts.  15 U.S.C. § 78j(b); 17 C.F.R. § 270.10b-5(b); 15 U.S.C. § 77(q)(a)(2).  Second, Uchimoto is charged with participating in a fraudulent scheme orchestrated by Benjamin Wey to secretly gain control of the free trading shares of his clients (Chinese companies that became U.S. issuers via reverse mergers), profit from the sale of his shares without disclosing his ownership of them, and manipulate the market for those securities.  15 U.S.C. § 78j(b); 17 C.F.R. § 270.10b-5(a) & (c); 15 U.S.C. § 77(q)(a)(1) & (3).  Uchimoto participated in the scheme by engaging in the following deceptive acts:

- Making deceptive statements to NASDAQ about the relationship between himself and the individual who had given him shares as gifts; *id.* ¶ 88;

- Causing shares to be placed into street name to conceal from NASDAQ the shareholders' identities and the amounts of shares that they held; *id.* ¶ 89; and

- Making a deceptive statement to NASDAQ that Uchimoto's issuer clients had the requisite minimum number of shareholders for listing on NASDAQ without counting shareholders who had received shares as gifts.  *id.* ¶ 90.

The Second Amended Complaint ("SAC") adequately pleads Uchimoto's scienter, misstatements, and participation in the fraudulent scheme.  His actions furthered the fraudulent scheme by allowing his co-defendants to dump shares on a more liquid open market and manipulate the value of securities Uchimoto fraudulent helped to gain a NASDAQ listings.

1

Based on his deceptive conduct, the SEC has alleged that Uchimoto is liable for both primary and secondary violations of the federal securities laws.

In addition, contrary to Uchimoto's contentions, none of the remedies the SEC seeks are time barred. Civil penalties are a proper remedy for the aiding and abetting charges, as they accrued within the five-year statutory period, and there is no basis to dismiss an SEC action seeking the equitable remedies of disgorgement and injunctive relief. Uchimoto's motion therefore should be denied.

## FACTS

Uchimoto's actions were part of an international scheme orchestrated by Defendant Benjamin Wey and others to gain an undisclosed controlling interest in several Chinese companies that hired Wey and his company, New York Global Group ("NYGG"), to assist them in becoming United States issuers. SAC ¶¶ 1-2. Wey, with the assistance of his co-defendants, would identify and secretly gain control of a publicly traded U.S. shell company and then merge one of the Chinese companies that was an NYGG client into the U.S. shell company Wey controlled. *Id.* ¶ 3. After the merger, Wey and his co-defendants divided shares of the newly-merged company into several nominee accounts to try to avoid disclosing that their beneficial interests exceeded five percent.[1] *Id.* Wey and his co-defendants would then convince the management of the NYGG client companies to enter into "lock up" agreements that prevented the management from trading their shares for a period of time during which Wey would be in control of the vast majority of publicly trading shares. *Id.* ¶ 4. This control allowed Wey to more easily manipulate the market for those securities and profit from the scheme. *Id.*

---

[1] Beneficial owners of five percent or more of an issuer's securities are required to report such ownership to the SEC.

Uchimoto is a lawyer whose practice was dominated by his representation of Wey's NYGG clients during a substantial portion of the period relevant to the SAC.  *Id.* ¶¶ 26-27.  In particular, Uchimoto was retained by two NYGG clients, SmartHeat and Deer, to assist them in obtaining listings on NASDAQ.  *Id.* ¶ 27.  Obtaining a listing on NASDAQ increases the liquidity of a company's securities substantially, which allowed Wey to maximize his profits from the scheme.  *Id.* ¶ 82.  At the time they sought to be listed, SmartHeat and Deer did not have sufficient "round lot shareholders" (shareholders who owned at least 100 shares) to qualify for listing on NASDAQ; so Wey directed the transfer agent for Deer and SmartHeat to distribute shares as gifts to several individuals, including Uchimoto and Newman, to create the false appearance that the companies had a broader shareholder base.  *Id.* ¶¶ 83-84.  In some instances, the supposed holders of the gifted shares never even received them, and thus the "gifts" were sham transactions.  *Id.* ¶ 85.

