UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Plaintiff,

  v.

BENJAMIN WEY,
NEW YORK GLOBAL GROUP,
TIANYI WEI,
MICHAELA WEY,
ROBERT NEWMAN,
WILLIAM UCHIMOTO, and
SEREF DOGAN ERBEK,

    Defendants,

  and

ADVANTAGE CONSULTANTS, LTD.,
YORK CAPITAL MANAGEMENT, LTD.,
FOUR TONG INVESTMENTS, LTD.,
STRONG GROWTH CAPITAL, LTD.,
MEDIAN ASSETS INVESTMENTS, LTD., and
HAN HUA, LTD.,

    Relief Defendants.

Civil Action No. 15-7116 (PKC)

ECF CASE

---

**DEFENDANT ROBERT NEWMAN'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

SERCARZ & RIOPELLE, LLP
810 Seventh Avenue, Suite 620
New York, NY  10019
(212) 586-4900

*Attorneys for Defendant Robert Newman*

## **PRELIMINARY STATEMENT**

Defendant Robert Newman (the "Defendant" or "Newman") respectfully submits this reply memorandum in support of his motion to dismiss the Second Amended Complaint in this action.[1]

As is demonstrated fully below, many of the Securities and Exchange Commission's ("SEC") arguments demonstrate the merits of Newman's motion. For example, the SEC argues that its claims against Newman are not time barred. In doing so, the SEC points to allegations in its pleadings that are murky, general and vague, and it quotes snippets of documents out of context to make general claims of wrongdoing that remain unsupported by properly detailed and specific allegations against Newman. It then relies on its amorphous allegations to contend that its claims are not time-barred. Thus, the SEC's own arguments demonstrate that it has not pleaded its claims with the particularity required by Federal Rule of Civil Procedure 9(b).

Throughout its brief, the SEC points to allegations of wrongful conduct committed by Newman. But the purported wrongful conduct alleged by the SEC is all more than five years old. The only conduct alleged against Newman within the last five years is entirely legitimate, and violates no law. In these circumstances, the applicable Statute of Limitations bars the SEC's claims, because the SEC does not even allege that Newman did anything unlawful within five years of the time the complaint in this action was filed.

---

[1] The Court's individual rules prohibit a reply memorandum of more than 10 pages in length. Given this restriction, Newman will devote his reply memorandum to two issues: 1) whether the SEC's Second Amended Complaint satisfies the pleading requirements of Fed. R. Civ. Pro. 9(b); and 2) whether the SEC's claims against Newman for financial penalties are time barred by 28 U.S.C. § 2462. With respect to his arguments that the Court should dismiss the SEC's claims for injunctive relief and for aiding and abetting, Newman relies primarily on his Memorandum of Law filed August 26, 2016 and on the arguments of his co-defendants on these points.

## ARGUMENT

### POINT I

### THE SEC'S VAGUE CLAIMS AGAINST NEWMAN VIOLATE FEDERAL RULE OF CIVIL PROCEDURE 9(b)

At pages 10-11 of its brief, the SEC contends that its charges against Newman are not barred by the statute of limitations. In support of its argument, the SEC argues that it "has pled considerable conduct that occurred within five years of the initiation of the lawsuit against" Newman. SEC Brief, p. 11. But it cites only three of the 167 paragraphs of its Second Amended Complaint (the "Complaint") as instances in which the Complaint alleges conduct by Newman that occurred within five years of the Complaint. A close look at those paragraphs demonstrates that the Complaint fails to satisfy the standards of Fed. R. Civ. Pro. 9(b).

For example, the SEC's brief cites paragraph 58 of the Complaint as an example of conduct by Newman within five years of the commencement of this action. However, the alleged conduct is neutral on its face, consisting of the alleged transfer of shares among alleged nominees of Defendant Wey, with no underlying factual allegation that tends to show Newman understood that the alleged Nominees were controlled by Wey, or that the transfers were part of some fraudulent scheme. Moreover, paragraph 58 alleges generally that the transfers occurred "[f]rom 2008 through 2012 – either directly through Newman or an NYGG employee" without stating what transfers happened when, who was involved in the many different transfers referred to, or what role, if any, Newman played in connection with the "transfers" described generally. So it is impossible to tell what role, if any, Newman actually had with respect to any alleged transfers in 2011 or 2012. If none of the transfers in 2011 and 2012 involved Newman, the SEC's claims against him are time barred.

