UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>BENJAMIN WEY,<br>NEW YORK GLOBAL GROUP,<br>TIANYI WEI,<br>MICHAELA WEY,<br>ROBERT NEWMAN,<br>WILLIAM UCHIMOTO, and<br>SEREF DOGAN ERBEK,<br><br>　　　　　　　　Defendants,<br><br>　　　　　and<br><br>ADVANTAGE CONSULTANTS, LTD.,<br>YORK CAPITAL MANAGEMENT, LTD.,<br>FOUR TONG INVESTMENTS, LTD.,<br>STRONG GROWTH CAPITAL, LTD.,<br>MEDIAN ASSETS INVESTMENTS, LTD., and<br>HAN HUA, LTD.,<br><br>　　　　　　　　Relief Defendants. | Civil Action No. 15-7116 (PKC) |

**DEFENDANT WILLIAM W. UCHIMOTO'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

　　　　　　　　　　　　　　　　　　　　RICHARDS KIBBE & ORBE LLP
　　　　　　　　　　　　　　　　　　　　200 Liberty Street
　　　　　　　　　　　　　　　　　　　　New York, NY  10281-1003

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant William W. Uchimoto*

October 21, 2016

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A. The SEC Has Abandoned Its Claim For Civil Penalties Against Mr. Uchimoto Because Of The Statute of Limitations, And Its Efforts To Save Its Claims For "Injunctive" Relief Are Unavailing (All Claims). ................................ 1

    B. The Complaint Fails To Disclose The Exact Alleged Misstatements And Which Listing Representation They Correspond To, As Required Under Rule 9(b) (All Claims). ....................................................................................................... 3

    C. The SEC's Claims Under Section 10(b), Rule 10b-5(b), And Section 17(a)(1) Must Be Dismissed For Failure To Plead Scienter, And One Of Mr. Uchimoto's Alleged Misstatements Was Not Material (First And Fifth Claims). ................................................................................................................... 5

    D. Mr. Uchimoto's Alleged Statements Were Not Made In Connection With The Purchase or Sale of Securities (First and Fifth Claims). ......................................... 6

    E. The SEC Has Not Pleaded A Distinct Scheme (First and Fifth Claims). ................ 7

    F. Mr. Uchimoto Did Not Obtain Money Or Property By Means Of The Alleged Fraud (Fifth Claim). ................................................................................................ 8

    G. The SEC Fails To Allege That Mr. Uchimoto Had Actual Knowledge of His Role In Mr. Wey's Scheme, So The Claim For Aiding And Abetting Violations Of The Exchange Act Must Be Dismissed (Third Claim). .................... 9

III. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Chadbourne & Parke LLP v. Troice*,
    134 S. Ct. 1058 (2014) ................................................................................................................7

*Gabelli v. SEC*,
    133 S. Ct. 1216 (2013) ................................................................................................................2

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996) .........................................................................................................4

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................................8

*In re Parmalat Sec. Litig.*,
    376 F. Supp. 2d 472 (S.D.N.Y. 2005) ........................................................................................8

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 1996) .......................................................................................................4

*Norlin Corp. v. Rooney, Pace Inc.*,
    744 F.2d 255 (2d Cir. 1984) .......................................................................................................7

*Press v. Chemical Investment Servs. Corp.*,
    166 F.3d 529 (2d Cir. 1999) .......................................................................................................7

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012) .....................................................................................................10

*SEC v. Cole*,
    No. 12 Civ. 8167 (RJS), 2015 WL 5737275 (S.D.N.Y. Sept. 19, 2015) ...................................9

*SEC v. DiMaria*,
    No. 15 Civ. 7035 (GHW), 2016 WL 4926200 (S.D.N.Y Sep. 15, 2016) ..................................9

*SEC v. Egan*,
    994 F. Supp. 2d 558 (S.D.N.Y. 2014) ........................................................................................9

*SEC v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) .....................................................................................................3

*SEC v. Graham*,
    823 F.3d 1357 (11th Cir. 2016) ..................................................................................................3

*SEC v. Kelly*,
 817 F. Supp. 2d 340 (S.D.N.Y. 2011)..................................................................................8

*SEC v. Landberg*,
 836 F. Supp. 2d 148 (S.D.N.Y. 2011)................................................................................10

