UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES SECURITIES AND
    EXCHANGE COMMISSION,

                        Plaintiff,

v.

BENJAMIN WEY,
NEW YORK GLOBAL GROUP,
TIANYI WEI,
MICHAELA WEY,
ROBERT NEWMAN,
WILLIAM UCHIMOTO, and
SEREF DOGAN ERBEK,

                        Defendants,

and

ADVANTAGE CONSULTANTS, LTD.,
YORK CAPITAL MANAGEMENT, LTD.,
FOUR TONG INVESTMENTS, LTD.,
STRONG GROWTH CAPITAL, LTD.,
MEDIAN ASSETS INVESTMENTS, LTD., and
HAN HUA, LTD.,

                        Relief Defendants.

Civil Action No. 15-7116 (PKC)

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE SECOND AMENDED COMPLAINT

Derek S. Bentsen
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.6426
202.772.9245 (facsimile)
bentsend@sec.gov

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 1

    A.   The Supreme Court's Intervening Decision in Kokesh Does Not Render the Proposed TAC Futile. ............................................................................................ 2

    B.   Granting Leave to Amend Is Not Unduly Prejudicial. .................................................. 4

    C.   The Proposed TAC Would Not Be Futile. ................................................................. 6

       1.   The Proposed TAC Satisfies Rule 9(b). ............................................................. 6

       2.   The Proposed TAC Properly Alleges Scheme Liability............................................. 7

CONCLUSION ..................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699 (2d Cir. 2010)...........................4

*Cruz v. TD Bank, N.A.*, 740 F.3d 520 (2d Cir. 2013)...........................................................................4

*DeWitt Stern Group, Inc. v. Eisenberg*, 14 F. Supp. 3d 480 (S.D.N.Y. 2014)...............................3

*E\*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273 (S.D.N.Y. 2006)......................8

*Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612 (S.D.N.Y. 2014)..............................................9

*Forman v. Davis*, 371 U.S. 171 (1962).........................................................................................3

*Kokesh v. SEC*, 137 S. Ct. 1635 (2017) ........................................................................................4

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)......................................................8

*SEC v. Gabelli*, 653 F.3d 49 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1216 (2013)). .................6

*SEC v. Jones*, 476 F. Supp. 2d 374 (S.D.N.Y. 2007).....................................................................5

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241 (S.D.N.Y. 2013) 4, 7

*SEC v. Wyly*, 950 F. Supp. 2d 547 (S.D.N.Y. 2013)......................................................................5

*State Teachers Retirement Bd. v. Flour*, 654 F.2d 843 (2d Cir. 1981) ........................................6

*W.A. v. Hendrick Hudson School Dist.*, 219 F. Supp. 3d 421 (S.D.N.Y. 2016) ...........................6

**Statutes**

28 U.S.C. § 2462.............................................................................................................................4

**Other Authorities**

SEC Rules of Practice 102(e)(3)(i) .................................................................................................5

**Rules**

Fed. R. Civ. P. 15(a)(2)..................................................................................................................3

The Securities and Exchange Commission ("SEC") respectfully submits this Reply Memorandum of Law in Support of its Motion for Leave to Amend the Second Amended Complaint.

## PRELIMINARY STATEMENT

On June 5, 2017, the SEC moved to amend the Second Amended Complaint to resolve technical pleading deficiencies identified by the Court under Federal Rule of Civil Procedure 9(b).  Defendant Newman opposes the proposed amendment on the basis of the Supreme Court's intervening decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), but this decision does not affect the viability of the SEC's claims against him.  Defendant Uchimoto argues that amendment should not be allowed on the bases of: (1) *Kokesh*, (2) the order suppressing evidence seized from his co-defendant's home and office in the related criminal matter, (3) claimed deficiencies in the proposed Third Amended Complaint's factual allegations relating to his conduct in connection with the Deer listing, and (4) his interpretation of the pleaded facts.  None of Uchimoto's arguments have merit.  The proposed Third Amended Complaint ("TAC"), Dkt. No. 152-1, is neither futile nor unduly prejudicial, and leave to amend should be granted.

## ARGUMENT

The SEC seeks leave to amend to address solely the claims that the Court dismissed pursuant to Rule 9(b) as to Uchimoto and Newman.  Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings should "freely given . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The Supreme Court has stated that absent undue delay, bad faith, undue prejudice, or futility, the 'mandate' under Fed. R. Civ. P. 15(a)(2) to freely grant leave to amend 'is to be heeded.'"  *DeWitt Stern Group, Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 484 (S.D.N.Y. 2014) (quoting *Forman v. Davis*, 371 U.S. 171, 178 (1962)).  "'The rule in this

Circuit has been to allow a party to amend its pleading in the absence of a showing by the nonmovant of prejudice or bad faith.'" *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  "[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cruz v. TD Bank, N.A.*, 740 F.3d 520, 523 (2d Cir. 2013); *see also SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 254 (S.D.N.Y. 2013) ("When a court grants a motion to dismiss, it is often appropriate to grant leave to amend the complaint—particularly when Rule 9(b) applies.").