SmartHeat and Deer reported to NASDAQ in September 2008 and June 2009, respectively, that they had the necessary number of round lot shareholders.  *Id.* ¶ 87.  As NASDAQ does not generally count gifted shares toward its minimum required number of round lot shareholders, NASDAQ staff asked Uchimoto about the circumstances by which the shareholders–many of whom had exactly 100 shares–received their shares.  *Id.* ¶ 87.  In explaining the source of his own gifted shares, Uchimoto made misleading statements regarding the source of the shares and his relationship with the gifter.  *Id.* ¶ 88.  Initially, Uchimoto told NASDAQ that the gifter was a "social friend" in China who was "not an affiliate of the company."  *Id.*  Uchimoto later told NASDAQ that Tianyi Wei was the social friend from whom he received the shares; however, this was untrue because Uchimoto had only briefly met Wei once in an airport.  *Id.*  Later Uchimoto claimed that the social friend he was referring to was not

Tianyi Wei, but her brother Benjamin Wey.  Contrary to his previous statement to NASDAQ, Uchimoto knew Benjamin Wey was affiliated with the company.  *Id.* ¶¶ 86, 88.

NASDAQ informed Uchimoto that it did not count gifted shares towards its minimum shareholder requirement.  *Id.* ¶ 89.  In response, Uchimoto proposed a plan to have the gifted shares placed into brokerage accounts that would then cause them to be aggregated in records that NASDAQ used to evaluate the number of shareholders.  *Id.*  This had the effect of disguising the shareholders who held shares in amounts that would signal to NASDAQ that the shares had been gifted.  *Id.*  After this was done, Uchimoto informed NASDAQ that his clients–SmartHeat and Deer–satisfied the minimum shareholder requirements without counting shareholders with gifted shares.  *Id.* ¶ 90.  This was false because, as Uchimoto knew, shareholders who had received their shares as gifts were, in fact, included in the shareholder count to meet the requirements.  *Id.*  Based on Uchimoto's deceptive conduct, including his fraudulent representation to NASDAQ, NASDAQ approved the listings of SmartHeat and Deer on January 29, 2009, and July 16, 2009 respectively.  *Id.*

## ARGUMENT

**I.    The SEC's Enforcement Action Against Uchimoto Is Not Time Barred**

Civil penalties are subject to a five-year statute of limitations pursuant to 28 U.S.C. § 2462.  The SEC will not seek civil penalties against Uchimoto for his conduct outside that window.  However, Uchimoto is charged with participating in, and aiding and abetting, the scheme, which includes the market manipulation that occurred in October 2010, within the five-year window.  SAC ¶ 101-102.  As there are allegations of claims that accrued within the five-year statute of limitations, there is no basis to dismiss the SEC's claim for civil penalties.

While civil penalties are subject to the five-year statute of limitations, the limitations period does not apply to equitable remedies.  Uchimoto attempts to side step what are plainly equitable remedies by trying to fashion them into penalties.  His attempts fail.  Uchimoto asserts that an injunction would be punitive, and thus subject to the five-year statute of limitations.  However, an injunction under the securities laws "cannot be to penalize—it must be to protect against future harms."  *SEC v. Wyly*, 950 F. Supp. 2d 547, 558 (S.D.N.Y. 2013); *see also SEC v. Kokesh*, __ F.3d __, 2016 WL 4437585, at *3 (10th Cir. Aug. 23, 2016) ("We fail to see how an order to obey the law is a penalty"); *Riordan v. SEC*, 627 F.3d 1230, 1234-35 (D.C. Cir. 2015) ("The cease and desist order is not a 'fine, penalty, or forfeiture' covered by the five year statute of limitations in 28 U.S.C. § 2462.").  Thus, "the statute of limitations question merges with the substantive requirements for obtaining an injunction under the securities laws—if the substantive claim is viable, then it is, by definition, not subject to a statute of limitations."  *Wyly*, 950 F. Supp. 2d at 558.

Based on the allegations in the SAC, it "would be premature to find that injunctive relief is not warranted prior to determining the merits of the SEC's claims."  *Id.*  Indeed, in *SEC v. Gabelli*, the Second Circuit held when there is an allegation of intentional violation of the federal securities laws – as there is here – "it is most unusual to dismiss a prayer for injunctive relief at th[e] preliminary stage of the litigation, since determining the likelihood of future violations is almost always a fact-specific inquiry."  *SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011), *rev'd on other grounds*, *Gabelli v. SEC*, 133 S.Ct. 1216 (2013); *SEC v. Gabelli*, 518 F. App'x 32, 33 (2d Cir. 2013) (noting on remand that the Supreme Court's decision did "not affect this Court's other holdings in its prior opinion").  And here, just as in *Gabelli*, the defendant "is unable to point to a single case where the SEC's prayer for an injunction against further violations was dismissed at

the motion to dismiss stage based upon a finding of non-likelihood of further violations." 653

F.3d at 61.  There is simply no basis to dismiss the Commission's request for equitable injunctive

relief at this stage of the litigation.