2

This sort of vague pleading is exactly the kind of thing that Rule 9(b) was established to prohibit. The SEC's pleading of paragraph 58 in this vague and imprecise way makes it more difficult for Newman to make out his statute of limitations argument, because he cannot tell when the transactions described in this paragraph allegedly occurred, and whether he participated in them.

To make matters worse, paragraph 58 goes on to allege that "[a]s described in paragraphs 82 through 90 below, Wey's gifting of shares inflated shareholder counts of Deer and SmartHeat...." But if the reader actually checks paragraphs 82 to 90, the transactions described in those paragraphs are more than five years old, and there is no allegation in those paragraphs concerning Newman. So this reference does not give Newman notice of any wrongful act allegedly done within five years of the filing of the Complaint in this action.

Paragraphs 79 and 80 are equally vague and violate Fed. R. Civ. 9(b), to the extent they allege conduct by Newman. In paragraph 79, the SEC alleges that "in 2011, Newman misled the NASDAQ about Benjamin Wey's relationship with Deer and SmartHeat." But neither paragraph 79 nor paragraph 80 alleges the specific date of Newman's purportedly misleading statement. Nor do they quote Newman's allegedly misleading statement. Instead, after acknowledging that Newman discussed the matter with Mr. Wey as any responsible lawyer would do, the SEC alleges generally that Newman "signed and sent letters to the NASDAQ" *at some unspecified time in 2011* "that failed to disclose that Benjamin Wey controlled substantial holdings of Deer and SmartHeat though Nominees." But the Complaint is devoid of factual allegations to substantiate the SEC's general assertion that Newman was aware of Mr. Wey's use of nominees – instead, it makes this allegation without providing any specifics.

3

Paragraph 80 of the Complaint goes on to assert that Newman's communication with the NASDAQ concerning Mr. Wey was misleading because it did not describe the granular factual detail of Mr. Wey's work as a consultant to Deer and SmartHeat. However, the Complaint utterly fails to explain why this was misleading, when it is clear that Newman *did* generally disclose Mr. Wey's relationship with Deer and SmartHeat as a consultant. The Complaint itself acknowledges that Newman told the SEC that Mr. Wey introduced "underwriters to Deer and SmartHeat and [was] acquainted with officers or directors of Deer and SmartHeat." Complaint, ¶ 80. So Mr. Newman did not conceal Mr. Wey's relationship with Deer and SmartHeat from the SEC in his 2011 communication, whenever it occurred. Without more specific factual allegations that demonstrate why Newman's 2011 communication was fraudulent, the SEC's Complaint fails to satisfy Rule 9(b), because it fails to establish a minimal factual predicate for a "strong inference" of fraudulent intent. Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000).

Finally, the SEC snipes at Newman's interpretation of the facts contained in the Complaint (see SEC Brief, p. 17-18), and argues that the "Court should ... disregard Newman's preferred gloss on these and similar assertions" (Complaint, p. 19). The Complaint's allegations against Newman are rife with misleading elisions and distortions, however, and the SEC should not be permitted to rely on such allegations without challenge from Newman.[2]

---

[2] The SEC itself interprets the facts it has pleaded in response to the defendants' motions, arguing that the fees Newman and his co-defendants earned are sufficient proof of motive to sustain the Complaint. SEC Brief, p. 19. In support of this argument, the SEC cites Abu Dhabi Commercial Bank v. Morgan Stanley & Co, Inc., 651 F. Supp.2d 155, 180 (S.D.N.Y. 2009). But in Abu Dhabi Commercial Bank, the fees in question depended directly on the success and closure of the transaction at issue. In the present case, Newman billed by the hour, and the success and closure of the transaction was not a prerequisite for the collection of his fees. So the facts as interpreted by the SEC are far less persuasive proof of intent to defraud than the proof in Abu Dhabi Commercial Bank. Instead, this case is far closer to the situation in SEC v. DiMaria, No. 15 CV 7035, 2016 WL 4926200, *10-11 (S.D.N.Y. Sept. 15, 2016), in which the Court ruled that ordinary fees paid to a firm are not sufficient to sustain a claim for violation of Section 17(a)(2) of the Securities Act.