*SEC v. Saltsman*,
 No. 07 Civ. 4370 (NGG), 2016 WL 4136829 (E.D.N.Y. Aug. 2, 2016)..............................10

*SEC v. Straub*,
 No. 11 Civ. 9645 (RJS), 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016)................................3

*SEC v. Subaye, Inc.*,
 No. 13 Civ. 3114 (PKC), 2014 WL 448414 (S.D.N.Y. Feb. 4, 2014)..............................4, 10

*SEC v. Syron*,
 934 F. Supp. 2d 609 (S.D.N.Y. 2013)..................................................................................9

*SEC v. Tourre*,
 No. 10 Civ. 3229 (KBF), 2014 WL 61864 (S.D.N.Y. Jan. 7, 2014) ....................................9

*SEC v. Wyly,*
 950 F. Supp. 2d 547 (S.D.N.Y. 2013)..................................................................................2

*SEC v. Zandford*,
 535 U.S. 813 (2002).............................................................................................................7

*Spool v. World Child Intern. Adoption Agency,*
 520 F.3d 178 (2d Cir. 2008).................................................................................................4

*TCS Capital Mgmt., LLC v. Apax Partners, L.P.*,
 No. 06 Civ. 13447 (CM), 2008 WL 650385 (S.D.N.Y. Mar. 7, 2008).................................8

*U.S. v. Naftalin*,
 441 U.S. 768 (1979).............................................................................................................7

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
 655 F.3d 1039 (9th Cir. 2011) .............................................................................................8

**FEDERAL RULES, REGULATIONS, AND STATUTES**

28 U.S.C. § 2462..........................................................................................................................2, 3

Fed. R. Civ. P. 9(b) ...........................................................................................................1, 3, 4, 5

Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a)...................................................................................2, 7, 8

Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b) ......................................................................................2, 8

Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c) .................................................................................. 2, 7, 8

Rule 19b-4, 17 C.F.R. § 240.19b-4 ................................................................................................ 5

Rule 144(a)(2)(iii), 17 C.F.R. § 230.144(a)(2)(iii) ......................................................................... 6

Securities Act of 1933

    Section 17(a)(1), 15 U.S.C. § 77q(a)(1) ............................................................................. 1, 2, 7

    Section 17(a)(2), 15 U.S.C. § 77q(a)(2) ...................................................................... 1, 2, 6, 8, 9

    Section 17(a)(3), 15 U.S.C. § 77q(a)(3) ......................................................................... 1, 2, 6, 7

Securities Exchange Act of 1934

    Section 10(b), 15 U.S.C. § 78j(b) ............................................................................................... 2

Defendant William Uchimoto respectfully submits this reply memorandum of law in further support of his motion to dismiss with prejudice the remaining claims asserted against him in the SAC.[1]  On October 5, 2016, by stipulation, the Court dismissed the Seventh Claim (aiding and abetting violations of Section 17(a) of the Securities Act).[2]

## I. PRELIMINARY STATEMENT

The SEC's Opposition[3] confirms that its claims against Mr. Uchimoto are time-barred and legally insufficient.  For the following reasons and others, the SAC should be dismissed:

- The SEC has withdrawn its claim for civil penalties against Mr. Uchimoto arising out of conduct prior to September 10, 2010 (Opp. at 4), which would include the alleged violations associated with the listing applications for SmartHeat and Deer.  Its claims for civil penalties for conduct after that date are equally unfounded.

- The SEC contends it has satisfied Fed. R. Civ. P. 9(b) by alleging that Mr. Uchimoto made the exact same misrepresentations and engaged in the same conduct *twice*, during two different, non-contemporaneous listing assignments for SmartHeat and Deer.  The SEC's failure to disclose the misstatements and when the statements and conduct occurred leaves Mr. Uchimoto unable to answer the SAC and prepare his defense, in violation of Rule 9(b).

- The SEC's repetition of the same, slim, conclusory set of allegations against Mr. Uchimoto five times in its Opposition (at 1, 3, 8, 14 and 18) only highlights how tissue-thin the allegations are, and bare repetition cannot give rise to an inference that Mr. Uchimoto acted with scienter.

- Case law in the Second Circuit holds that claims for aiding and abetting under the Exchange Act based on conduct pre-dating the passage of Dodd-Frank in July 2010 are subject to an actual knowledge standard.  The SEC has failed to plead actual knowledge on the part of Mr. Uchimoto, and the remaining aiding and abetting claim fails.