### A.     The Supreme Court's Intervening Decision in *Kokesh* Does Not Render the Proposed TAC Futile.

Days after the SEC submitted its proposed TAC, the Supreme Court issued its opinion in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), holding that disgorgement is subject to the five-year statute of limitations contained in 28 U.S.C. § 2462.  Both Newman and Uchimoto argue that this intervening decision renders the proposed TAC futile.  This argument fails because the proposed TAC seeks relief against both Newman and Uchimoto that is not affected by *Kokesh* or otherwise time-barred.

With respect to Newman, as the Court previously found, the SEC has alleged fraudulent conduct within the five year statute of limitations period.  *See* Memorandum and Order, March 27, 2017, Docket Number 142, at 60-61 ("MTD Order").  Thus, any ill-gotten gains Newman received as a result of that fraudulent conduct would be properly disgorged.  With respect to Uchimoto, the SEC does not dispute that a claim against him for disgorgement would be time-barred pursuant to *Kokesh*.  *Kokesh*, however, dealt only with the statute of limitations for disgorgement.  137 S. Ct. 1635, 1639 ("This case presents the question whether § 2462 applies to claims for disgorgement imposed as a sanction for violating a federal securities law.").

2

Significantly, the proposed TAC seeks a finding that both Newman and Uchimoto violated the federal securities laws as alleged and an injunction permanently restraining and enjoining each of them from violating the federal securities laws in the future.  *See* TAC, Prayer for Relief, ¶¶ A, B.  Newman and Uchimoto are attorneys.  TAC ¶¶ 24, 26.  "[W]ith due regard for public interest," the SEC may suspend an attorney who has been enjoined or found to have willfully violated the federal securities laws from appearing or practicing before it.  *See* SEC Rules of Practice 102(e)(3)(i).  The proposed TAC thus seeks remedies that could result in important relief for the protection of the public.  These remedies are not affected in any way by *Kokesh*.

Uchimoto claims that an injunction against him would be punitive, and therefore subject to the five-year statute of limitations under § 2462, because the SEC has not shown at the pleadings stage that Uchimoto is likely to violate the securities laws in the future.  This is simply a rehash of an argument already considered and rejected by the Court in its previous Order.  *See* MTD Order at 63-64.  As the Court noted in its MTD Order, to obtain an injunction against Uchimoto, the SEC will be required at the remedies stage to "go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence."  MTD Order at 63 (quoting *SEC v. Jones*, 476 F. Supp. 2d 374, 383 (S.D.N.Y. 2007).  Because an injunction protects the public against violators who are likely to commit future violations, it is "equitable relief which seeks to . . . protect the public from future harm" and not subject to § 2462.  MTD Order at 63 (quoting *Jones*, 476 F. Supp. 2d 374, 380-81).  As a result, "the statute of limitations question merges with the substantive requirements for obtaining an injunction under the securities laws—if the substantive claim is viable, then it is, by definition, not subject to a statute of limitations."  *SEC v. Wyly*, 950 F. Supp. 2d 547, 558 (S.D.N.Y. 2013).

3

As the Court noted in denying Newman's request to dismiss the SEC's request for injunctive relief: "Because 'determining the likelihood of future violations is almost always a fact-specific inquiry,' the Second Circuit has said that 'where, as here, the complaint plausibly alleges that defendants intentionally violated the federal securities laws, it is most unusual to dismiss a prayer for injunctive relief at this preliminary stage of the litigation.'"  MTD Order at 63 (quoting *SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1216 (2013)).  And "[a]s in *Gabelli*, Newman has not 'point[ed] to a single case where the SEC's prayer for injunctions against further violations was dismissed at the motion to dismiss stage based upon a finding of non-likelihood of further violations.'"  MTD Order at 63 (quoting *Gabelli*, 653 F.3d at 61).  Likewise, Uchimoto also fails to cite any such case.  The Court should reject Uchimoto's argument for the same reasons it has previously rejected Newman's identical argument.

### B.  Granting Leave to Amend Is Not Unduly Prejudicial.

The undue prejudice relevant to deciding whether to grant a party leave to amend its pleadings is undue prejudice to the opposing party's ability to advance its litigation position, not simply the consequences of the opposing party being required to participate in litigation.  As this case is stayed pending resolution of the parallel criminal matter, there is no undue delay or prejudice to defendants.  *See State Teachers Retirement Bd. v. Flour*, 654 F.2d 843, 856 (2d Cir. 1981) (determining no sufficient prejudice when no trial date had been set, no summary judgment motions filed, and amendments would not require a "great deal" of additional discovery); *see also W.A. v. Hendrick Hudson School Dist.*, 219 F. Supp. 3d 421, at 483-84 (S.D.N.Y. 2016) (evaluating undue delay and prejudice standards and allowing amendment after summary judgment motions had been filed).