Nor is the equitable remedy of disgorgement subject to the statute of limitations.  *See,*

*e.g., SEC v. Contorinis*, 743 F.3d 296, 301 (2d Cir. 2014) (explaining that "[d]isgorgement is

equitable" and that "disgorgement does not serve a punitive function").  Uchimoto relies solely

on the Eleventh Circuit's decision in *SEC v. Graham*, 823 F.3d 1357, 1364 (2016), for the

proposition that disgorgement is subject to the statute of limitations.  *Graham* is, however,

inconsistent with Second Circuit law recognizing that disgorgement is an equitable remedy; and

*Graham* has not been followed outside of the Eleventh Circuit.  *See Kokesh*, 2016 WL 4437585,

at *5-6 (rejecting *Graham*); *SEC v. Saltsman*, 2016 WL 4136829, at *28 (E.D.N.Y. Aug 2, 2016)

(noting that "every court that considered the district court's ruling on disgorgement, which is

substantively the same as the Eleventh Circuit, has rejected it.").

As the Tenth Circuit explained in *Kokesh*, disgorgement is distinct from a forfeiture as

used in 28 U.S.C. § 2462 because forfeiture refers to civil forfeiture actions against property

particularly when viewed alongside the other terms in the statute.  2016 WL 4437585, at *5-6.

The court thus concluded that a disgorgement order was not subject to the five-year statute of

limitations.  *Id*.  This Court has also repeatedly rejected the contention that disgorgement is

subject to the five-year statute of limitations.  *SEC v. Straub*, No. 11-CV-9645 (RJS), 2013 WL

4399042, at *5 (S.D.N.Y. Aug. 5, 2013) ("However, even if reversal would eliminate the SEC's

claim for civil penalties, the claims for disgorgement and injunctive relief would still survive.");

*SEC v. Power*, 525 F. Supp. 2d 415, 426-27 (S.D.N.Y. 2007) ("It has been held that Section 2462

does not apply to equitable remedies, which seek either to return opposing parties to their status

quo ante or to protect the public from harm.  Disgorgement is an equitable remedy to which

Section 2642 does not apply.") (internal citations omitted); *SEC v. Jones*, 476 F. Supp. 2d 374,

385 (S.D.N.Y. 2007) ("[T]he Commission's action for disgorgement in this case is not subject to

the five-year limitations period in § 2462.").  The equitable remedy of disgorgement is not

subject to the five-year statute of limitations, and there is no basis to dismiss the SEC's claim to

disgorge the profits Uchimoto received from his fraud in the form of fees.  SAC ¶ 11, 27.

## II.      The SEC Has Pled Uchimoto's Misrepresentation with Particularity.

Federal Rule of Civil Procedure 9(b) requires that the Commission plead fraud with

"particularity."  In the context of misstatement claims, the Second Circuit has said that a

complaint must "(1) specify the statements that the plaintiff contends were fraudulent,

(2) identify the speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent."  *Nakahata v. New York-Presbyterian  Healthcare Sys., Inc.*, 723

F.3d 192, 197 (2d Cir. 2013).  This rule is intended "(1) to provide a defendant with fair notice of

plaintiff's claim, (2) to safeguard a defendant's reputation from 'improvident charges of

wrongdoing' and (3) to protect against the institution of a strike suit."  *Harsco Corp. v. Segui*, 91

F.3d 337, 347 (2d Cir. 1996) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.

1995)).

Although the Second Circuit has used the word "must" in describing this standard of

pleading, "it is well established that 'there is no bright line rule for deciding whether a complaint

has satisfied Rule 9(b).'"  *Int'l Motor Sports Group, Inc. v. Gordon*, No. 98 Civ 5611 (MBM),

1999 WL 619633, at *3 (S.D.N.Y. Aug. 16, 1999) (quoting *I.M. Oberman Assocs. v. Republic

Fin. Servs., Inc.*, No. 92 Civ 1843 (MBM), 1993 WL 88209, at *2 (S.D.N.Y. Mar. 25, 1993)).