For example, the Complaint makes the assertion that "Newman knew that ACL was not comprised solely of non-U.S. persons as he had been informed in writing by SmartHeat's CEO that ACL was 'NYGG's BVI Company.'" Complaint, ¶ 72. A copy of the email string to which the SEC appears to be referring is attached to this reply memorandum as Exhibit A. As the Court can see, on April 1, 2009, James Wang (SmartHeat's CEO) did indicate that ACL was "NYGG's BVI company" in the following sentence: "NYGG wants to make the commission transparent to the SEC and ask HEAT to sign the document with ACL (NYGG's BVI Company)."

This email demonstrates that Mr. Wang is clearly not a native English speaker, so what he meant by "NYGG's BVI Company" is not clear. Nor is it clear whether Mr. Wang's reference is to NYGG New York, or NYGG China. Those issues will have to be cleared up in discovery, if this case is allowed to proceed.

This email was not addressed or originally sent to Newman. Instead, Wang sent this email to Arnold Staloff, a member of SmartHeat's Board. Later, Newman received it as part of an email forwarded by Staloff, attaching a mark-up of the consulting agreement between ACL and SmartHeat, which Newman had drafted.[3] There is no reason to think Newman read or paid close attention to the email between Wang and Staloff, which was below Staloff's email to Newman in the string, and which Newman had no reason to focus his attention on, given that his principal concern was the attached agreement. The fact that this reference is buried in an email string, in an email that was not sent directly to Newman, and in an email from a person who speaks broken English, is a far cry from the SEC's unequivocal allegation that Newman "had

---

[3] When Staloff transmitted the email to Newman, that communication was privileged, and it is our understanding that SmartHeat has not waived the attorney client privilege with respect to its communications with Newman. So it appears that the SEC included references to an inadmissible, privileged communication in its Complaint, and is now relying on that privileged communication to make out its case against Newman.

been informed in writing by SmartHeat's CEO that ACL was 'NYGG's BVI Company'" in April 2009. Complaint, ¶ 72.

Moreover, SmartHeat's CEO begins the sentence that includes the phrase "NYGG's BVI Company" with the observation that "NYGG wants to make the commission [paid to ACL] transparent to the SEC." See Exhibit A. This casts serious doubt on the SEC's assertion that Newman was intentionally engaged in a scheme to conceal the relationship of ACL and NYGG from the SEC. Transparency to the SEC with respect to ACL was apparently a priority of all concerned, including SmartHeat's CEO, Board members, and Newman, and SmartHeat disclosed ACL's commission in the SEC Form S-1 it filed in connection with the SmartHeat transaction.

The Federal Rules of Civil Procedure permit a party to attach written instruments described in a pleading to the pleading itself. Fed. R. Civ. Pro. 10(c). The SEC chose not to attach to its Complaint the email chain attached to this reply memorandum. Doing so would certainly have made the Complaint's allegations about ACL more particularized, because "a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Id. Instead of attaching the email string in which the phrase "NYGG's BVI company" appears, the SEC chose to take a phrase from that email out of its context. The SEC also chose to infer that Newman read an email that was not originally sent to him and that was part of an email stream that he ultimately received. And the SEC chose to characterize the email between Mr. Wang and Mr. Staloff as far more conclusive proof of Newman's scienter than it is in fact, ignoring NYGG's desire to make ACL's relationship to the transaction "transparent to the SEC."[4]

---

[4] Another example of the SEC's unfair characterization of the facts in its Complaint and its Brief is the SEC's contention that Newman provided dual representation for the shell company and the corporation that became CleanTech, without obtaining a conflict waiver. See Complaint, ¶ 68; Brief, p. 22. A copy of a letter Newman obtained from CleanTech acknowledging that any conflict was explained and waived is attached as Exhibit B. The existence of Exhibit B significantly undercuts the SEC's argument.