## II. ARGUMENT

### A. The SEC Has Abandoned Its Claim For Civil Penalties Against Mr. Uchimoto Because Of The Statute of Limitations, And Its Efforts To Save Its Claims For "Injunctive" Relief Are Unavailing (All Claims).

---

[1]  Unless otherwise noted, terms used herein shall have the meanings set forth in Defendant William W. Uchimoto's Memorandum of Law in Support of His Motion to Dismiss the Second Amended Complaint ("Mem.") filed August 26, 2016 (ECF No. 132).  Mr. Uchimoto expressly preserves all arguments raised in his opening brief, some of which may not be reiterated herein because of page limitations.
[2]  Stipulation and Order of Partial Dismissal filed October 5, 2016 (ECF No. 138).
[3]  Plaintiff's Memorandum of Law in Support of its Opposition to Defendant William Uchimoto's Motion to Dismiss ("Opposition" or "Opp.") filed September 30, 2016 (ECF No. 135).

After a multi-year investigation and over a year after suing Mr. Uchimoto, the SEC *now* admits that it will not seek civil penalties against him for conduct that occurred prior to September 10, 2010, five years before the filing of this action.  "Civil penalties are subject to a five-year statute of limitations pursuant to 28 U.S.C. § 2462.  *The SEC will not seek civil penalties against Uchimoto for his conduct outside that window.*"  (Opp. at 4 (emphasis added).)  The SEC's admission eliminates any civil penalties against Mr. Uchimoto for direct violations of Exchange Act § 10(b) and Rule 10b-5 (First Claim) and Securities Act § 17(a) (Fifth Claim) because those claims rest entirely on Mr. Uchimoto's alleged misrepresentations to NASDAQ and related conduct in connection with the listing applications of SmartHeat and Deer prior to July 16, 2009, when Deer became listed on NASDAQ.  (*See* SAC ¶¶ 88-90; Opp. at 8.)

The SEC nonetheless contends that its claim for civil penalties should not be dismissed outright because "the aiding and abetting charges [Third Claim] … accrued within the five-year statutory period."  (Opp. at 2.)  In support, the SEC relies on allegations of market manipulation "in October 2010" in connection with Deer securities.  (*See* Opp. at 4 (citing SAC ¶¶ 101-02).)  But the SAC contains no allegations of conduct by Mr. Uchimoto in connection with any market manipulation in 2010.  (*See* SAC ¶¶ 91-102.)  To the contrary, the SEC alleges that Mr. Uchimoto "aided and abetted the fraudulent scheme" by virtue of purported misstatements during the listing processes *prior* to July 19, 2009.  (*See* Opp. at 18 (identifying acts by Mr. Uchimoto that "substantially assisted" the alleged fraud).)  Thus, the SEC's aiding and abetting claim is similarly time-barred.  See *Gabelli v. SEC*, 133 S. Ct. 1216, 1220 (2013) ("five-year clock begins to tick—when a defendant's allegedly fraudulent conduct occurs").[4]

---

[4] The SEC effectively conceded that its aiding and abetting claim under the Securities Act arose prior to July 2010 (*see* Mem. at 24) when it dismissed that claim.  The claim under the Exchange Act arises out of the same conduct.

2

The SEC's efforts to save its claim for injunctive relief are equally unavailing. The SEC contends that an injunction is intended to protect "'against future harms'" and that "'if the substantive claim [for an injunction] is viable, then it is … not subject to a statute of limitations.'" (Opp. at 5 (quoting *SEC v. Wyly*, 950 F. Supp. 2d 547, 558 (S.D.N.Y. 2013).) However, the SEC has not alleged that Mr. Uchimoto has engaged in any unlawful acts in the past seven years or that he poses a risk to the public, nor established any other basis for injunctive relief. (Mem. at 8.) Hence, it has failed to plead a "viable" claim against Mr. Uchimoto for an injunction, entry of which could only be punitive and thus time-barred. (*Id.*)