4

After filing the Complaint on September 10, 2015, and prior to serving any Defendant, the SEC filed an Amended Complaint with technical corrections on November 9, 2015.  Dkt. Nos. 1, 5.  Subsequently, the SEC sought and received consent from Uchimoto and Newman for the filing of the Second Amended Complaint.  Dkt. Nos. 121, 122.  The proposed TAC simply addresses the deficiencies the Court identified under Rule 9(b), and Uchimoto cites no authority that would suggest that the Court should deviate from the general rule that leave to amend is appropriate "particularly when Rule 9(b) applies."  *Onyx Pharm.*, 296 F.R.D. 241, 254.

Rather than address the relatively straightforward rule in this Circuit, Uchimoto seems to claim that he was prejudiced because the SEC did not assume for purposes of the proposed TAC that the court would later suppress evidence in a related criminal case.  As the SEC previously brought to the Court's attention, in the related criminal case, Judge Nathan ordered the suppression of evidence seized during the execution of search warrants at the office and residence of Uchimoto's co-defendants, Michaela and Benjamin Wey.  *See United States v. Wey*, 15-cr-611 (AJN), Dkt. No. 114.  Obviously, the SEC had no involvement in either the execution of the search warrants or the litigation of the motion to suppress.  As of the date of this filing, the Department of Justice's time to file a notice of appeal from that suppression order has not yet expired.  *See United States v. Wey*, 15-cr-611 (AJN), Dkt. No. 120.

Uchimoto seems to suggest that the criminal suppression order should somehow impact the Court's decision on the SEC's pending motion, but cites no authority and makes no argument regarding *how* a suppression order in a criminal case would impact a related civil case.  And, perhaps most importantly, Uchimoto identifies no allegations against him in the proposed TAC that are based on evidence that has been suppressed in the criminal case.  The suppression of evidence recovered from the office and residence of Benjamin Wey in a separate criminal case is

5

simply not relevant to the question of whether Uchimoto will be unduly prejudiced by the Court granting the SEC leave to amend.

**C.      The Proposed TAC Would Not Be Futile.**

"For the purposes of evaluating futility, the 12(b)(6) standard is applied: all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader." *E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)).  Uchimoto makes several arguments in an attempt to establish that the proposed TAC would be futile, but each ignores well-pleaded allegations in the proposed TAC or improperly relies on Uchimoto's contentions regarding the interpretation of those allegations.  As a result, Uchimoto has not met his burden to show the amendment would be futile.

**1.      The Proposed TAC Satisfies Rule 9(b).**

Uchimoto argues that the proposed TAC is futile under Rule 9(b), but focuses exclusively on the allegations relating to the Deer listing and ignores the more than twenty paragraphs explicitly laying out his fraudulent conduct in connection with the SmartHeat listing.  TAC ¶¶ 87-108.  Uchimoto has thus conceded the sufficiency of the allegations regarding his participation in the fraudulent scheme in connection with the SmartHeat listing, which means that the proposed TAC is not futile.

In addition, the allegations regarding Uchimoto's conduct in connection with the Deer listing are also sufficiently plead.  Paragraph 109 of the proposed TAC alleges that after Uchimoto's fraudulent conduct undertaken during the SmartHeat listing was successful, he continued to engage in deceptive conduct in connection with the Deer listing application.  To that end, on June 18, 2009, in order to meet NASDAQ's round lot shareholder requirement Uchimoto provided NASDAQ with a misleading shareholder list and shareholder summary analysis that

included gifted shareholders who were not apparent to NASDAQ staff because they held their

shares in street name.  TAC ¶ 109.  And as clearly alleged in the proposed TAC, Uchimoto knew

prior to submitting the Deer shareholder list and summary analysis that NASDAQ would not

count gifted shareholders to meet their minimum requirements if NASDAQ was aware of them.

*Id.* ¶¶ 104.  The Proposed TAC therefore remedies the Rule 9(b) deficiencies identified by the

Court and leave to amend should be granted.

### 2.    The Proposed TAC Properly Alleges Scheme Liability.

Finally, Uchimoto argues that the Proposed TAC is futile because the SEC's allegations

of scheme liability are "internally inconsistent and factually implausible."  This argument relies

on Uchimoto's version of the events alleged in the proposed TAC, and thus fails because the

proposed TAC's allegations must be considered in the light most favorable to the SEC at this

stage.  *See Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 618 (S.D.N.Y. 2014) (in evaluating

futility of a proposed amendment, "all well pleaded allegations are accepted as true, and all

inferences are drawn in favor of the pleader.").