"Indeed, in analyzing the sufficiency of a pleading under Rule 9(b), a district court must balance

the rule with both Fed. R. Civ. P. 8(a) which requires only a 'short and plain statement' of the claims for relief, and Fed. R. Civ. P. 8(f), which provides that 'all pleadings shall be construed as to do substantial justice.'" *Int'l Motor Sports Group*, 1999 WL 619633, at *3.  Therefore, "a plaintiff need not plead dates, times and places with absolute precision, so long as the complaint 'gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based.'" *Id.* (quoting *Spear, Leeds & Kellogg v. Public Service Co.*, 700 F. Supp. 791, 793 (S.D.N.Y. 1988)); *In re Foodservice Inc. Pricing Litig.*, Nos. 3:07 MD 1894 (CFD), 3:06 CV 1657 (CFD), 3:08 CV 4 (CFD), 3:08 CV 5 (CFD), 2009 WL 5064468, at *18 (D. Conn. Dec. 15, 2009) ("The Complaint does not make allegations of the exact content, date, or sender of specific mail or wire transmissions alleged to be the predicate acts of mail or wire fraud.  Nevertheless, the Court finds that the plaintiffs' allegations are sufficient in the context of this case because they have put the defendants on notice of the circumstances of the alleged fraud.").  Uchimoto's conduct is adequately pled.

The SAC sets forth both the context and the content of Uchimoto's misrepresentation.  It first alleges that, "In connection with their NASDAQ listing applications, SmartHeat and Deer reported to NASDAQ that they had more than 300 round-lot shareholders in September 2008 and June 2009, respectively."  SAC ¶ 87.  It then alleges that after being informed by NASDAQ that shareholders who had received gifted shares would not count towards the required minimum shareholder base, Uchimoto suggested having the holders of gifted shares place the shares in brokerage accounts to "disguise the holdings of individual shareholders."  *Id.* ¶ 89.  The SAC then alleges that Uchimoto made a material misrepresentation to NASDAQ by "inform[ing] NASDAQ that his clients had satisfied the round-lot shareholder requirement without counting the Gifted Shareholders, when, in fact, the Gifted Shareholders were still included in the

shareholder count to meet NASDAQ's requirement." *Id.* ¶ 90.  Finally, the SAC alleges that

based on Uchimoto's misrepresentation and other deceptive conduct, "NASDAQ approved the

listings of SmartHeat and Deer on January 29, 2009, and July 16, 2009, respectively." *Id.*

     The SAC specifies the statement that the SEC contends was fraudulent, identifies the

speaker, the time frame, and to whom the statement was made, and explains why the statement

was fraudulent.  The allegations are more than "sufficient to enable [Uchimoto] to interpose an

answer and prepare for trial."  *In re Revlon, Inc. Sec. Litig.*, No. 99 Civ. 10192 (SHS), 2001 WL

293820, at \*8 (S.D.N.Y. Mar. 27, 2001).  There is no basis for dismissal of this claim.

### III.     The SEC Has Adequately Pled Scienter.

     The SEC must plead scienter with regard to its claims under Section 10(b) and Rule 10b-

5 of the Exchange Act and Section 17(a)(1) of the Securities Act.  In doing so, the SEC must

"allege facts that give rise to a strong inference of fraudulent intent."  *SEC v. Landberg*, 836 F.

Supp. 2d 148, 154 (S.D.N.Y. 2011).  The SEC may do so "either (a) by alleging facts to show

that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Id.*

     The facts alleged constitute—at least—strong circumstantial evidence of conscious or

reckless deceptive conduct by Uchimoto.  Indeed, the SAC alleges that upon being informed that

NASDAQ would not count Deer's and SmartHeat's gifted shareholders towards its minimum

shareholder requirements, Uchimoto engaged in deceptive conduct to conceal the identity of the

companies' shareholders; and he then affirmatively misled NASDAQ by claiming that his clients

met the minimum shareholder requirements without counting gifted shareholders.  SAC ¶ 89, 90.

In sum, Uchimoto lied to NASDAQ, and he knowingly engaged in deceptive conduct to conceal

that lie.  That is conscious misbehavior.