It may be, as the SEC contends, that Newman cannot put his "preferred gloss" on the facts in the context of this motion. But it surely must be fair for Newman to point out where the SEC's allegations do not make sense, or are taken out of context, even if they are assumed to be true.

## POINT II

### ALL CLAIMS ACCRUING FIVE YEARS BEFORE THE SEPT. 10, 2015, COMMENCEMENT OF THIS ACTION MUST BE DISMISSED

In its Brief, the SEC acknowledges that 28 U.S.C. § 2462 "sets a fixed date when exposure to [SEC] enforcement ... ends," Gabelli v. SEC, 133 S.Ct. 1216, 1221 (2013), and that "claim[s] based on fraud accrue" when "allegedly fraudulent conduct occurs." Gabelli at 1220. It then goes on to argue that Newman engaged in "considerable conduct that occurred within five years of the initiation of the lawsuit against him." SEC Brief, p. 11. Even if the allegations in the Complaint are presumed to be true, however, the SEC does not allege sufficient facts to conclude that Newman did any wrongful act with the requisite scienter within five years of the date the Complaint was first filed.

As Newman pointed out in his opening brief, the vast majority of the allegations against him concern actions he took as counsel to SmartHeat and Deer in 2008-2010, more than five years before the SEC filed its Complaint. See Newman Brief, p. 8-9. And, as the discussion in Point I above indicates, the SEC's brief cites precious few allegations – three of 167 paragraphs – in the Complaint that purport to allege conduct by Newman within the statute of limitations. These allegations are not a sufficient basis to deny Newman's motion to dismiss, for the following reasons.

First, with respect to paragraph 58 of the Complaint, there is no way to tell which, if any, of the allegations against Newman in this paragraph concern actions he took within the

7

limitations period. The allegations concern transfers that allegedly took place "[f]rom 2008 through 2012," and apparently, only some of them involved Newman. So it is impossible to say which of these allegations actually concern Newman and might toll the statute of limitations as to him.

Second, the allegations contained in paragraph 58 of the Complaint concern instructions Defendant Wey gave to the transfer agent for Deer and SmartHeat "to send share certificates" to Wey, "for him to distribute among the Nominees" and to his "friends and business associates." There is nothing about these allegations that suggests Newman knew or should have known that Wey was acting through Nominees, or that Wey was involved in a massive scheme to manipulate the share prices of Deer and SmartHeat. So the allegations in paragraph 58 provide no basis to infer that Newman acted with the requisite scienter to violate the law at some undefined time "[f]rom 2008 through 2012." But, without a basis to infer that Newman acted with the necessary scienter within five years of the time the SEC filed its Complaint, the claims for financial penalties against Newman are time-barred.

Paragraphs 79 and 80 of the Complaint allege that letters Newman wrote to the NASDAQ in 2011 did not adequately disclose Mr. Wey's relationship to Deer and SmartHeat. According to the Complaint, Newman failed to disclose Mr. Wey's use of nominee accounts and the full gamut of Mr. Wey's and NYGG's work on behalf of Deer and Smart Heat. However, there is insufficient factual detail in the Complaint to infer that Newman knew Mr. Wey "controlled substantial holdings of Deer and SmartHeat," through nominee accounts, so his failure to disclose that fact can hardly be characterized as wrongful. And Newman's failure to describe every factual detail of the relationship between Mr. Wey and NYGG, and Deer and SmartHeat, is hardly proof that he acted with the intent to defraud, since he did in fact disclose

that Mr. Wey and NYGG worked as consultants to Deer and SmartHeat. If the SEC wanted to know more details of that relationship, it could certainly ask for them after Mr. Newman disclosed the relationship's general nature. But the SEC did not do so. Mr. Newman's readiness to disclose the relationship between Mr. Wey and Deer and SmartHeat in 2011 can hardly be characterized as an act done with the intent to defraud.