Finally, Mr. Uchimoto seeks to dismiss the SEC's claim for disgorgement against him as time-barred under the Eleventh Circuit's reasoning in *SEC v. Graham*, 823 F.3d 1357, 1364 (11th Cir. 2016), which held that disgorgement is a form of forfeiture under § 2462. (Mem. at 8-9.) But even though the holding of *Graham* remains subject to debate, *see SEC v. Straub*, No. 11 Civ. 9645 (RJS), 2016 WL 5793398, *14 (S.D.N.Y. Sept. 30, 2016), the SEC has failed to plead a disgorgement claim because it has not alleged that Mr. Uchimoto received profits "causally connected to the wrongdoing." *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996). The SEC contends in its Opposition that Mr. Uchimoto received "fees" from his fraud. (Opp. at 7.) But the SAC alleges otherwise: SmartHeat and Deer, two public companies that are not accused of any wrongdoing, retained Mr. Uchimoto's law firm to represent them before NASDAQ. (*See* SAC ¶¶ 11, 27.) There is no causal connection between the legal fees those companies paid and any profits gained through Mr. Benjamin Wey's alleged fraud.

### B. The Complaint Fails To Disclose The Exact Alleged Misstatements And Which Listing Representation They Correspond To, As Required Under Rule 9(b) (All Claims).

The SEC argues that it has met Rule 9(b) by pleading two misrepresentations and certain conduct in connection with two entirely separate listing processes, as if Mr. Uchimoto and

3

NASDAQ said and did the same things twice, many months apart.  (Opp. at 7-9.)  But this Court has recognized that Rule 9(b) "imposes a heightened pleading standard on complaints alleging securities fraud."  *SEC v. Subaye, Inc.*, No. 13 Civ. 3114 (PKC), 2014 WL 448414, *5 (S.D.N.Y. Feb. 4, 2014).  "Although pleadings are to be liberally construed, 'bald assertions and conclusions of law will not suffice'[.]"  *Id*. (quoting *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)).  The Second Circuit has held that a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 1996).  The policy behind Rule 9(b) is to "safeguard a defendant's reputation from improvident charges of wrongdoing."  *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (internal quotation omitted).

Improvidently, the SEC continues to deprive Mr. Uchimoto of notice as to (i) the precise statements he is alleged to have made; (ii) where, when and to whom he made the statements (and on behalf of which companies they were made) and (iii) the non-conclusory, factual basis for the SEC's claim that the statements were fraudulent.  While SEC contends that Mr. Uchimoto represented to NASDAQ *twice* "that his clients had satisfied the round-lot shareholder requirement without counting Gifted Shareholders," it has failed to offer the actual statement(s).  It has also failed to offer the specific communications from NASDAQ, which are relevant to what exactly was said, when, and by whom about NASDAQ's refusal to count gifted shares, and how Mr. Uchimoto's responses were arguably fraudulent.  Furthermore, NASDAQ would not have disclosed its gifted-share "policy" twice, so the statement would have corresponded to

4

SmartHeat *or* Deer.[5]  Disclosure of the communications with NASDAQ would also reveal whether the policy against counting gifted shares was absolute, or subject to qualifications and exceptions.  Finally, the SEC has not specified whether the alleged misstatements were oral or in writing, nor argued in its Opposition why, if they were in writing, the SEC could not quote them.

After an exhaustive investigation, the SEC has no excuse for not providing greater factual details in its Complaint.  Its repeated failure to comply with Rule 9(b) leaves Mr. Uchimoto unable to answer the SAC.  Mr. Uchimoto is alleged to have made specific misrepresentations to NASDAQ and engaged in conduct between September 2008 and January 2009 in connection with SmartHeat's listing application.  (SAC ¶¶ 87, 90.)  During that period, Deer was not even registered under Section 12 of the Exchange Act.  (*See id*. ¶ 45 (Deer registered on April 29, 2009).)  Deer went through its own listing process in the early summer of 2009, during which the SEC alleges that Mr. Uchimoto made the exact same misrepresentations and repeated the same conduct.  (Opp. at 8-9.)  Then, the SEC alleges that Mr. Wey manipulated the markets for Deer and *CleanTech*, a third company.  (SAC ¶¶ 91-102.)  There are no allegations that the market for SmartHeat shares was manipulated, so if the alleged misrepresentations correspond to SmartHeat but not Deer, then the SEC's aiding and abetting claim against Mr. Uchimoto cannot relate to any alleged market manipulation.  And if the misstatements are limited to Deer, then SmartHeat may be effectively eliminated from the case for purposes of Mr. Uchimoto's defense.