Even if the Court were to consider Uchimoto's interpretation of the allegations against

him, his factual arguments are unpersuasive.  First he argues that the allegations against him are

inconsistent with an email referenced in the proposed TAC, but the plain language of the email

contradicts Uchimoto's interpretation of it.  *See* TAC ¶ 104.  As alleged in the proposed TAC:

> Uchimoto relayed that the NASDAQ official "confirmed that the Nasdaq
> review staff will be reluctant to count holders of gifted shares because of
> their questionable investment intent.  He noted that as Nasdaq does not
> have a trading volume requirement, the round lot holder requirement is a
> proxy to adjudge trading volume."  Uchimoto then advised, "Because we
> have a large number of registered small round lot holders at this time,
> which appear to be recipients of gifted shares, we need to increase the
> number of round lot holders in brokers' street name . . . ."

*Id.*

The email confirms that Uchimoto was told by other NASDAQ officials that the NASDAQ listing staff would not count gifted shareholders.  *Id.*  Uchimoto, however, points to a sentence in the email in which he makes a suggestion based purportedly "on the advice" of a NASDAQ official and then goes on to make the self-serving and unsupported claim that it was "Mr. Hall's [the NASDAQ official's] suggestion that registered shareholders transfer their shares to street name."  Uchimoto Opposition at 11.  Even if Uchimoto's claim about what Hall supposedly told him was properly considered at this stage, the December 23 email does not support his claim.

Indeed, in the sentence that immediately precedes the portion selectively quoted by Uchimoto in his opposition brief, Uchimoto writes that the NASDAQ's official's "suggestion was to engage brokers with no adverse disciplinary history to assist in selling additional shares that might come from block holders holding free shares."  Dkt. No. 159-1.  Uchimoto's contemporaneous email states that the NASDAQ official told Uchimoto that NASDAQ would not count gifted shareholders toward the minimum shareholder requirement and suggested engaging brokers to actually sell shares to the investing public so that they could meet NASDAQ requirements.  In spite of the plain language of the email, Uchimoto now contends that the NASDAQ official actually advised him to move gifted shares into street name and thus deceive the NASDAQ listing staff.  His contention is not properly considered at this stage and lacks credibility in any event.

Uchimoto also argues that his email shows that the proposed TAC's timeline is factually implausible.  Again, this is not an argument that is properly considered at the pleading stage, but again, even if it were, Uchimoto mischaracterizes the email's content.  As the proposed TAC alleges, Uchimoto and Wey were strategizing about how to meet NASDAQ's minimum

shareholder requirements for the SmartHeat listing as early as September 2008, before any of the gifted shares that NASDAQ questioned were moved into street name. *See* TAC at ¶¶ 87, 90-91, 101. And Uchimoto's December 23, 2008 email is consistent with the proposed TAC's allegations that the plan to move gifted shares into street name was already underway at that point. As the proposed TAC plainly alleges, in the December 23 email, Uchimoto wrote, "Because we have a large number of registered small round lot holders at this time, which appear to be recipients of gifted shares, we need to *increase* the number of round lot holders in brokers' street name . . . ." TAC ¶ 104 (italics added). Contrary to Uchimoto's claim, there is no suggestion in his December 23 email that this is the first time he and Wey had discussed moving gifted shares into street name.

In a final attempt to litigate the merits of the case at the pleading stage, Uchimoto also asserts that the proposed TAC is factually implausible because he claims it is the industry standard to require a shareholder's signature to transfer his or her shares into street name and therefore the transfers into street name must have been done with the gifted shareholders' knowledge. Even assuming that the Court should consider information outside of the proposed TAC, this ignores the allegations that the gifted share certificates were frequently sent to NYGG and not to the individual gifted shareholders (TAC ¶¶ 89-91) and that some gifted shareholders believe that their signatures were forged (TAC ¶ 86). More importantly, how the shares were transferred into street name is irrelevant to the SEC's claim against Uchimoto. The proposed TAC clearly alleges that Uchimoto proposed deceptive conduct of moving shares to street name to hide the fact that they were gifted from NASDAQ and then provided misleading information to NASDAQ. This is adequate to allege a claim for scheme liability against Uchimoto.

9

## <u>CONCLUSION</u>

Neither Uchimoto nor Newman has met his burden of showing futility, undue delay, undue prejudice or bad faith.  The SEC therefore respectfully requests the Court grant the SEC's Motion for Leave to Amend the Second Amended Complaint.

Dated: July 7, 2007

Respectfully submitted,

  /s/ Derek S. Bentsen

Derek S. Bentsen
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.6426
202.772.9245 (facsimile)
bentsend@sec.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 7, 2017, I caused the foregoing to be filed using the Court's

CM/ECF system, which will send a notification of such filing to each counsel of record.


<u>  /s/ Derek S. Bentsen    </u>
*Counsel for Plaintiff*