Uchimoto contends otherwise, arguing that his "statement to NASDAQ that his clients met the black letter requirement" of NASDAQ's rule cannot give rise to the necessary inference. That is wrong if for no other reason than his alleged misstatement was not that his clients "met the black letter requirement" of NASDAQ's rule, but that his clients had the requisite number of shareholders without counting gifted shareholders after concealing their identity.  SAC ¶¶ 89, 90. Whether or not Uchimoto agreed with NASDAQ staff's interpretation of NASDAQ rules is irrelevant.  The SAC does not allege that Uchimoto attempted to persuade NASDAQ that gifted shareholders should suffice under the rule.  Instead, the SAC alleges that he affirmatively misstated that his clients had the requisite number of shareholders in accordance with NASDAQ's interpretation, knowing that his statement was false.  And before he made that false statement, Uchimoto took steps to conceal the identities of individual shareholders so that his lie would stand.  That is certainly conscious misbehavior, and the SEC has adequately pled scienter.

## IV.   The SEC Has Pled a Material Misstatement.

The materiality of a misstatement is an "objective" inquiry "involving the significance of an omitted or misrepresented fact to a reasonable investor." *TSC Industies, Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976); *In re Magnum Hunter Resources Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 291 (S.D.N.Y. 2014).  A misrepresentation is material "where there is 'a substantial likelihood that a reasonable investor would find the . . . misrepresentation important in making an investment decision.'"  *United States v. Litvak*, 808 F.3d 160, 175 (2d Cir. 2015) (quoting *United States v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2014).  "The fact that a statement is made in private . . . rather than to the public does not foreclose a statement's materiality." *SEC v. Greenstone Holdings, Inc.*, No. 10 Civ. 1302, 2012 WL 1038570, at *5 (S.D.N.Y. Mar. 28, 2012).  "A misstatement made in any phase of the selling transaction can be material if a

reasonable investor would have considered the defendant's alleged misrepresentations important, even if the statement is not made directly to the investor."  *SEC v. Czarnik*, No. 10 Civ. 745, 2010 WL 4860678, at *5 (S.D.N.Y. Nov. 29, 2010).

Uchimoto argues that his statements to NASDAQ regarding the source of his shares were not material.  However, the SEC's misrepresentation claim against Uchimoto is based on his statements to NASDAQ that his clients met NASDAQ's standards without counting gifted shareholders when that was false.  *Id.* ¶ 90.  Uchimoto made this misrepresentation because NASDAQ staff had informed him that NASDAQ would not count shareholders who had received their shares as gifts in determining whether NASDAQ's minimum shareholder requirement was met.  Uchimoto does not argue that his statements regarding having sufficient shareholders without the inclusion of gifted shareholders were not material.  Certainly a reasonable investor would have considered it important that a company received its NASDAQ listing by misrepresenting its shareholder base.  Indeed, Uchimoto's misrepresentations were instrumental in obtaining NASDAQ listing for his clients.  There is no basis to dismiss the SEC's misrepresentation claim.

## V.  Uchimoto's Misstatements Were in Connection with the Purchase or Sale of Securities.

Uchimoto's material misstatements to NASDAQ were made "in the offer or sale" of a security and "in connection with the purchase or sale" of a security.  Though there are slight variations in them, the Supreme Court has used these phrases from the Exchange Act and the Securities Act "interchangeably,"  *United States v. Naftalin*, 441 U.S. 768, 773 n.4 (1979); and the Court has stated that the terms should be construed "broadly," *id.* at 773, and "flexibly," *SEC v. Zandford*, 535 U.S. 813, 819 (2002).  The terms "are expansive enough to encompass the entire selling process."  *Naftalin*, 441 U.S. at 773.  "It is enough that the scheme to defraud and

the sale of securities coincide." *Zandford*, 535 U.S. at 820, 822.  The fraud need only "touch" the sale in some manner.  *Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12-13 (1971).

Uchimoto argues that his misstatements to NASDAQ, which resulted in his clients being listed on the exchange, were not "in connection with the purchase or sale" of a security.  This argument fails as well.  A misstatement designed to achieve a listing for a security on a national exchange is inherently "in connection with" the purchase or sale of securities; the listing on the exchange is for the purpose of facilitating such transactions.  *Cf. Press v. Chemical Investment Servs. Corp.*, 166 F.3d 529, 537 (2d Cir. 1999) (explaining that "in connection with" is satisfied if "the act complained of somehow induced" the purchase of a security).