Moreover, the fraud alleged in the Complaint was complete several years before Mr. Newman did the acts attributed to him in 2011 and 2012. The acts attributed to Mr. Newman in 2011 and 2012 – failures to disclose alleged nominees and the full details of Mr. Wey's relationship to Deer and SmartHeat – are not acts of concealment that go beyond the alleged fraud itself. Therefore, they do not toll the statute of limitations in Title 28 U.S.C. § 2462, which accrued years earlier when the Deer and SmartHeat reverse mergers were completed and the purported market manipulations allegedly occurred.

SEC v. Wyly, 950 F. Supp.2d 547 (S.D.N.Y. 2013) is instructive here. In that case, the defendants were accused of engaging in improper swap transactions that were complete in 1999. Subsequently, the defendants made filings with the SEC which allegedly falsely disclaimed the defendants' beneficial ownership of securities held in offshore trusts. These false filings occurred in 2004 or 2005. Wyly, 950 F. Supp.2d at 553. When the SEC began investigating the matter in 2006, it obtained tolling agreements from the defendants, which tolled the statute of limitations beginning in 2006. Id. Ultimately, in 2013, the SEC brought a case against the defendants, who moved for summary judgment on the SEC's penalty claims. The defendants argued that the SEC's claims were barred by Section 2462, because those claims accrued when the underlying fraudulent transactions were complete in 1999. Id.

9

The District Court ruled for the defendants and dismissed the SEC's claims for penalties in connection with transactions which closed in 1999. In ruling for the defendants, the Court found that

> ... the SEC fails to draw a meaningful distinction between acts of perpetration and acts of concealment and identifies no acts akin to promising not to plead the statute of limitations or spoliating evidence....
>
> Because the SEC has not cited any acts sufficiently separate from the substantive fraud at issue [which was committed in 1999], its penalty claims for the securities laws violations ... are barred to the extent they arose more than five years before the Defendant's respective tolling agreements.

Id., at 556-558.

As in Wyly, the SEC's claims in this case accrued more than five years before it commenced this action, when the Deer and SmartHeat reverse mergers were complete. Mr. Newman's subsequent actions, as described in paragraphs 58, 79 and 80 did not toll the statute of limitations as it applies to Newman. Therefore, the SEC's claims for financial penalties against Newman in connection with the Deer and SmartHeat transactions are time barred.

## POINT III

## NEWMAN JOINS IN HIS CO-DEFENDANTS' MOTIONS

Newman joins in his co-defendants' motions, and to the extent their arguments are applicable to him, he joins in those arguments.[5]

---

[5] In particular, Newman joins in Mr. Uchimoto's argument that the fees he earned from SmartHeat and Deer are not subject to disgorgement, because they are not "causally connected to the wrongdoing" alleged in the Complaint, see SEC v. First Jersey Sec., Inc., 101 F.3d 1450 1475 (2d Cir. 1996), and in Mr. Uchimoto's argument that the SEC's claims for injunctive relief are not viable in the absence of any proof that the alleged violations of the securities laws are continuing. See Uchimoto Reply Memorandum, p. 3.

## CONCLUSION

For the reasons set forth above; for the reasons stated in his Memorandum of Law; and for the reasons stated by his co-defendants in their Memoranda of Law and Reply Memoranda, Defendant Robert Newman respectfully requests that the Second Amended Complaint be dismissed as to him in all respects and with prejudice.

Dated: October 21, 2016
      New York, NY

                SERCARZ & RIOPELLE, LLP

                By: _____
                Roland G. Riopelle (RR-2950)
                Robert Caliendo (RC-1515)
                810 Seventh Avenue, Suite 620
                New York, NY 10019
                (212) 586-4900

                *Attorneys for Defendant Robert Newman*