C. **The SEC's Claims Under Section 10(b), Rule 10b-5(b), And Section 17(a)(1) Must Be Dismissed For Failure To Plead Scienter, And One Of Mr. Uchimoto's Alleged Misstatements Was Not Material (First And Fifth Claims).**

The SEC makes the conclusory argument that because Mr. Uchimoto's statements to

---

[5] The SEC also fails to disclose the grounds on which NASDAQ could refuse to count gifted round-lot shareholders without a formal rulemaking process under Exchange Act Rule 19b-4, 17 C.F.R. § 240.19b-4, which is relevant to whether Mr. Uchimoto acted with fraudulent intent.  (*See* Mem. at 3 & n.4).

5

NASDAQ were allegedly false, the fact that he made them alone is "strong circumstantial evidence of conscious or reckless deceptive conduct." (Opp. at 9.) In fact, as set forth in Mr. Uchimoto's opening brief, (i) Mr. Uchimoto had no motive to commit fraud, and was only motivated to advocate on behalf of his clients—an argument the SEC ignores—and (ii) a true statement that SmartHeat (or Deer) met NASDAQ's black-letter round-lot holder rule, regardless of whether the count included gifted shares, cannot support a "strong inference of conscious misbehavior or recklessness." (Mem. at 14-15.) The SEC's argument that Mr. Uchimoto acted with scienter rests entirely on the alleged misrepresentations to NASDAQ and related conduct.[6] Thus, the SEC has conceded that Mr. Uchimoto did not engaged in any *other* conduct with scienter as part of Mr. Wey's secret, complex transnational fraud.

Finally, Mr. Uchimoto contends that his alleged misstatements concerning the source of his shares (the Weys) were immaterial. (Mem. at 15-17.) The SEC, by focusing on the purported materiality of Mr. Uchimoto's statements to NASDAQ concerning satisfaction of the round-lot rule, fails to address why the statements concerning the Weys were material. (Opp. at 11.) Hence, the statement concerning the source of his shares is not actionable.[7]

### D. Mr. Uchimoto's Alleged Statements Were Not Made In Connection With The Purchase or Sale of Securities (First and Fifth Claims).

Because Mr. Uchimoto's alleged misstatements were made to NASDAQ and not directed towards or shared with investors, his misstatements were not made in "connection with the purchase or sale of securities" under the Exchange Act and the Securities Act. (Mem. at 17-18.)

---

[6] If the Court finds that the SEC has failed to plead scienter, then the Section 17(a)(2) & (a)(3) claims must also fail, because Mr. Uchimoto's argument that the SEC has failed to identify a separate breach of a duty (*see* Mem. at 20-21) is effectively unopposed. The SEC defends its negligence-based claims under Securities Act §§ 17(a)(2) & (a)(3) solely by asserting that it has pleaded scienter. (Opp. at 16.)

[7] The SEC contends that Mr. Wey "was affiliated with the company" (Opp. at 4), so Mr. Uchimoto's representation to the contrary was untrue. However, no facts are pleaded that Mr. Uchimoto knew of facts that would have made Mr. Wey an affiliate of "the company" for purposes of Securities Act Rule 144(a)(2)(iii), 17 C.F.R. § 230.144(a)(2)(iii).

In response, the SEC argues for a broad reading of the "in connection with" requirement. (Opp. at 11.) But the SEC's own authorities demonstrate that there must be a concrete connection between the misstatement and the purchase or sale of *a security*. *See*, *e.g.*, *SEC v. Zandford*, 535 U.S. 813, 819 (2002) (theft of proceeds of sales of securities); *U.S. v. Naftalin*, 441 U.S. 768, 775-76 (1979) (fraudulent short sales); *Press v. Chemical Investment Servs. Corp.*, 166 F.3d 529, 537 (2d Cir. 1999) (according to the SEC, "in connection with" is satisfied if "the act complained of somehow induced" the purchase of a security) (Opp. at 12); *see also Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1066-1067, 1069 (2014) (under Litigation Act, 15 U.S.C. § 78bb(f)(1), "a connection matters where the misrepresentation makes a significant difference to someone's decision to purchase or sell a covered security"). Here, there is no nexus between any alleged misstatement by Mr. Uchimoto to NASDAQ and any transaction in any security. The SEC nonetheless argues that listing on a national exchange "may induce purchases of securities," citing *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255 (2d Cir. 1984). *Norlin* is inapposite: It concerns whether delisting from an exchange may constitute irreparable harm, and does not address the "in connection with" requirement. *See id*. at 267-69. The SEC does not offer any authority for the proposition that a statement made to NASDAQ in the course of a listing application satisfies the "in connection with" requirement under the Securities Act.