The whole purpose of obtaining NASDAQ listings for Deer and SmartHeat was to create a liquid market to generate interest in the shares of those companies and to induce their purchase and sale.  SAC ¶ 82.  As the Second Circuit has repeatedly found, being listed on a national exchange such as NASDAQ or the NYSE may induce purchases of securities because such a listing "reassures shareholders and potential purchases that the extensive [] listing requirements are being met."  *Norlin Corp. v. Rooney*, 744 F.3d 255, 267 (2d Cir. 1984).  Indeed, the Court noted that the "investing public places great stock in these protections."  *Id.* (citing *Van Gemert v. Boeing Co.*, 520 F.3d 1373, 1381 (2d Cir. 1975)).  Moreover, the SEC is not required to plead or prove that Uchimoto intended to induce securities transactions.  "[A] misstatement is 'in connection with' the purchase or sale of securities 'irrespective of whether' the speaker has an 'ulterior purpose or purposes' in delivering the misstatement."  *SEC v. Norstra Energy Inc.*, __ F. Supp. 3d __, 2016 WL 4398541, at *6 (S.D.N.Y. Aug. 17, 2016).  Uchimoto's

misrepresentations which resulted in obtaining listings on NASDAQ for Deer and SmartHeat were material.

## VI.    The SEC Has Adequately Pled Scheme Liability.

Uchimoto argues that the SEC has not pled that he participated in a fraudulent scheme to support claims under Rule 10b-5(a) and (c) or Section 17(a)(1).    Specifically, Uchimoto incorrectly contends that the SEC has not pled deceptive conduct apart from his misstatements. Rule 10b-5(a) and (c) of the Exchange Act provide a cause of action against defendants who, with scienter, employ "*any* device, scheme, or artifice to defraud" or "engage in *any* act practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."    17 C.F.R. §§ 240.10b-5(a) and (c) (emphasis added).    Although some courts have adopted the position that conduct beyond a misstatement is necessary for liability under Rule 10b-5(a) and (c), such a reading is inconsistent with the text of the Rule and with the SEC's interpretation that the subsections of the rule are "mutually supporting rather than mutually exclusive," *In the Matter of Cady, Roberts & Co*, 40 S.E.C. 907, 1961 WL 60638, at *4 (1961)[2], and the policy of construing the securities laws "enacted for the purpose of avoiding frauds . . . 'not technically and restrictively, but flexibly to effectuate its remedial purposes.'" *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972).

This case does not, however, require the Court to determine if misstatements alone are sufficient to plead liability under Rule 10b-5(a) and (c), as the SEC has pled "deceptive or

---

[2]  The SEC's interpretation of Rule 10b-5 is entitled to deference because the Supreme Court has held repeatedly that "[w]hen an agency interprets its own regulation, the Court, as a general rule, defers to it 'unless that interpretation is plainly erroneous or inconsistent with the regulation.'"  *Decker v. Northwest Envt'l Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) (quoting *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208, 131 S. Ct. 871, 880 (2011) and *Auer v. Robbins*, 519 U.S. 452, 461 (1997)) (some internal quotations omitted).

manipulative act" beyond misstatements.  *In re Parmalat Securities Litig.*, 376 F. Supp. 2d 472, 492 (S.D.N.Y. 2005); *Simpson v. AOL Time Warner,* 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com, Inc.*, 519 F.3d 1041 (9th Cir. 2008) (scheme liability appropriate when "the defendant . . . engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme.").  The SAC specifically alleges that Uchimoto engaged in the following deceptive conduct:

- Uchimoto made misleading statements to NASDAQ staff regarding the source of his gifted shares and his relationship to the gifter; *id.* ¶¶ 88;

- After being informed by NASDAQ that they would not count shareholders who received their shares as gifts towards the required number of minimum shareholders, Uchimoto caused shares to be placed into street name to conceal their ownership from NASDAQ; *id.* ¶¶ 89; and

- Uchimoto lied to NASDAQ when he said his clients had the requisite minimum number of shareholders without counting shareholders who received their shares as gifts.  *Id.* ¶¶ 90.

These acts were part of a scheme to deceive and defraud.  *See In re Parmalat Sec. Litig.*, 376 F. Supp. 2d at 502 (S.D.N.Y. 2005) (device deceptive "because they created an appearance of substance where substance was lacking").  Uchimoto's argument merely ignores the course of conduct that is laid out in the SAC.  Regardless of whether misstatements on their own can create liability under Rule 10b-5(a) and (c), the SEC here has pleaded specific deceptive acts beyond misstatements, namely causing shares to be placed in street name to conceal their ownership from NASDAQ.  Under any standard, the SEC has alleged that Uchimoto participated in a scheme.