### E. The SEC Has Not Pleaded A Distinct Scheme (First and Fifth Claims).

The SEC argues that it has adequately pleaded scheme liability under Rules 10b-5(a) and (c) and Sections 17(a)(1) and (3) because Mr. Uchimoto "caused" gifted shares to move into brokerage accounts (put into "street name"), which the SEC contends was a "fraudulent scheme" apart from the alleged misrepresentations. (*See* Opp. at 14.) The SEC miscites the SAC: Mr. Uchimoto did not "cause" the shares to be moved; he allegedly made a suggestion to Mr. Wey. (*See* SAC ¶ 89.) Mr. Uchimoto's purported proposal that registered shares be moved into

brokerage accounts was entirely legal—in fact, it increased the likelihood they would trade, addressing NASDAQ's concerns over "trading interest" and "liquidity." (*See* SAC ¶ 87.)

The legality of Mr. Uchimoto's supposed idea means that the SEC has failed to allege a deceptive act that is distinct from the alleged misstatements. The "act" of moving gifted shares into street name for the alleged purpose of misrepresenting the number of gifted shares to NASDAQ constitutes the same misstatement.[8] Mr. Uchimoto's alleged "proposal" to Mr. Wey was not, in and of itself, inherently deceptive, nor did it "rely on any fictions." Rather, it was the alleged failure to disclose the actual status of the gifted shares that constituted the alleged deception, which is "nothing more than a reiteration of the misrepresentations and omissions that underlie plaintiffs [*sic*] disclosure claim."[9] Mr. Uchimoto's "deceptive act" only could be deceptive as a result of his alleged misstatements to NASDAQ regarding the companies' ability to meet the round-lot holder requirement. The conversion of gifted shares to street name would not otherwise have been deceptive or improper.[10]

### F. Mr. Uchimoto Did Not Obtain Money Or Property By Means Of The Alleged Fraud (Fifth Claim).

---

[8] *See In re Alstom SA*, 406 F. Supp. 2d 433, 476-77 (S.D.N.Y. 2005) (dismissing scheme liability claims where alleged deceptive conduct was not in and of itself deceptive; rather it was the deliberate non-disclosure of the costs that gave rise to the alleged fraud); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057-58 (9th Cir. 2011) (affirming dismissal of Rule 10b-5(a) and (c) claims on the basis that plaintiffs failed to allege facts separate from those alleged in Rule 10b-5(b) claims where fraudulent scheme involved defendants' plan not to disclose certain sales, then not disclosing the sales).

[9] *TCS Capital Mgmt., LLC v. Apax Partners, L.P.*, No. 06 Civ. 13447 (CM), 2008 WL 650385, at *22 (S.D.N.Y. Mar. 7, 2008) (dismissing plaintiff's market manipulation claims pursuant to Rule 10b-5(a) and (c) where alleged conduct—a "secret deal" to buy majority of company stock that did not fairly reflect true value of company—was a reiteration of the misrepresentations and omissions that underlay the plaintiff's Rule 10b-5(b) disclosure claim); *see In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 505 (S.D.N.Y. 2005) (dismissing scheme liability claims against defendant bank on the basis that alleged misconduct was not inherently deceptive; any deceptiveness resulted from the manner in which the transactions were later misrepresented).

[10] *See SEC v. Kelly*, 817 F. Supp. 2d 340, 343-44 (S.D.N.Y. 2011) (granting motion for judgment on the pleadings in favor of defendants, and dismissing 10b-5(a) and (c) claim on the basis that the purported scheme was premised on the misrepresentation claim); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d at 505 (dismissing scheme liability claims on basis that conduct only became deceptive when it was misrepresented).