Uchimoto also argues that the SAC is deficient "because it does not allege any facts showing or even inferring that Mr. Uchimoto participated in the Weys' alleged secret stock manipulation scheme."  Uchimoto Br. at 9 (ECF No. 132).  This misses the point.  The SEC is

not required to allege that Uchimoto participated in every aspect of the far-ranging fraudulent scheme to state a claim for scheme liability against him.  The SEC has alleged facts that establish that Uchimoto and his co-defendants engaged in a fraudulent scheme.  Uchimoto's participation in the scheme is set out above and consists of both deceptive acts (such as placing shares in street name to conceal their ownership from NASDAQ), and deceptive statements to NASDAQ.  These allegations are sufficient to allege that Uchimoto participated in a scheme in violation of Rule 10b-5(a) and (c) and Section 17(a)(1) and (3).

## VII.  The SEC Has Pled that Uchimoto Obtained Money or Property Under Section 17(a)(2).

A claim under Section 17(a)(2) requires that a defendant "obtain money or property" by means of the alleged misstatement.  As the SAC alleges, Uchimoto was paid fees for his work on behalf of Deer and SmartHeat, and his billing invoices "reflect[ed] his extensive communications with Benjamin Wey regarding the shareholder count for SmartHeat's application to become listed on the NASDAQ."  SAC ¶¶ 11, 86.  Uchimoto received fees for his work to obtain NASDAQ listing for his clients—work that included making fraudulent misstatements to NASDAQ.

As this Court held in *SEC v. Tourre*, No. 10 Civ. 3229 (KBF), 2014 WL 61864, at *3-4 (S.D.N.Y. Jan 7, 2014), there is no need to prove any sort of "fraud bonus," and that receiving funds for work that includes the fraudulent misstatement is sufficient.  *See also SEC v. Cole*, No. 12-cv-8167 (RJS), 2015 WL 5737275, at *7 (S.D.N.Y. Sept. 19, 2015) (finding that partner at an outside accounting firm obtained money or property under Section 17(a)(2) for billing work).  Billing for his work in executing the fraud suffices as obtaining money or property under Section 17(a)(2).

**VIII.   The SEC Has Adequately Pled Negligence Under Section 17(a)(2) and 17(a)(3).**

Claims under Section 17(a)(2) and (a)(3) do not require a showing of scienter but only negligence.  *SEC v. Ginder*, 752 F.3d 659, 574 (2d Cir. 2014).   "Under these provisions, the definition of negligence is 'the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under like circumstances.'"  *Cole*, 2015 WL 5737275, at * 6 (quoting Instructions of Law to the Jury at 13, *SEC v. Stoker*, No. 11-cv-7388 (JSR) (S.D.N.Y. July 31, 2012), ECF No. 89.   Uchimoto cites no authority that the SEC was required to plead anything more than facts that would support its claim that Uchimoto violated Sections 17(a)(2) and (3).  *Cf. Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir. 2000) (claim survives dismissal under Rule 12(b)(6) if "allege[d] facts . . . create a judicially cognizable cause of action").   The SEC has certainly pled facts that show that Uchimoto failed to use reasonable care: Participating in a scheme that included efforts deceive NASDAQ (and thus the investing public), and making knowingly false statements both patently demonstrate a failure to use reasonable care.  *Cf. SEC v. Miami*, 988 F. Supp. 2d 1343, 1362 (S.D. Fla. 2013) (denying motion to dismiss claims under Section 17(a)(2) and (3) because the "SEC has properly plead *scienter*, a much higher standard than a mere failure to exercise of standard of reasonable care in a negligence-based claim.").   As the SEC has alleged sufficient facts to show Uchimoto acted negligently (or more), his motion must be denied.

**IX.   The SEC Has Adequately Pled that Uchimoto Aided and Abetted a Primary Violation.**

To state a claim of aiding and abetting, the SEC must plead facts showing: "(1) the existence of a securities law violation on the part of the primary (as opposed to aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abetter; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation."

*SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012) (quoting *SEC v. DiBella*, 587 F.3d 553, 556 (2d Cir. 2009)).  Uchimoto does not argue that the SEC has not adequately pled a primary violation of the securities law, but rather that the SEC has not properly pled the remaining prongs of knowledge and substantial assistance.  To the contrary, the SEC has adequately pled both.

### A.    The Commission Has Plead Facts to Establish that Uchimoto Knew of the Scheme or Was Reckless in Not Knowing.

"The scienter standard in this Circuit included recklessness prior to Dodd-Frank."  *SEC v. Landberg*, 836 F. Supp. 2d 148, 157 (S.D.N.Y. 2011); *but see SEC v. Egan*, 994 F. Supp. 2d 558, 568 (S.D.N.Y. 2014) (noting disagreement and collecting cases).  The Second Circuit has explained that the scienter and substantial assistance prongs cannot be considered in isolation and that there "'may be a nexus between the degree of [knowledge] and the requirement that the alleged aider and abettor render 'substantial assistance.'"  *DiBella*, 587 F.3d at 556 (quoting *IIT v. Cornfeld*, 619 F.2d 909, 922 (2d Cir. 1980)); *see also Apuzzo*, 689 F.3d at 215 ("a high degree of knowledge may lessen the SEC's burden in proving substantial assistance, just as a high degree of substantial assistance may lessen the SEC's burden in proving scienter.").  A defendant need not know every aspect of a fraudulent scheme to be liable for aiding and abetting it.  A "defendant's general awareness of *its overall role* in the primary scheme" is sufficient.  *SEC v. Espuelas*, 905 F. 3dd 2d 507, 518 (S.D.N.Y. 2012) (italics added).

Here the substantial assistance rendered by Uchimoto and pled in the SAC makes clear that Uchimoto was aware of the scheme, or was at least reckless in not being aware of it.  The fact that Uchimoto was willing to engage in deceptive conduct, including knowingly making false statements to NASDAQ, to get Deer and SmartHeat listed is sufficient evidence that he knew he was participating in a fraud.

**B.    The SEC Has Pled that Uchimoto Substantially Assisted the Scheme by Fraudulently Obtaining NASDAQ Listings.**

To satisfy the substantial assistance prong of aiding and abetting looks at whether the SEC must show "'that [the Defendant] in some sort associate[d] himself with the venture, that [the defendant] participate[d] in it as in something that he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed.'" *Apuzzo*, 689 F.3d at 212 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)).  As alleged in the SAC, Uchimoto aided and abetted the fraudulent scheme by:

- Making deceptive statements to NASDAQ about the relationship between himself and the individual who had given him shares as gifts; *id.* ¶ 88;

- Causing shares to be placed into street name to conceal from NASDAQ the shareholders' identities and the amounts of shares that they held; *id.* ¶ 89; and

- Making a deceptive statement to NASDAQ that Uchimoto's issuer clients had the requisite minimum number of shareholders for listing on NASDAQ without counting shareholders who had received shares as gifts.  *Id.* ¶ 90.

Again, Uchimoto's course of conduct shows that he "associated himself with the venture, participated in it as something that he wished to bring about, and sought by his action to make it succeed." *Apuzzo*, 689 F.3d at 213.  The SEC has adequately pled that Uchimoto substantially assisted the scheme.

**X.    Dismissal with Prejudice is Not Warranted.**

Leave to amend should be "freely give[n] . . . when justice so requires."  FED. R. CIV. P. 15(a)(2).  The Court "has broad discretion in determine whether to grant leave to amend." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).  Should the Court determine that any of the SEC's claims are subject to dismissal (except the Seventh Claim as to Uchimoto), the SEC respectfully requests that the Court do so without prejudice so that the SEC can determine if it

believes it is able to cure whatever is deemed deficient by the Court or if any additional action would be futile (in which case the SEC would not seek to amend).

**XI.    Conclusion.**

For the reasons stated above the SEC respectfully requests that the Court deny Uchimoto's Motion to Dismiss.


Dated:   September 30, 2016


Respectfully submitted,



/s/ Derek Bentsen
Derek Bentsen (DB8369)
Joshua E. Braunstein
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
100 F St., N.E.
Washington, D.C. 20549-5985
202-551-6426 (Bentsen)
BentsenD@sec.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 30, 2016, I caused the foregoing to be filed using the Court's

CM/ECF system, which will send notification of such filing to each counsel of record.


/s/ Derek Bentsen_____

*Counsel for Plaintiff*