The SEC contends that its Section 17(a)(2) claim should not be dismissed because Mr. Uchimoto obtained "fees" and "bill[ed] for his work in executing the fraud." (Opp. at 15.) The SEC relies on *SEC v. Tourre*, No. 10 Civ. 3229 (KBF), 2014 WL 61864 (S.D.N.Y. Jan. 7, 2014), and *SEC v. Cole*, No. 12 Civ. 8167 (RJS), 2015 WL 5737275 (S.D.N.Y. Sept. 19, 2015), for the proposition that there is no need for a "fraud bonus." However, on September 15, 2016, Judge Woods dismissed a Section 17(a)(2) claim against a director of accounting accused of carrying out a fraud in the course of his employment on the ground that the SEC had not alleged "any chain of events, however attenuated," that resulted in the defendant *personally* receiving money or property as a result of the fraud. *See SEC v. DiMaria*, No. 15 Civ. 7035 (GHW), 2016 WL 4926200, *10-11 (S.D.N.Y Sep. 15, 2016). Judge Woods declined to follow the reasoning in *Cole* (and by extension, *Tourre)*, holding that the language of Securities Act § 17(a)(2) requires that the defendant "personally gain," not just that his employer benefit. *Id.* at *10 (following *SEC v. Syron*, 934 F. Supp. 2d 609, 637-39 (S.D.N.Y. 2013)); *see also* Mem. at 19-20. Here, SmartHeat and Deer paid legal fees to Mr. Uchimoto's law firm in return for representation before NASDAQ. Those fees are insufficient to support a Section 17(a)(2) claim.

## G. The SEC Fails To Allege That Mr. Uchimoto Had Actual Knowledge of His Role In Mr. Wey's Scheme, So The Claim For Aiding And Abetting Violations Of The Exchange Act Must Be Dismissed (Third Claim).

The SEC cites *SEC v. Egan*, 994 F. Supp. 2d 558, 568 (S.D.N.Y. 2014) in an oblique admission that courts in this district have held that aiding and abetting claims under the Exchange Act arising out of pre-Dodd-Frank conduct are subject to an actual knowledge standard. (*See* Opp. at 17.) The SEC nonetheless tries to escape that standard by arguing that the "scienter standard" in the Second Circuit included "recklessness prior to Dodd-Frank." (Opp. at 17.) But the Second Circuit itself has applied an actual knowledge standard to aiding and abetting claims that arise out of conduct that predates Dodd-Frank's passage in 2010, *see*

9

*SEC v. Apuzzo*, 689 F.3d 204, 211 & n.6 (2d Cir. 2012), a principle affirmed in this Circuit within the past three months, *see SEC v. Saltsman*, No. 07 Civ. 4370 (NGG), 2016 WL 4136829, *22-*23 & n.16 (E.D.N.Y. Aug. 2, 2016) ("actual knowledge or conscious avoidance suffices for knowledge in aiding and abetting, while constructive knowledge does not") (cited by SEC in Opposition at 6).[11]

The SEC's resort to allegations of recklessness (*see* Opp. at 17) in defense of its aiding and abetting claim is a tacit admission that the SAC cannot plead that Mr. Uchimoto had actual knowledge of Mr. Wey's secret, alleged fraud. Similarly, the SEC's resort to yet another repetition of Mr. Uchimoto's statements to NASDAQ demonstrates that the SEC cannot allege that Mr. Uchimoto rendered substantial assistance to Mr. Wey's purported fraud. (Opp. at 18.)

### III. CONCLUSION

Mr. Uchimoto's motion to dismiss the SAC should be granted with prejudice.

Dated: October 21, 2016
New York, New York

RICHARDS KIBBE & ORBE LLP

By: /s/ H. Rowan Gaither
Daniel C. Zinman (*dzinman@rkollp.com*)
H. Rowan Gaither IV (*rgaither@rkollp.com*)
Margaret Winterkorn Meyers (*mmeyers@rkollp.com*)
Stephanie A. Tsay (*stsay@rkollp.com*)
200 Liberty Street
New York, NY 10281-1003
Telephone: (212) 530-1800
Facsimile: (212) 530-1801

*Attorneys for Defendant William W. Uchimoto*

---

[11] This Court's decision in *SEC v. Landberg*, 836 F. Supp. 2d 148, 157 (S.D.N.Y. 2011), relied on by the SEC, pre-dates the Second Circuit's decision in *Apuzzo*. Indeed, this Court later held in *Subaye*, 2014 WL 448414, that the "amendment of the statutory scienter requirement" for aiding and abetting claims under the Exchange Act to include "'or recklessly'" does not apply to statements made before the effective date of Dodd-Frank in 2010. *Id.* at *9 n.3.